UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | 3:15 Cr. 155 (RNC) |
| v. | : | |
| | : | |
| ROSS SHAPIRO, | : | |
| MICHAEL GRAMINS and | : | |
| TYLER PETERS | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS' MOTION TO MODIFY BAIL CONDITIONS

Defendant Ross Shapiro, by his attorneys, Petrillo Klein & Boxer LLP, Defendant

Michael Gramins, by his attorneys Bracewell & Giuliani LLP, and Defendant Tyler Peters, by

his attorneys, Alston & Bird LLP, respectfully move this Court to enter an Order modifying the

condition of their release on bail that prohibits the defendants, without first seeking leave from

the Government, from arranging social or professional contact with anyone who is an employee

of certain financial institutions identified by the Government, notwithstanding that these

employees are neither alleged victims nor witnesses likely to testify in this matter.  That

condition is wholly unnecessary to address the concerns of the Bail Reform Act, and is

impractical, overly intrusive and an unreasonable restraint on the defendants' rights of

association and privacy.

As set forth below, modification of the defendants' conditions of release to allow them

normal, unimpeded rights of association with individuals who have no connection to this case

will not interfere with the Government's investigation or trial preparation and would also allow

the defendants to conduct routine daily activities without repeated interruption by the Government.

## I.     Background

On September 3, 2015, Indictment 15 Cr. 155 (RNC) was filed in ten counts.  Count One charges the defendants with conspiracy to commit wire fraud and securities fraud and make false statements, in violation of Title 18 U.S.C. Section 371.  Counts Two and Three charge the defendants with securities fraud, in violation of Title 15, U.S.C. Sections 78j(b) and 78ff and Title 17 C.F.R. Sections 240.10b-5 and Title 18 U.S.C. Section 2.  Counts Four through Ten charge the defendants with wire fraud, in violation of Title 18, U.S.C. Sections 1343 and 2.

The charges arose from the defendants' activity, between 2009 and 2013, in the residential mortgage-backed securities market through their employer at the time, Nomura Securities International, Inc. ("Nomura").  Nomura, through the defendants and others, engaged in the purchase, sale and brokering of RMBS with numerous other sophisticated financial institutions in the marketplace. Like Nomura, many of the world's largest financial institutions, including Union Bank of Switzerland ("UBS"), Deutsche Bank, Morgan Stanley, Alliance Bernstein, and Blackrock-Barclays Global Investors, had dedicated employees working on their own RMBS trading desks.  Of course, RMBS traders constituted an infinitesimal percentage of the hundreds of thousands of employees in those enormous global organizations.

On September 10, 2015, the defendants were presented and arraigned before Magistrate Judge Donna Martinez.  Each defendant pleaded not guilty and was admitted to bail upon the following conditions: (i) execution of a personal recognizance bond in the amount of $1,000,000 co-signed by a financially responsible person; (ii) surrender of passports; (iii) restriction of travel to Connecticut, New York and New Jersey (with travel to other states conditioned on obtaining

advanced permission from Pre Trial Services), and (iv) that they avoid contact with persons and entities on a list that would be provided the next day by the Government.  It is this final condition that has proven to be impracticable and excessive and to which this modification request is addressed.

In a letter dated September 16, 2015 (the "No Contact List"), the Government identified thirty-six individuals and sixty-four institutions that the Defendants are "not to have any contact with."  Ex. A, Letter dated September 16, 2015.  The thirty-six individuals on the list are, concededly, potential witnesses to the alleged RMBS conduct.  However, hundreds of thousands of other people are encompassed by the No Contact List simply because they work for the financial institutions on the list in some capacity, somewhere in the world.  They are not witnesses to the activity in question in this case.  The overwhelming majority of those employees having nothing to do with RMBS trading, or any aspect of this case, or the Government's investigation, or the allegations.  They are simply encompassed by the No Contact list by virtue of their employment at the named financial institutions.  These people include friends, neighbors, professional contacts and acquaintances of the defendants and their spouses, and who are part of their social networks and their neighborhoods.[1]

On October 7, 2015, at the first pretrial conference in this matter, counsel for both sides raised their concerns about the No Contact List.  The defendants objected to the overbroad and burdensome restrictions on their daily lives that would be imposed were they to undertake to approach the Government before any contact with any person – no matter how far removed from this case – who happens to be employed by an institution on the No Contact List.  The Government suggested that if a defendant had even casual contact with any employee of any of

---

[1] It is highly doubtful that when Magistrate Judge Martinez incorporated the yet-to-be-provided No Contact List into the bail conditions, she anticipated that it would cover well over 100,000 people.

the listed institutions there could be "discussions about this case or there may not be direct discussions about this case, but there might be some innuendo."  Transcript of Proceedings dated October 7, 2015 ("Tr.") at 26:13-15.  The Government also expressed a concern that a defendant might try to "ingratiate[] himself with someone" working for one of these institutions and "[do] it in such a way that may inhibit [the Government's] investigation into the issues surrounding the institution being a victim."  Tr. at 27:1-4.

Pursuant to the Court's guidance at the pretrial conference, the defendants have attempted to fashion a solution that balances the Government's expressed concerns with the reality of the defendants' daily lives.  The defendants have agreed not to contact any of the thirty-six individuals identified as alleged victims or witnesses on the No Contact List.  The Government, for its part, has agreed that if the defendants inadvertently "bump into" someone, at a supermarket for example, who is employed at an institution on the No Contact List, they may exchange polite pleasantries with such person, but not discuss the case.

The Government continues to insist, however, that if the defendants wish to plan any contact with any of the hundreds of thousands of employees at any institution on the No Contact List, the Government must receive prior notice of the name of the employee and the purpose of the meeting, and will retain veto power over such a meeting – even if the employee with whom the defendant wishes to socialize knows nothing about RMBS trading and nothing about the facts of this case.  So, for example, the Government insists on prior notice if a defendant wishes to participate in a sporting event with a non-victim/non witness employee at a listed institution, or coach a youth soccer team with a parent who works at one of the "victim" institutions.  Indeed, in our last conversation on this matter, the Government stated that it wanted to receive advance

notice of any person to whom the defendants wish to send holiday cards if such person is employed by a company on the No Contact List.

As set forth below, this type of intrusion is an unlawful and excessive condition of bail.

## II.    Applicable Law

The Bail Reform Act of 1984 provides that a defendant who is admitted to bail on a personal recognizance bond be released on the least restrictive condition or combination of conditions that will reasonably assure his return to court and ameliorate any danger to the community.  *United States v. Karper*, 847 F. Supp. 2d 350, 354-55 (N.D.N.Y. 2011).

Title 18 U.S.C. Section 3142 does permit a court to order, as a condition of pretrial release, that persons released on bail pending trial avoid contact "with an alleged victim of the crime and with a potential witness who may testify concerning the offense."  18 U.S.C. § 3142(c)(1)(B)(v).  There are, however, limits on the restraints that can be imposed on release.

Under the Eight Amendment to the United States Constitution, "[b]ail conditions are unconstitutionally excessive if they impose restraints that are more than necessary to achieve the government's interest [in a particular] case."  *United States v. Polouizzi*, 697 F. Supp. 2d 381, 390 (E.D.N.Y. 2010) (citing *United States v. Salerno*, 481 U.S. 739, 754 (1987)).  Following this principle, "[c]onditioning pretrial release on the relinquishment of constitutionally protected rights in circumstances where the conditions are not necessary to satisfy legitimate governmental purposes" is unconstitutional.  *United States v. Arzberger*, 592 F. Supp. 2d 590, 605-06 (S.D.N.Y. 2008); *see also United States v. Karper*, 847 F. Supp. at 363 ("[T]he relinquishment of constitutionally protected rights . . . on conditions that are more than necessary to satisfy legitimate governmental interests would constitute excessive bail in violation of the Eighth Amendment.").  Thus, "[i]n fashioning suitable conditions to govern the defendant's release  . . .

the court [is] required to do so in a manner which would result in no greater intrusion upon defendant's constitutional rights, including those guaranteed under the First Amendment, than reasonably necessary in order to effectuate the objectives of the Bail Reform Act." *United States v. Murtari*, No. CRIM 5:07-CR-0428DEP, 2008 WL 687434, at *4 (N.D.N.Y. Mar. 11, 2008) (citing *United States v. Myers*, 426 F.3d 117, 124-25 (2d Cir. 2005)).

In *United States v. Arzberger*, a case in which U.S. Magistrate Judge James Francis found certain mandatory bail conditions imposed by the Adam Walsh Act to be unconstitutional, the court commented on a defendant's fundamental right of association. "One of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means." 592 F. Supp. 2d at 603 (quoting *National Association for the Advancement of Colored People v. Claiborne Hardware Co.*, 458 U.S. 886, 933 (1982)). It then found that a "categorical[] prohibit[ion]" against association with potential witnesses, without individualized determinations as to the danger posed by each defendant, is "likely to . . . erroneously deprive[]" defendants of their First Amendment right of association. *Id.* at 604.

A concurring opinion by the Honorable Alex Kozinski in *United States v. Howard*, 793 F.3d 1113 (9th Cir. 2015), is instructive on the purposes of, and limits on, bail conditions. The defendant in that case was a Postal Service employee who was arrested and charged with stealing cash, drugs and other items out of the mail. *See United States v. Howard*, 5:14-cr-390 (N.D. Cal. July 23, 2014). He was initially released on a bail package that included a condition that prevented him from making contact with any Postal Service employees, except his supervisors, and was eventually barred from contacting any Postal Service employee, former or current. His bail was eventually revoked for violating those conditions and he appealed. Although the Ninth Circuit remanded the case back to the District Court for further fact-finding, Judge Kozinski

explained the essence of pretrial release and the conditions attached thereto in a concurring

opinion:

> According to our law, there are only two considerations the district court may take into account in determining whether to release a defendant, and what condition to impose on such release: (a) ensure that he is not a flight risk; and (b) ensure that he is not a danger to the community. 18 U.S.C. § 3142(c)(1). Preventing the defendant from talking to individuals who are potential witnesses at trial falls into neither of these categories. It certainly does not show a propensity to flee nor, of itself, is it evidence of being a danger to the community. Merely talking to a potential witness, even about the subject of his likely testimony, is not illegal. The government does this again and again with every potential witness, as long and as often as it wishes. It seems wholly inappropriate and unfair to give the government unhindered access to witnesses yet throw the defendant in the slammer for doing the same. Defendant, no less than the government, has a legitimate interest in discussing the case with the witnesses, testing their recollections and helping them articulate the events in terms favorable to his case. When the government does this, we call it witness prep; there is no justification for calling it witness tampering when the defendant does precisely the same. . . .
>
> Defendants should not be presumed to engage in witness tampering or intimidation; only if there is actual proof should the district judge get involved. Here there is no such proof.

*Howard*, 793 F.3d at 1114 (Kozinski, J., concurring).

**III.     Discussion**

   While Judge Kozinski in *Howard* articulates a strong argument for permitting a defendant

who is otherwise abiding by conditions of bail to meet with and discuss his case with potential

witnesses, the defendants in this matter do not seek to go that far.  They have agreed to avoid

contact with the natural persons identified on the No Contact List, and any other persons whom

the Government may identify in the future as a witness or an alleged victim.  Indeed, the

defendants have no desire to discuss their case with anyone.  However, forcing them, as a

condition of bail, to pre-clear with the Government every social interaction, unrelated to this

matter with any employee of the sixty-four institutions on the No Contact List is an over

extension of government authority and unnecessary to achieve the purposes of bail.

The Government characterizes all unnamed employees at all the institutions on the No Contact List as "victims" of, and "witness[ess] who may testify" to the charged conduct.  But the Government is wrong.  A "victim" is anyone "directly and proximately harmed [by] . . . an offense," individuals and legal entities alike.  18 U.S.C. § 3771(e)(2)(A).  It defies credulity to claim that every one of the hundreds of thousands of individuals employed at UBS, for example, is a "victim" of the conduct at issue.  It is similarly ludicrous to suggest that a Morgan Stanley employee with no involvement, direct or indirect, in RMBS trading is a "witness *who may testify*" to the RMBS trading at issue in this case.  18 U.S.C. § 3142(c)(1)(B)(v) (emphasis added). There is simply no reason why the defendants should not be able to socialize about matters unrelated to the case with persons employed by these institutions free of interloping and scrutiny from the Government.

It is similarly farfetched – indeed irrational - to maintain, as the Government has, that sending a holiday card to a single employee could be characterized as an attempt to "ingratiate" ones self with a massive global institution.  And in any event, there is no prohibition in the Bail Reform Act or any case law against a defendant seeking to make innocuous social contact with a non-witness. Defendants should be allowed to interact with their friends, relatives, social contacts, and professional contacts on matters that have no relevance to this case.  In our liberal democracy, which has long respected the right to privacy, they should be able to do it free of Government inspection.

Seeking pre-clearance from the Government for a non-case-related social contact is also problematic for reasons beyond its Orwellian implications.  It is impractical.  It is an impossible task for the defendants to accurately identify every person associated with each one of the sixty-four entities on the No Contact List with whom they might wish to communicate now or in the

future.  Moreover, these defendants and their families should not have to apply for permission to

have a cup of coffee with a friend and then await the Government's verdict as to whether that is

permissible.  That friend, who has no connection to this case, would be highly unlikely to want

his name submitted to federal prosecutors as an associate of a criminal defendant.  And frankly,

it is none of the Government's business who the defendants communicate with, or when, or

where, or why, so long as they are not tampering with, intimidating or harassing any of the

Government's witnesses.  *See Howard*, 793 F.3d at 1114-15. If that should occur, the

Government has appropriate remedies.  In short, this requirement is impractical, oppressive and

unnecessary to achieve the purposes of bail.  *See, e.g.*, *Murtari*, 2008 WL 687434, at *4

(upholding a bail condition when it "encroach[ed] upon [the] defendant's First Amendment rights

only to the extent necessary"); *Karper*, 847 F. Supp. 2d. at 363 (finding that bail conditions were

unconstitutional when less restrictive conditions "eliminate[d] the possibility of potential on-

going harm"); *Arzberger*, 592 F. Supp, 2d at 605 ("[I]f the Excessive Bail Clause has any

meaning, it must preclude bail conditions that are (1) more onerous than necessary to satisfy

legitimate governmental purposes and (2) result in deprivation of the defendant's liberty.").

**IV.    Conclusion**

For the reasons set forth above, the defendants respectfully submit that the bail condition

that forbids them from arranging or having contact, absent Government permission, with all

individuals on the No Contact List and all employees of entities on the No Contact List, be

modified to restrict them from contacting the thirty-six individuals named on the list, and any

individuals the Government identifies in the future as alleged victims or potential witness, and

that the defendants are otherwise free to engage in social contact with employees of the named

institutions without seeking pre-clearance from the Government.  Further, to the extent

defendants have contact with the thirty-six potential witnesses that is fleeting and superficial (for example, an unplanned, very brief encounter in a public setting like a holiday party or an athletic field), where mere social niceties are exchanged, such conduct also should not be deemed a violation of the condition that they "avoid contact" with such listed persons.

Dated: New York, New York

December 10, 2015

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By:     /s/ Marc L. Mukasey
        Marc L. Mukasey (Federal Bar # ct29885)
        1251 Avenue of the Americas
        New York, New York 10020
        (212) 508-6134

        *Counsel for Defendant Michael Gramins*

        Guy Petrillo
        Petrillo Klein & Boxer LLP
        *Counsel for Defendant Ross Shapiro*

        Brett D. Jaffe
        Alston & Bird LLP
        *Counsel for Defendant Tyler Peters*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on December 10, 2015, a copy of foregoing Motion to Modify Bail Conditions and Proposed Order was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York

December 10, 2015

           **/s/ Marc L. Mukasey**
           Marc L. Mukasey
           1251 Avenue of the Americas
           New York, New York  10036
           Telephone: (212) 508-6134

           marc.mukasey@bgllp.com