UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:15CR155 (RNC) |
| | : | |
| v. | : | |
| | : | |
| ROSS SHAPIRO,<br>MICHAEL GRAMINS and<br>TYLER PETERS | : | December 31, 2015 |

**GOVERNMENT'S RESPONSE TO THE DEFENDANTS' MOTION TO MODIFY BAIL CONDITIONS**

The Government respectfully submits this memorandum in opposition to the defendants' Motion to Modify Bail Conditions [Doc. # 85].

## I. Background

### a. Indictment and Initial Appearance

On September 3, 2015, a grand jury sitting in the District of Connecticut returned an indictment, *United States v. Ross Shapiro, et. al.*, Criminal No. 3:15-cr-155 (RNC), charging Ross Shapiro, Michael Gramins, and Tyler Peters, with one count of Conspiracy to Commit Securities Fraud, Wire Fraud, and False Statements, in violation of Title 18, United States Code, Section 371; two counts of Securities Fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5, and Title 18, United States Code, Section 2; and seven counts of Wire Fraud, in violation of Title 18, United States Code, Sections 1343 and 2.

The Indictment alleges that, from approximately 2009 through approximately 2013, Shapiro, Gramins, Peters, and others: (i) made fraudulent statements to victims to obtain unearned and secret compensation on Residential Mortgage Backed Securities ("RMBS") trades; and (ii) deprived Nomura's victims of information relevant to making a discretionary economic decision. Indictment at ¶ 34 [Doc. # 2]. The victims are all financial institutions, including large global financial institutions and smaller hedge funds and asset managers.

Shapiro, Gramins, and Peters supervised the RMBS trading desk at Nomura in New York. *Id.* at ¶ 4. Shapiro was the Managing Director who oversaw all of Nomura's trading in RMBS; Gramins was an Executive Director on the RMBS Desk and principally oversaw Nomura's trading of bonds composed of sub-prime and option ARM loans; and Peters was the senior-most Vice President on the RMBS desk focused primarily on Nomura's trading of bonds composed of prime and alt-A loans. *Id.* at ¶¶ 1-3. The Indictment alleges that, as senior members of the RMBS desk, Shapiro, Gramins and Peters defrauded Nomura's victim-customers by fraudulently inflating the purchase price at which Nomura could buy an RMBS bond to induce their victim-customers to pay a higher price for the bond, and by fraudulently deflating the prices at which Nomura could sell a RMBS bond to induce their victim-customers to sell bonds at cheaper prices, causing Nomura and the three the defendants to profit illegally. *Id.* at ¶¶ 34-35. Shapiro, Gramins and Peters are also alleged to have created fictitious third parties in an effort to increase their profits, and colluded with at least one outside client to deceptively broker

trades on their behalf. Id. In addition, the Indictment alleges that Shapiro, Gramins and Peters trained their subordinates to lie to customers, provided them with the language to use in deceiving customers, and encouraged them to engage in the practice. *Id.* at ¶¶ 4, 35c.[1]

On September 10, 2015, the defendants pled not guilty before Magistrate Judge Martinez. The defendants were released on bail with certain conditions, including, pursuant to 18 U.S.C. § 3142(c)(1)(B)(v), that they "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including Gov't List." *See* Orders Setting Conditions of Release [Doc. # 34, 38 and 42]. The Government provided the defendants a no contact list consisting of thirty-six natural persons and sixty-four victim-institutions.

b. **The Pretrial Conference, Subsequent Discussions, and Modifications to the no contact List**

On October 7, 2015, at a pretrial conference before Judge Chatigny, the defendants raised their concern regarding the breadth of the no contact list. The Court asked if the defendants could "provide the government a list of people they would like to socialize with." Transcript, October 7, 2015 ("Tr.") at 23:11-13. After some discussion with defense counsel and the Government, the Court asked the parties to "work it out." *Id.* at 27:20. The Court concluded by stating "that the defendant[s] should provide a list of people they want to be able to communicate

[1] Five days after the grand jury returned the Indictment, the Securities and Exchange Commission ("SEC") filed a civil complaint in the Southern District of New York. The SEC's complaint is based upon the same fraudulent conduct that is charged in the Indictment and involves the same individual coconspirators, and many of the same witnesses and victims.

with while this case is pending that seems appropriate, and . . . if necessary the government should provide a list that makes clear to the defendants, if it isn't already, what the boundaries are." *Id.* at 27:23-25 and 28:1-3.

Following the October 7 conference, the Government had several conversations with the defendants' counsel regarding the no contact condition. The Government has reiterated its position that incidental and innocuous contact with employees of the victim-institutions would not be considered a violation of the condition and that it has no desire to constantly monitor the defendants' activities. The Government has consistently asked the defendants to provide a list of people from the victim-institutions that the defendants would like to be exempted from the no contact list, but the defendants have refused, claiming the request was overly burdensome and likely impossible. The Government has also, in response to specific requests made by the defendants' counsel regarding the no contact condition, agreed to reasonable modifications to the condition.

For example, contrary to the defendants' assertion that the Government has maintained that "sending a holiday card to a single employee could be characterized as an attempt to 'ingratiate' ones [sic] self with a massive global institution," Defs' Mot. at 8, the Government told counsel for Gramins and counsel for Shapiro that it had no issue with the defendants sending pre-printed holiday cards to employees at victim-institutions and would not consider that activity a violation of the bail condition. The Government has also not objected to Peters' continued contact with Michael Romanelli, despite the fact that Romanelli is "Salesperson 1" in the

Indictment and a key player in the conspiracy. Romanelli is Peters' brother-in-law and the Government has sought to accommodate that familial relationship with the assurance of Peters' counsel that the two will not discuss this case or the facts underlying it. In the same vein, the Government consented to Defendant Shapiro breaking the Yom Kippur fast with neighbors who worked at a victim-institution, after Shapiro's counsel explained the situation to the Government. In short, the Government has made good faith efforts to provide the defendants' with reasonable accommodations.

## II. Argument

### a. The no contact list is an appropriate pre-trial restraint

The defendants' motion seeks to eliminate the no contact condition with respect to victim-institutions, claiming it is excessive and improper. The defendants' also seek the Court's permission to engage in brief social contact with anyone still subject to the no contact condition. The no contact condition is the least restrictive restraint to satisfy a legitimate governmental interest of protecting the integrity of the proceedings and the defendants have not argued that a ban on witness contact is inappropriate and should be entirely eliminated. In their motion, the defendants state that they "do not seek to go that far," Defs' Mot. at 7, and ask only that the Court limit the no contact condition to natural persons that the Government believes may testify at trial. In addition, during the October 7 pretrial conference, Mr. Jaffee, attorney for Peters, told the Court that "one of the conditions of the defendants' release in this case, as is typically the case, was that they not

have contact with witnesses or victims who are contemplated in this case." Tr. at 21:9-11. Mr. Jaffee questioned only the number of individuals on the list and the appropriateness of financial institutions on the list, not whether there should even be a no contact condition.

The Government is not interested in placing unnecessary burdens on the defendants. To this end, the Government has repeatedly expressed to the defendants—and demonstrated through its actions—that it is willing to agree to allow the defendants to have contact with certain employees of victim-institutions that are the defendants' family members or other intimate associates. Should the defendants have any such relationships at the victim-institutions, defense counsel should provide the Government with a proposed list of names and the parties could negotiate exceptions to the no contact list. This would be the least burdensome way to alleviate the defendants' concern that the current no contact condition is overly intrusive and an unreasonable constraint on their rights, while still protecting the integrity of the proceedings.

The defendants claim that it would be an "an impossible task" to produce such a list. Defs' Mot. at 8. There is no reason for this to be the case. The defendants know who are their friends, colleagues and neighbors. The Government only asks that the defendants provide a list to the best of their ability. If, at a later time, a name must be added to the list or a defendant needs to report an interaction with someone not on the list due to mere accident or oversight, the Government would not seek revocation. As Judge Chatigny declared during the pre-trial

conference, "I should have such an extensive network of friends. My list would be quite short. But maybe that's because I live in a cloistered existence, not in the financial world. But I think I could do a list in about 15 minutes." Tr. at 25:6-9. To ask the defendants to construct such a list really is not a burden.

The defendants also argue that the no contact condition is invasive and improper because their social lives are intertwined with the New York metropolitan area financial world. Yet Jesse Litvak, a bond trader at another financial institution, who was tried on conduct similar to the allegations in the Indictment in this case, was subject to the same no contact restrictions during his pretrial release without incident, and without additional stipulations. *See United States v. Jesse Litvak*, 3:13cr00019 (JCH). There is no reason why these three defendants should be treated specially when the Court has found this condition necessary for similarly situated defendants.

b. **The Government is not required to produce a witness list of natural persons until May**

Notwithstanding the defendants' insistence that the no contact condition is overbroad, there are sixty-four victim-institutions identified by the Government's investigation. This is simply a fact. It is a result of the defendants' actions at Nomura and the Government is duty-bound to treat all victims equitably.

The defendants argue that it is the Government's burden to include only natural persons who are potential witnesses on the no contact list. Yet the defendants and the Government have agreed that witness lists will be exchanged on

May 23, 2016. At this stage, the Government is not prepared to provide the defendants with a witness list nor is the Government prepared to name every person at all sixty-four victim-institutions that might testify at trial. A list of such people encompasses more than those who currently have involvement, direct or indirect, in RMBS trading—it often includes managers, supervisors, and other employees that consult with or may have consulted with others at the victim-institution with respect to this matter, or had or have authority over the employees that may testify on behalf of the victim-institutions. *Contra* Defs' Mot. at 8. The Government has not yet identified all those individuals at each victim-institution. The victims in this case are the institutions and, as in all other cases, the defendants should refrain from having direct contact with those victims (such as through their employees) unless there are exigent circumstances. The defendants are the only ones in the position to identify those exigent circumstances.

c. **The defendants seek special treatment not accorded other defendants**

Finally, the defendants' last request of the Court, *see* Defs' Mot. at 10, gives the Government pause. The defendants ask the Court to permit fleeting and superficial contact with anyone on the no contact list. While the Government does not intend to seek revocation of bail for the type of violation just described, the Government is troubled by the defendants' argument that this type of contact would be impossible to avoid and therefore should be sanctioned. Such contact is certainly avoidable: do not approach victims or witnesses to exchange small talk, walk away

from situations that may lead to victim or witness contact, leave the party, sit on the other side of the athletic field, etc. Generally courts have the authority to impose conditions of release, including restraints on associations, that "will reasonably assure . . . the safety . . . of the community," 18 U.S.C. § 3142(c)(1)(B), which includes safeguarding the integrity of the proceedings. The defendants' argument that they are simply unable to abide by a complete no contact condition because it is impractical and that they should be allowed to have brief social interactions with any witness, is a brazen disregard for the purpose of the bail conditions imposed by this Court. Other defendants are regularly subjected to these same conditions; there is no reason why these defendants should be treated differently. Their plea for special treatment should be denied.

## III.   Conclusion

For the reasons set forth above, the Government respectfully submits that the no contact condition is appropriate and necessary to ensure the integrity of the proceedings. Therefore, the defendants' motion should be denied. In the alternative, the Government requests that the defendants provide a list of employees at victim-institutions that they would like to or expect to have contact with.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

HEATHER L. CHERRY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. phv07037

LIAM B. BRENNAN
ASSISTANT UNITED STATES ATTORNEY

U.S. Attorney's Office
157 Church Street
New Haven, CT 06510
(203) 821-3719
heather.cherry@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

__/s/______________________________________
HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY