UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:15CR155 (RNC) |
| | : | |
| v. | : | |
| | : | |
| ROSS SHAPIRO, | : | January 8, 2016 |
| MICHAEL GRAMINS and | : | |
| TYLER PETERS | : | |

## GOVERNMENT'S SUPPLEMENTAL RESPONSE TO THE DEFENDANTS' MOTION TO MODIFY BAIL CONDITIONS

The government respectfully submits this memorandum in response to the Court's request for supplemental argument regarding an exception to the bail condition's no contact list that allows the defendants to contact potential witnesses, without counsel's presence, for purposes of asking the potential witnesses to speak to the defendants' counsel. Similar no contact provisions have been upheld in other cases and such a provision is particularly appropriate in this case given the defendants' history with the victims and witnesses. In addition, the defendants' stated concerns are moot.

I.  **Background**

As the Court is aware, on September 10, 2015, the defendants pled not guilty before Magistrate Judge Martinez. The defendants were released on bail with certain conditions, including, pursuant to 18 U.S.C. § 3142(c)(1)(B)(v), that they "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including Gov't List." *See* Orders

Setting Conditions of Release [Doc. # 34, 38 and 42]. The Government provided the defendants a no contact list consisting of thirty-six natural persons and sixty-four victim-institutions.

On December 12, 2015, the defendants made a motion requesting a modification to the bail conditions. *See* [doc. # 85]. Specifically, defendants asked the Court to limit the no contact list to only natural persons who the government believes may testify at trial. The government opposed this motion. *See* [doc. # 90]. On January 5, Magistrate Judge Martinez held a hearing to address this motion. The Court heard both the defendants' and government's arguments, and then requested that the parties work together to find language that would satisfy both parties' concerns. After some negotiation outside the presence of the Court, the parties settled on the following language:

> The defendants shall not have contact, other than through counsel, with anyone from the listed institutions that are known by them to: (1) currently have or previously had involvement in RMBS and CMBS trading or sales, including such employees' known managers and supervisors; or (2) be employed in a legal or compliance function.

> Notwithstanding the above, the parties remain free to negotiate exceptions to the above-listed individuals on a case by case basis.

That same day, the parties returned to the Court and asked Magistrate Judge Martinez to adopt this modified no contact language. The defendants then requested that Magistrate Judge Martinez further modify this language to allow the defendants to directly contact potential witnesses, outside of the presence of their counsel, to ask potential witnesses if they would speak with defendants' counsel.

The government objected to this further modification arguing that it violates the purpose of the no contact list, which the government believes is the least restrictive means to ensuring the veracity of the trial proceedings.  Magistrate Judge Martinez asked the parties to brief the issue.

II.  **Argument**

    a.  **The no contact list is a condition authorized by the Bail Reform Act of 1984**

Under the Bail Reform Act of 1984 the Court may require that an indicted defendant, as a condition of his release, "avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense." 18 U.S.C. § 3142(c)(1)(B)(v).  In fact, the Court must impose such a condition if it is the least restrictive condition necessary to "reasonably assure . . . the safety . . . of the community."  18 U.S.C. § 3142(c)(1)(B).  Furthermore, the safety of the community does not just mean physical safety; it also includes the public's right to criminal proceedings free of interference with witnesses.  Bail restrictions are appropriate to restrain "a person from attempts to undermine the integrity of the pending trial." *United States v. Gotti*, 794 F.2d 773, 779 (2d Cir. 1986).  In *Gotti,* the Court detained the defendant to prevent witness tampering.  Here, the Government seeks the much lesser condition of having the defendants contact victims and witnesses through counsel, a restriction that the law authorizes the Court to impose.  *United States v. Vasilakos*, 508 F.3d 401, 411 (6th Cir. 2007) ("The Bail Reform Act empowers trial courts to restrict a defendant's contact with potential witnesses if

the condition is the 'least restrictive' avenue for avoiding witness tampering. The no-contact provision is far less restrictive than pretrial detention. In all events, the defendants have not shown any harm stemming from their inability to contact government witnesses personally.").

b. **The modified no contact list, without further exceptions, is an appropriate pre-trial restraint in this case**

Section 3142(c)(1)(B) of the Bail Reform Act is the language on which the Court relied on when it entered the original no contact bail condition. Such a condition is necessary to assure the integrity of the court proceedings. The Government submits that the defendants have a well-established track record of lying and manipulating the very people they now seek to contact directly to advance their own interests. They lied repeatedly to customers, continually deceiving them and when confronted with the truth, they continued to lie and place blame on others. They convinced their customers that they could be trusted, while they bilked them for millions of dollars. They directed their subordinates to lie on their behalf and critiqued their execution of the lies. After a fellow trader, Jesse Litvak, was indicted on virtually identical charges, the defendants continued lying to customers to increase their profits. It is therefore not unreasonable to determine that the defendants may also act improperly when it is their liberty at stake. In addition, the defendants have not argued that a no contact list is *per se* unreasonable and entirely inappropriate in this case. In their original motion seeking modification of the bail conditions, the defendants state that they "do not

4

seek to go that far," Defs' Mot. at 7, and ask only that the Court limit the no contact condition to natural persons that the government believes may testify at trial.

To alleviate the defendants concerns and better satisfy the directive of the Bail Reform Act, the parties have agreed to a modification of the language of the no contact condition that more aptly delineates the potential witnesses in this case. The requested exception by defendants—that they be allowed to contact potential witnesses, without counsel present, to ask these witnesses to speak with defendants' counsel—would obviate the intended purpose of the no contact condition. Simply, it does not make sense to allow the defendants to contact these witnesses directly. For it is at these moments, during these private conversations, that the integrity of the process is most vulnerable to tampering.

This is especially true with respect to the defendants, who in the past have had no issue with lying to and manipulating these very witnesses in order to make more money. Potential witnesses in this case include young traders that were supervised and mentored by the defendants. These traders trusted the defendants, yet the defendants used these traders to illegally generate profits that the RMBS desk was not entitled to. In fact, the defendants often mandated the lying, declaring such conduct as expected and necessary to be successful under their supervision.

Other witnesses are investment managers that also trusted the defendants and relied on them to provide truthful market information. Yet the defendants had no issue with abusing this trust as well. For example, one investment manager,

5

Z.H., told Mr. Shapiro that his colleague believed that Mr. Shapiro may have lied to Z.H. but that Z.H. told his colleague "that the chance of that was 0.0%." NSI00013944.  Mr. Shapiro responded that lying was "not my style" and "not the way I roll." *Id.*  But Mr. Shapiro and the other defendants did lie to Z.H., and did so on multiple occasions.

After Jesse Litvak was indicted on similar charges, the defendants discussed the case with other members of the desk.  However, their practice of manipulating their victims was so useful to their profits, they continued to engage in it.  The two trades referenced in overt acts "u," "v," "w," "x," and "y" both pertain to fraudulent trades the defendants engaged in after the *Litvak* indictment.  Mr. Gramins even spoke by phone with Salesperson 1 (Michael Romanelli, on the no contact list) about how to keep a representative from Victim 1 (QVT on the no contact list) from getting "suspicious" about their deceit.

The defendants have shown a consistent, years-long practice of lying to and manipulating the very people they now seek to contact directly, outside the presence of counsel.  These individuals include long-time business associates, individuals who had previously professed their trust in the defendants and former subordinates whom the defendants mentored in their illegal scheme.  This contact poses a significant threat to the integrity of the trial process, while contact in the presence of their counsel poses a negligible, almost non-existent burden to the defendants.[1] This is a particularized condition appropriate to the defendants' circumstances.

---

[1] To be clear, the government considers virtual presence, such as through a conference call line, to be unobjectionable and satisfactory to protecting the trial process for facilitating this contact.

Allowing the defendants' requested exception obliterates the restriction itself. Accordingly, the government respectfully requests that the Court deny the exception.

     c. **The defendants' defense will not be harmed by this condition**

It is not entirely clear to the Government why the defendants cannot contact potential witnesses with or through their counsel. Certainly if it is too inconvenient or impractical to make calls together, counsel can make calls on their own. There is no harm to the defense if the defendants do not initiate contact on their own. *See Vasilakos*, 508 F.3d at 410 ("[T]he defendants have not shown any harm stemming from their inability to contact government witnesses personally.").

As for the Government's suggestion that defendants make calls with their counsel on the telephone line, defendants' counsel stated that such phone calls would be awkward and not the way conversations worked in the "real world." But even without counsel on the phone line the conversation would certainly be awkward: (1) the defendants could not say anything other than asking them to call their lawyer; (2) defendants are calling witnesses that now know they have been lied to by the defendants; or (3) defendants are calling former subordinates that have provided the Government with information that led to the defendants' indictment. Regardless of whether counsel is on the telephone line, any conversation will not be "normal."

Counsel also stated that if defendants called potential witnesses with their counsel on the line, it would put the potential witnesses "on the spot." Having the

7

defendants make calls on their own would not put the potential witnesses any less on the spot.

### d. **The defendants' arguments are moot**

Moreover, the defendants' arguments are essentially moot; the majority, if not all, of the victims and witnesses have attorneys and should be contacted through their counsel.  The witnesses who have spoken to the government—which have been all disclosed in memoranda of interview the Government gave to the defendants—all have attorneys.  It is the Government's understanding that these individuals would prefer to be contacted through their attorneys and the defendants should contact them through their counsel accordingly.  The remaining natural individuals, other than special agents, are all current or former Nomura employees and communications with them can be facilitated through Nomura's counsel.  Similarly, the institutions that have been contacted by the Government and arranged for their employees to be interviewed—which, again, have all been disclosed to the defendants—have all expressed a preference to the Government for being contacted through counsel.  These parties, too, should be contacted through their attorneys. The defendants simply do not need to contact the victims and witnesses directly.[2]

---

[2] The Defendants cite *United States v. Lillemoe*, No. 15-CR-25 (JCH) (D. Conn. May 28, 2015), Dkt. 47 (Merriam, J.) in support of their motion.  However, *Lillemoe* is off point.  In *Lillemoe,* Judge Merriam maintained the prohibition preventing the defendants from contacting victims and witnesses directly.  She simply allowed two of the three co-defendants to have direct contact with each other.

## III.    Conclusion

For the reasons set forth above, the Government respectfully submits that the no contact condition as modified and agreed upon by the parties should be adopted by the Court and that the defendants' further request for an exception with regard to defendants directly contacting potential witnesses outside the presence of counsel for the purpose of asking these witnesses to talk with defendants' lawyers should be denied.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

HEATHER L. CHERRY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. phv07037

LIAM B. BRENNAN
ASSISTANT UNITED STATES ATTORNEY

U.S. Attorney's Office
157 Church Street
New Haven, CT 06510
(203) 821-3719
heather.cherry@usdoj.gov

9

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on January 8, 2016, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


                             __/s/_____

                             HEATHER CHERRY
                             ASSISTANT UNITED STATES ATTORNEY