# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:15CR155 (RNC) |
| | : | |
| v. | : | |
| | : | |
| ROSS SHAPIRO, | : | July 22, 2016 |
| MICHAEL GRAMINS, and | : | |
| TYLER PETERS, | : | |
|      Defendants. | : | |

## GOVERNMENT'S MOTION
## <u>REGARDING DEFENDANT'S EXPERT WITNESSES</u>

In letters dated June 13 and 27, 2016 (hereinafter "June 13 Notice" and "June 27 Notice," attached hereto as Exhibits 1 and 2, respectively) defendants Ross Shapiro, Michael Gramins, and Tyler Peters noticed four expert witnesses—Frank J. Fabozzi, Ph.D., Andrew Favret, Brian P. Vahey, Jr., and Richard Ellson, Ph.D.  The Government respectfully moves the Court for an order concerning the defendants' experts that grants the following relief:

i.    precluding all expert testimony not summarized in the June 13 and June 27 Notices;

ii.    requiring defendants to provide additional information regarding the basis of certain of their experts' proposed testimony or, alternatively, exclude that testimony;

iii.    precluding the defense from eliciting redundant testimony from different experts; and

iv.    consistent with the relief sought in the Government's previous motions *in limine*, precluding defendants' experts from testifying that (a) bonds traded in the charged scheme had fair market values or prices, (b) victims eventually made a profit on bonds they bought in the charged scheme, and (c) victims' purported lack of care or diligence is to blame for their entering into fraudulent trades with defendants.

## BACKGROUND

In summary, the June 13 and 27 Notices disclose certain information about each of the defendants' proposed experts.

Fabozzi is an industry expert who defendants proffer is prepared to testify regarding:

1)   the general attributes of RMBS bonds (June 13 Notice at 3);

2)   the secondary trading market for non-agency RMBS bonds from 2009-2013 (June 13 Notice at 3);

3)   relationships between investors and traders (June 13 Notice at 3-4);

4)   his analysis of models used by victims (June 13 Notice at 4);

5)   the process that non-agency RMBS investors generally use to make investment decisions (June 13 Notice at 4-5); and

6)   the range of prices paid by victims and the victims' eventual profitability (June 13 Notice at 5).

Favret is a regulatory expert who defendants proffer could opine regarding:

1)   terminology and practices in the secondary trading market for non-agency RMBS bonds (June 13 Notice at 6-10);

2)   his opinion on terms such as "commissions," "all-in," "on-top," "best execution, "customers" (June 13 Notice at 7-8); and

3)   for each charged trade, the victim was a Qualified Institutional Buyer, a term defined by regulation (June 13 Notice at 10).

Vahey is an industry expert who defendants proffer would testify on:

1)   the secondary trading market for non-agency RMBS bonds from 2009-2013 (June 27 Notice at 3-4);

2)   his analysis of models used by victims (June 27 Notice at 5, 7);

3)  the relationship between investors and traders (June 27 Notice at 5);

4)  the charged trades were executed at fair value price (June 27 Notice at 6-7); and

5)  the charged trades were highly profitable to victims (June 27 Notice at 7).

Ellson is an industry expert who defendants proffer is prepared to testify on:

1)  the general attributes of RMBS bonds (June 27 Notice at 9);

2)  the participants in the RMBS market (June 27 Notice at 9-10);

3)  the relationship between investors and traders (June 27 Notice at 10);

4)  compensation for trading firms (June 27 Notice at 10);

5)  liquidity in the RMBS market (June 27 Notice at 11);

6)  how investors determine a value for an RMBS bond (June 27 Notice at 11);

7)  the secondary trading market for non-agency RMBS bonds (June 27 Notice at 12);

8)  his view of the charged RMBS trades, including that such trades occurred at fair value and were profitable to victims (June 27 Notice at 12-13); and

9)  his opinions regarding compliance at trading firms (June 27 Notice at 13).

## ARGUMENT

The Court should enter an order that accomplishes four things.

*First*, the Court should exclude any expert testimony that is not properly disclosed in the defendants' June 13 and 27 Notices.

*Second*, the Court should require the defendants to provide additional information regarding the basis of their experts' proposed testimony or exclude the improperly-based testimony.

- 3 -

*Third,* the Court should preclude repetitive expert testimony by Fabozzi, Vahey and Ellson, particularly with respect to largely undisputed matters.

*Fourth*, consistent with the Government's previously-filed motions *in limine*, the Court should preclude the defense's experts from testifying that (a) bonds traded in the charged scheme had fair market values or prices, (b) victims eventually made a profit on bonds they bought in the charged scheme, and (c) victims' purported lack of care or reasonableness is to blame for their entering into fraudulent trades with defendants.

## I.    DEFENDANTS' EXPERT EVIDENCE SHOULD BE LIMITED TO OPINIONS SUMMARIZED IN THEIR NOTICES

Defendants should be precluded from offering any expert testimony that is not reflected in their June 13 and 27 Notices.[1]

Rule 16(b)(1)(C) provides in relevant part that "the defendant must . . . give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial." Fed. R. Cr. P. 16(b)(1)(C). "To satisfy the Rule, '[t]his summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.'"  *United States v. Ferguson*, No. 06-cr-137(CFD), 2007 WL 4539646, at *1 (D. Conn. Dec. 14, 2007).  The party proffering expert testimony bears the burden of demonstrating its admissibility.  *See Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 597, 592 n.10 (1993); *Bryans v. Cossette*, No. 3:11CV01263(JCH), 2013 WL 4737310, at *6.  Rule 16(d)(2) gives the district court the discretion to preclude expert

---

[1] Defendants' Notices purport to reserve the right to amend or expand on the proffered experts' opinions that victims executed charged trades at fair market prices and earned a profit on their eventual sale of bonds purchased in the charged scheme.  *See* June 13 Notice at 1; June 27 Notice at 1, 6-7, 12-13.  With respect to these topics, the Government respectfully refers the Court to its previous motions *in limine* seeking to preclude evidence or argument concerning fair market value and victim profitability.

testimony "regarding any topics or opinions not properly disclosed." *United States v. Mahaffy*, No. 05-CR613, 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007) (citing *United States v. Barile*, 286 F.3d 749, 758-59 (4th Cir. 2002)); *United States v. Naegele*, 468 F. Supp. 2d 175, 176 (D.D.C. 2007); *United States v. Wilson*, No. 04-CR-1016 (NGG), 2006 WL 3694550, at *2 (E.D.N.Y. Dec. 13, 2006).

Defendants necessarily cannot satisfy their burden of demonstrating the admissibility of expert testimony without first offering adequate notice to the Court.  Likewise, the Government cannot prepare to meet proposed expert testimony—including with an evidentiary objection, a motion to preclude or cross-examination—if it does not have an unambiguous summary of the expert's opinions and bases for those opinions.  And most importantly, the Court cannot fulfill its "gatekeeper" function if it does not know the proposed testimony and the basis for it.  *See* Fed. R. Crim. P. 16 advisory committee's note, 1993 Am.; *Wilson*, 2006 WL 3694550, at *2; *Naegele*, 468 F. Supp. 2d at 176.

Accordingly, the Court should exercise it discretion and order that any expert testimony not already noticed will be excluded.  *United States v. Petrie*, 302 F.3d 1280, 1288 (11th Cir.2002) (finding that district court properly excluded expert testimony "[a]s a sanction for ... untimely disclosure[.]")

## II.     THE COURT SHOULD REQUIRE DEFENDANTS TO DISCLOSE SUFFICIENT BASIS FOR THEIR TESTIMONY OR PRECLUDE THE PROPOSED TESTIMONY

In their expert disclosures, the defendants fail to provide sufficient information regarding certain of the proposed testimony and the bases for that testimony.  Specifically:

- The defendants insufficiently disclose the basis for Fabozzi's testimony regarding his analysis of the models used by victims and fail to disclose what opinions he will offer;

- The defendants insufficiently disclose the basis for Fabozzi's testimony regarding the process that non-agency RMBS investors generally use to make investment decisions; and

- The defendants insufficiently disclose the basis for Vahey's testimony regarding his analysis of the models used by victims other than Ellington and HIMCO.

Rule 16 requires the defendants to give the Government a written summary of the proposed expert testimony that "describe[s] the witness's opinions, the bases and reasons for those opinions."  Fed. R. Crim. P. 16(b)(1)(C).

### A. The Defendants Insufficiently Disclose the Content of and Basis for Fabozzi's Opinions Regarding His Analysis of Victims' Models

In their disclosure of Fabozzi's proposed testimony, the defendants state that Fabozzi will testify about "counterparty models," specifically their "complexity," "importance to investors," "assumptions used," "the variance of such assumptions," and "the relative sensitivity of the models to those assumptions."  June 13 Notice at 4.  This is not the summary of Fabozzi's opinions required by Rule 16, but simply a summary of topics on which he may opine.  Such an anodyne and vague disclosure is of no value to the Government in preparing for trial or to the Court in exercising its gatekeeper function of determining the admissibility of Fabozzi's opinions.

Moreover, the only basis for Fabozzi's as-yet-unstated opinions about victims' models is his "education, training and experience."  June 13 Notice at 3.  The defendants have not disclosed that Fabozzi has had any experience working at buy-side firms, nor participated in any relevant studies.  Nor does their disclosure indicate what specific models relevant to the facts of this case, if any, Fabozzi has reviewed, instead citing only "certain models used by buy-side firms (and obtained by Defendants in discovery)."  Accordingly, the defendants' disclosure currently provides

no discernable basis for Fabozzi to have reached any expert opinions on the models at specific victim funds.

In sum, the defendants have disclosed none of Fabozzi's actual opinions about the models and no bases or reasons for such opinions. They have not even identified what models he will opine about. The Court should order the defendants to provide this required notice or preclude this line of expert testimony.

**B.     The defendants insufficiently disclose the basis and qualifications for Fabozzi's testimony regarding the process that non-agency RMBS investors generally use to make investment decisions**

The defendants also plan to have Fabozzi testify about the "process that non-agency RMBS investors use to make investment decisions." June 13 Notice at 4.  Specifically, the defendants expect that Fabozzi would state that "a reasonable investor, such as the sophisticated counterparties identified in the Superseding Indictment, would give little, if any, weight to statements made by a dealer in the course of negotiations."  However, the defendants fail to state the basis for Fabozzi's testimony.  Having never worked as an RMBS investor, Fabozzi cannot fall back on his "experience," and the defendants have not disclosed any studies Fabozzi has done regarding the processes used by RMBS investors to make investment decisions.  It is unclear what qualifications, if any, Fabozzi has to provide such testimony.  Accordingly, the defendants must either remedy their deficient notice or such testimony from Fabozzi should be excluded from the trial.

**C.     The defendants insufficiently disclose Vahey's proposed testimony regarding his analysis of victims' models**

In their disclosure of Vahey's proposed testimony about the victims' models, the defendants cite two sets of documents that form the basis of Vahey's proposed testimony.  June 27 Notice at 7.  Specifically, the defendants provide, as an example, documents received from victims Ellington (ELL001447 to ELL001450) and HIMCO (HIMCO-PT-00000004, and

HIMCO-PT-00000009 -HIMCO-PT-00000010) as the basis for Vahey's testimony.  Having disclosed no other basis, the Court should limit Vahey's testimony to an analysis of those 6 pages.  However, the Court should preclude him from testifying about any other models at Ellington or HIMCO or models at any other victim counterparties.

The defendants have also indicated that they expect Vahey to testify that the prices executed for the trades in questions were within the "fair value as determined by the models."  June 27 Notice at 7.  The Government understands this to mean that the purchase prices were within the execution range of either Ellington or HIMCO's models, not that the price was "fair" in the context of the market (or "fair market value").  Indeed, the use of the word "fair" here is confusing since it refers to one firm's model.  Accordingly, the defendants should not be permitted to mischaracterize the execution ranges suggested by the victims' models as "fair value."

Additionally, the defendants state that "Vahey reserves the right to offer amended opinion summaries that the trades in issue were highly profitable and done at fair market value." This is another line of testimony completely. As discussed below, the defendants should be precluded from offering evidence of "fair market value."

## III.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM OFFERING REDUNDANT EXPERT TESTIMONY

Defendants proffer several experts to testify on the same topics or to offer the same opinions.[2]

---

[2] The redundancy of the proposed-experts' testimony is perhaps inevitable, since the defendants are endeavoring to present four different experts.  When the defendants requested consent for additional time to make their final expert disclosure, they informed the Government that they would be making one additional disclosure.  *See* Dkt. 150 (Defendants "have begun a search *to locate another individual* who can testify on the relevant category of expertise" and defendants request additional time "to locate and disclose *an additional expert witness*." (emphasis added.))  Two weeks later, they disclosed two additional experts without any explanation.  *See* June 27 Notice.

Even if expert testimony meets the requirements of Rule 702 and is relevant, the district court still has discretion to exclude an expert's testimony if "its probative value is substantially outweighed by the danger of . . . needless presentation of cumulative evidence."  Fed. R. Evid. 403; *United States v. Tapia-Ortiz*, 23 F.3d 738, 742 (2d Cir. 1994); *Levinson v. Westport Nat. Bank*, No. 09-cv-1955(VLB), 2013 WL 2181042, at *4 (D. Conn. May 20, 2013) ("It is only where an additional expert addresses a distinct issue that such testimony would not be cumulative."); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No. 1358, 2008 WL 1971538, at *13 (S.D.N.Y. May 7, 2008) ("I have instructed the parties in these cases that, due to the large number of expert witnesses, it is important that each expert address a distinct issue and cumulative expert testimony will not be allowed.").

The summary description above of defendants' proffered expert opinions shows the substantial overlap between the expected testimony of the three industry experts (Fabozzi, Vahey and Ellson) on the RMBS industry.  The following chart exemplifies some of such redundancies:

| **Fabozzi** | **Vahey** | **Ellson** |
|---|---|---|
| "How RMBS are structured, how they perform…" (June 13 Notice at 3) | | "What an RMBS is, how it is created and it performs." (June 27 Notice at 9) |

| **Fabozzi** | **Vahey** | **Ellson** |
|---|---|---|
| "The structure and unique features of the non-agency RMBS market, and, in particular, the market as it existed during the time period relevant to the Superseding Indictment.  The market was and remains opaque and illiquid, and during periods of market stress, such as the period relevant to the indictment, investors executed non-agency RMBS transactions within a wide price range…."  (June 13 Notice at 3) | "In the relevant period, the non-agency RMBS market was opaque, illiquid and distressed.  As distressed assets, non-agency RMBS traded at large discounts to par, and trading exhibited wide bid-ask prices."  (June 27 Notice at 3) | "That, during the time period relevant to the Superseding Indictment, Non-Agency RMBS traded in a distressed market and, generally, at large discounts to their par value." (June 27 Notice at 11) |
| "The non-agency RMBS market is dominated by sophisticated institutional investors, such as hedge funds and large asset managers, who invest heavily in research, modeling, and other kinds of qualitative and quantitative analytics."  (June 13 Notice at 3) | "The non-agency RMBS market was dominated by financially sophisticated institutional investors, such as asset management firms…which committed substantial resources to the research and analysis of non-agency RMBS."  (June 27 Notice at 3) | "That the buy-side of the market primarily consists of institutional asset managers and sophisticated hedge funds…."  (June 27 Notice at 10) |
| "In the RMBS market, trades are typically done on a principal-to-principal basis, and constitute arms-length transactions between sophisticated parties whose economic interests are in direct conflict with one another."  (June 13 Notice at 4) | "Trades in the non-agency RMBS market are principal-to-principal trades.  They are arms-length transactions between sophisticated institutions whose economic interests are not aligned."  (June 27 Notice at 5) | "That the transactions are arm's-length transactions and a reasonable buy-side firm would know or should know that the sell-side firm's economic interests are adverse to its own in these principal-to-principal transactions."  (June 27 Notice at 10) |

| **Fabozzi** | **Vahey** | **Ellson** |
|---|---|---|
| "The dealer owes no duty of 'best execution' to counterparties in principal-to-principal trades in the non-agency RMBS market.  The dealer has no obligation to disclose the dealer's acquisition price or profit in principal-to-principal trades of non-agency RMBS."  (June 13 Notice at 4) | "The dealer also has no duty to disclose its acquisition price or mark-up on a trade."  (June 27 Notice at 5) | "[T]here is no agency relationship between the sell-side and buy-side firms, and that, when the counterparty is a qualified institutional buyer, the sell-side firms do not have a duty of 'best execution.' … [A] sell-side firm is not obligated to reveal its compensation or 'all-in' markup to a buy-side firm." (June 27 Notice at 10) |
| "In principal-to-principal trades, the dealer's profit on a trade consists of the difference between the prices at which the firm purchases and sells a bond, which prices incorporate any mark-up on the bond in issue.  There are no separate commissions."  (June 13 Notice at 4) | "The dealer's profit (or loss) is the difference between the price at which it purchased the non-agency RMBS and the price at which it sold the security.  There are no commissions associated with non-agency RMBS principal-to principal trades."  (June 27 Notice at 5) | "[S]ell-side firms do not earn a 'commission' on any trade, but rather that they take risk by purchasing and owning the RMBS and then attempting to sell the RMBS for a higher price."  (June 27 Notice at 10) |
| "The typical dynamics of negotiations in the non-agency RMBS space and, in particular, that reasonable investors treat unverifiable information with skepticism.  The counterparty's unverified acquisition price would not affect a reasonable investor's decision about whether to purchase a non-agency RMBS and at what price."  (June 13 Notice at 5) | "Institutional investors in the non-agency RMBS market gave little or no weight to unverified information communicated by non-agency RMBS traders and salespersons and did not view these communications as important to their investment decisions to transact in non-agency RMBS.  A counter-party's non-verified purchase price would not affect a reasonable investor's decision about whether to purchase that security from that counter-party and at what price." (June 27 Notice at 6) | "[A] buy-side firm would place negligible or no value on a statement by the sell-side firm that cannot be confirmed with data. … [A] reasonable buy-side firm would place negligible value on statements of a sell-side trader, including, among other things, statements about the price at which the trader could purchase a given RMBS, based on the reasonable buy-side firm's knowledge that RMBS market participants (including both buy-side and sell-side firms) regularly misstate price information." (June 27 Notice at 11-12) |

The jury will not be aided by hearing the same expert testimony multiple times, particularly where the information being offered is either of minimal relevance or undisputed, as in many of the above instances.  Accordingly, the Court should order defendants to avoid cumulative expert testimony and pick which experts will testify to redundantly proffered opinions.

## IV. THE COURT SHOULD PRECLUDE DEFENDANTS' EXPERTS FROM OFFERING OTHERWISE INADMISSIBLE TESTIMONY

### A. Defendants' Experts Should Not Be Permitted to Claim that Bonds Were Bought or Sold at Fair Market Value

Any claim that the price the victims paid was within a range of fair market value or prices is inadmissible under Rules 401 and 403.  *United States v. Litvak*, 808 F.3d 160, 185-86 (2d Cir. 2015) ("[W]hether the prices were 'fair' was not an element of any of the crimes with which [the defendant] was charged and the potential confusion from such testimony might have outweighed any probative value."); *see also id.* ("[W]hether the price the alleged victims paid was within a range of 'fairness' was not relevant to determining if the misstatements themselves were important to a reasonable investor or whether [the defendant] intentionally deceived the counterparties' representative.").  The Government incorporates by reference its general motion *in limine* preclude this entire subject [Dkt. #166], and asks the Court to issue an order precluding defendants from introducing expert testimony that bonds fraudulently traded as part of the scheme were bought or sold at fair market value or prices, or that bonds so priced cannot be fraudulently traded.

### B. Defendants' Experts Should Not Be Permitted to Testify About Victims' Profits

Any claim that bonds fraudulently sold to victims were profitable is inadmissible under both Rules 401 and 403.  *Litvak*, 808 F.3d 160, 186 (2d Cir. 2015) ("Whether a victim later made a profit or loss on the bonds it purchased from [the defendant] has no bearing on whether [the defendant's] misrepresentations were material or whether [the defendant] intended to deceive the

purported victims.").  The Government incorporates by reference its general motion *in limine* to preclude this entire subject [Dkt. #167], and asks the Court to issue an order precluding defendants from introducing expert testimony that victims eventually made a profit on bonds they bought in the charged scheme.

### C.  Defendants' Experts Should Not Be Permitted to Blame the Victims

Any claim that the victims were negligent or not sufficiently cautious—or the suggestion that had they done more due diligence or been more rigorous they could have uncovered or avoided being victimized by defendants' fraud—is irrelevant to the issues to be decided by the jury.  *United States v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004) (explaining that the purpose of the federal fraud statutes is "not to grant permission to take advantage of the stupid or careless"); *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (agreeing with "[t]he majority of circuits to address the issue[, which have held] that a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud"); *United States v. Isola*, 548 F. App'x 723, 725 (2d Cir. 2013) (summary order:  "[E]vidence of a particular lender's unreasonableness is irrelevant to the materiality of [the defendant's] false statements because materiality is an objective question."). The Government incorporates by reference its motion *in limine* to preclude this entire subject [Dkt. #165], and asks the Court to issue an order precluding defendants from eliciting expert testimony that victims defrauded in this case should have been more diligent or cautious in entering into securities transactions and thus could have avoided being made victims of defendants' fraud.

### <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that the Court issue an order

i.  precluding all expert testimony not summarized in defendants' June 13 and 27 Notices;

ii.   requiring defendants to provide additional information regarding the basis of certain of their experts proposed testimony or, alternatively, excluding that testimony;

iii.   precluding defendants from eliciting redundant expert testimony; and

iv.   precluding defendants' experts from testifying that (a) bonds traded in the charged scheme had fair market values or prices, (b) victims eventually made a profit on bonds they bought in the charged scheme, and (c) victims' purported lack of care or reasonableness is to blame for their entering into fraudulent trades with defendants.


Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY


LIAM BRENNAN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT27924

HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY

U.S. Attorney's Office
157 Church Street
New Haven, CT 06510
(203) 821-3835

<u>**Certificate of Service**</u>

I hereby certify that on July 22, 2016, a copy of the foregoing was sent electronically to counsel for Ross Shapiro, Michael Gramins, and Tyler Peters through the Court's ECF system.


_____/s/_____

LIAM BRENNAN
ASSISTANT UNITED STATES ATTORNEY