UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:15CR155(RNC) |
| | : | |
| v. | : | |
| | : | |
| ROSS SHAPIRO, | : | August 1, 2016 |
| MICHAEL GRAMINS, and | : | |
| TYLER PETERS | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR ORDER
DIRECTING EARLY RETURN OF SUBPOENAS *DUCES TECUM*
UNDER RULE 17(C)(1)**

The Government respectfully submits this memorandum in opposition to defendants' motion [doc. #173] for issuance of subpoenas *duces tecum* pursuant to Rule 17(c)(1) of the Federal Rules of Criminal Procedure. The defendants seek documents from both victims and other RMBS dealers. The Government does not object to the subpoenas to counterparties of the Subject Trades for their models used in analyzing those trades.[1]  In all other respects, the Court should deny the defendants' request because the subpoenas do not satisfy the requirements of Rule 17(c) — the documents are irrelevant, inadmissible and non-specific.

**LEGAL STANDARD**

Unlike Rule 16 and *Brady*, Federal Rule of Criminal Procedure 17(c) is not a rule of discovery, but rather an aid to obtain admissible evidence to use at trial, including from a third party.  *See* Fed. R. Crim. P. 17(c).  "The purpose of a 17(c) subpoena is to implement the Sixth Amendment guarantee that the defendant shall have compulsory process to obtain evidence in the

---

[1] The Government does not intend any of its argument here to foreclose any objection by the recipients of the subpoenas when they receive notice.  It may very well be that those institutions have concerns—including those related to confidential trading information—that would not be known to the Government.

defendant's favor." *United States v. Ferguson*, No. 6-cr-37 (CFD), 2007 WL 2815068, at \*3-4 (D. Conn. Sept. 26, 2007) (citation omitted).  Indeed, it is well settled that there is no broad right to discovery in criminal cases, and that Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 700 (1974); *see also United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962) (holding Rule 17(c) is "not an additional discovery device").  Similarly, again in contrast to *Brady* and Rule 16, a Rule "17(c) subpoena may not be used to obtain impeachment material or material that merely *could* lead to additional admissible evidence." *Ferguson*, 2007 WL 2815068 at \*4 (emphasis added); *see also Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." (citation omitted)).

As a result, Rule 17(c) requires that a moving party show much more than simply materiality to the preparation of a defense.  Rather, the movant "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Nixon*, 418 U.S. at 700.  The proponent must also demonstrate that the materials are "not otherwise procurable" in advance of trial by the exercise of due diligence.  *Nixon*, 418 U.S. at 699; *see also, e.g.*, *United States v. Barnes*, 560 F. App'x 36, 40 (2d Cir. 2014), *cert. denied*, 134 S. Ct. 2715 (2014).  Likewise, the court must ensure that the "application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699 (citation omitted).

With regard to the first two *Nixon* factors—relevance and admissibility—a Rule 17(c) subpoena may be used only "to obtain . . . evidentiary materials." *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995).  This restriction is in contrast to the rules of civil procedure, which "permit the issuance of subpoenas to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence." *Id.* at 553 (citing

*United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965)).  Moreover, the material requested must have *present* evidentiary value, not merely *potential* evidentiary value.  *See, e.g.*, *United States v. RW Prof'l Leasing Servs. Corp.,* 228 F.R.D. 158, 162 (E.D.N.Y. 2005) ("The fact that they are potentially relevant or may be admissible is not sufficient." (citing *Marchisio,* 344 F.2d at 669)).

Unlike Rule 16, which requires production of documents "material to preparing the defense," a Rule 17(c) subpoena is limited to documents that would be relevant at trial under the rules of evidence.  Applying this principle in *Ferguson*, Judge Droney denied subpoenas that sought material beyond the scope of the offense on trial, a securities fraud related to a particular "Loss Portfolio Transaction," or "LPT."  First, the court denied a Rule 17(c) subpoena for *all* records of an internal investigation into fraudulent transactions involving a cooperating witness.  The court held instead, *inter alia*, that "[t]he [internal investigation] materials pertaining to transactions other than the LPT are irrelevant here, and render those portions of the [defendants'] subpoenas further deficient under *Nixon*."  *Ferguson*, 2007 WL 2815068, at \*4.  Later, the court also quashed on relevancy grounds a Rule 17(c) subpoena calling for *all* communications between designated individuals, where the Government had previously turned over a more limited set of relevant communications connected to the LPT.  *United States v. Ferguson*, No. 6-cr-137 (CFD), 2008 WL 113663, at \*2 (D. Conn. Jan. 2, 2008).

Even where a subpoena requests relevant and admissible evidence, it may still fail for lack of specificity.  "Requests for documents must be made with specificity so that the party subpoenaed can produce them and the court can determine whether they are relevant and not merely an attempt to 'discover' all documents of any kind held by [the subpoenaed entity]."  *RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. at 163.  To satisfy the specificity requirement, such requests must be

limited to "certain documents or sharply defined groups of documents," rather than broad categories of the type that may be sought in civil discovery.  *United States v. Weisberg*, No. 08-cr-347 (NGG), 2010 WL 5027537, at *2 (E.D.N.Y. Dec. 3, 2010); *see also, e.g.*, *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) ("These specificity and relevance elements [of Rule 17(c)] require more than the title of a document and conjecture as to its contents."); *United States v. Forbes*, No. 2-cr-264 (AHN), 2006 U.S. Dist. LEXIS 50595, at *10 (D. Conn. Jul. 25, 2006) ("Rule 17(c) subpoenas may be used solely to secure specifically identified evidence for trial that is relevant and admissible" (citation omitted)).  A defendant may not rely on speculation of the types of information that may be obtained from a request.  *See*, *e.g.*, *Barnes*, 560 F. App'x at 40 (finding that defendant failed to make showing of specificity when he "proffer[ed] only speculation that inmates cooperating with the government were conspiring to testify falsely against him and the subpoenaed materials would so demonstrate" (citations omitted)).

Indeed, a Rule 17(c) subpoena cannot properly be issued upon a "mere hope" of discovering favorable or exculpatory evidence.  *E.g., United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996); *Ferguson*, 2007 WL 2815068, at *4 n.15 ("[T]he 'mere hope' of finding exculpatory material is insufficient to justify enforcement of a 17(c) subpoena." (citation omitted)).

## ARGUMENT

I.   **THE DOCUMENTS DEFENDANTS SEEK FROM RMBS DEALERS ARE IRRELEVANT, INADMISSIBLE AND NON-SPECIFIC**

Several of the defendants' request fail the *Nixon* test, in that the proposed subpoenas would produce documents that are not relevant (and thus also inadmissible under Fed. R. Evid. 401) and the defendants' requests are nonspecific and call for broad swaths of material more akin to civil demand for production than a targeted Rule 17(c) subpoena.  Moreover, even to the extent that the Government may not contest some of the defendants' requests, the Government reserves its right

to challenge the admissibility of that material at trial on other grounds, including Fed. R. Evid. 403 because their probative valued is outweighed by their tendency to confuse the issue, to waste time and to present needlessly cumulative evidence.

The defendants break their requests into four general categories, *see* Def. Mem. at 3, and the Government will respond to each in turn.

### A.    Counterparty models for Subject Trades

First, the Government does not object to the defendants' requests for subpoenas to counterparties in this case for their financial models or other analyses of the RMBS that were part of the charged trades in this case or otherwise part of the Government's case-in-chief.   The Government's concession, however, is not for all of the reasons the defendants' assert, and the Government will object to the defendants using these models and analyses for irrelevant reasons.[2]

The Second Circuit in *United States v. Litvak* made clear that the defendants here should be permitted to introduce evidence to show that "minor price variances would not have mattered to sophisticated investors" and that "a misstatement may not be material where it resulted in a slight inflation of transaction costs."  808 F.3d 160, 185 (2d Cir. 2015) (internal citations omitted). Similarly, *Litvak* permits testimony to show that "misrepresentations by a dealer as to the price paid for certain RMBS would be immaterial to a counterparty that relies not on a 'market' price or the price at which prior trades took place, but instead on its own sophisticated valuation methods and computer model." *Id*. at 183.   In *Litvak*, the court was reviewing the district court's exclusion of an expert who would purportedly have testified to these effects.   To the extent that the

---

[2] The Government reads the defendant's motion to ask for permission to subpoena a particular counterparty for the model related to its own Subject Trade.  However, the subpoena, and some parts of the motion, seem to also request that the counterparty provide a model for a bond that was in a trade other than its own—which the Government does not know exists.  The Government requests that the defendants clarify this issue and/or narrow the subpoenas accordingly.

defendants intend to use the models in some way that makes the same points, i.e., related to price-sensitivity and valuation, those portions of the requested subpoenas may be appropriate.

Here, the defendants first justify their request for counterparty models, consistent with *Litvak*, because those are important to a counterparty's investment decision. However, the defendants then go on to suggest that "the models bear on whether the non-agency RMBS at issue were transacted at fair value." Def. Mem. at 5. While *Litvak* was clear that counterparty models are permitted for certain materiality-related purposes, it was equally clear that "[w]hether the prices were 'fair' was not an element of any of the crimes with which Litvak was charged and the potential confusion from such testimony might have outweighed any probative value." *Litvak*, 808 F.3d at 185.

As the Court is aware, the Government has already objected to the use of fair market value evidence in its motion *in limine*, and further argument will be forthcoming in the Government's reply brief. The defendants' fair market value argument here lacks clarity related to relevance, although they do discuss the issue in their Opposition to the Government's Motion *in Limine*. To the extent the Court finds these arguments important to deciding the present motion, the Government respectfully requests the Court await the Government's reply brief on this issue, to be filed on August 5th.

### B.   Other Bids Submitted to Counterparties for Subject Trades, including BWICs

Next, the defendants ask for "documents reflecting non-agency RMBS bids submitted to asset manager counterparties for Subject Trades, including lists of bids received in connection with [BWICs]." Def. Mem. at 3, 5. The basis for the defendants' request is unclear. The defendants state that the "bids received by the counterparties in connection with these 'BWICs' bear directly on the value of non-agency RMBS involved in the Subject Trades …. This information therefore

would be relevant to the issues of materiality and fair value." Doc. 173-1 at 5-6.  The reference to "value" here again appears to again be an argument about fair market value, and a circular one at that.  According to the defendants, the bids received "bear on value" (in other words can be used to ascertain fair market value) and thus they are relevant to fair market value, which according to the defendants, makes them relevant to materiality. However, the Second Circuit has deemed fair market value irrelevant to materiality. According to the defendants' reasoning, the bids received are thus also irrelevant to materiality.

If the defendants mean by "value" something other than fair market value, they should be required to come forward with that argument, and the Government will respond in turn.

### C.     RMBS Trades Executed Within The 30-Day Period Surrounding The Dates of the Subject Trades

The defendants' next request, for "documents reflecting non-agency RMBS trades in the thirty-day period surrounding the dates of the Subject Trades," Def. Mem. at 3, 6, fails both for relevance and specificity.  First, the defendants' justification, made without support and in a single paragraph, appears to be solely related to fair market value, which—again—is irrelevant under the standard set in *Litvak*.

Second, despite the defendants' conclusory argument that "the request is specific," it is in fact an overbroad demand for all trade data in the 30 days surrounding the Subject Trades, regardless of whether the trades were in the same RMBS as the Subject Trades themselves. Although they do not specifically say so, it appears the defendants hope to search the resulting trade data for "relevant evidence as to the price levels at which such institutions traded the same or comparable non-agency RMBS."  Def. Mem. at 6.  Relevance aside, this is clearly not an appropriate use of a Rule 17(c) subpoena, which permits only requests "to secure specifically identified evidence for trial that is relevant and admissible."  *Forbes*, No. 2-cr-264 (AHN), 2006

U.S. Dist. LEXIS 50595, at *10 (citation omitted).  The defendants do not point to any information establishing that the RMBS in question were actually traded in that period of time, and thus does not point to any specific relevant documents that would satisfy *Nixon*.  Moreover, the defendants appear also to argue that it would search the documents provided under this request for "comparable non-agency RMBS."  Def. Mem. at 6.  They do not provide any explanation as to what a "comparable" RMBS would look like, such that the Government cannot, at this point, respond.  Even different tranches of the same bond may have markedly different values, and it would be extremely difficult for the defendants to make an argument related to comparable trades without sending this trial off on an irrelevant and time-consuming tangent.

### D.      Trade Blotters and Market Color Spreadsheets

The defendants' final request, for "documents reflecting the prices at which other non-agency RMBS dealers bought and sold non-agency RMBS during the period from January 1, 2010 through June 1, 2013, including trade blotters and 'market color databases,'" fails for the same reasons as the prior request.

First, the defendant again cites fair market value as the principal relevance of the requested information.   Def. Mem. at 7 ("As real-time market data, such information would be highly relevant to an understanding of prevailing price levels in non-agency RMBS during the relevant period.").  As discussed above and in the related litigation on the motion *in limine*, fair market value is not relevant to the charged crimes and thus cannot support a subpoena under *Nixon*.

Second, as with the previous request, the defendants again try to use Rule 17(c) as a civil document demand rather than a targeted request for relevant evidence.  The defendants again request a broad swath of trade data—surely to include trade data in bonds that have nothing to do with this case—so that they can search the data for "nonagency RMBS involved in the Subject Trades and comparable non-agency RMBS generally."  Def. Mem. at 7.  As discussed in the prior

section, this is not an appropriate use of Rule 17(c).  Moreover, the defendants claim that "the data are expected to reflect wide bid-ask spreads, volatile trading and disparate valuations on the part of sophisticated market participants."  Def. Mem. at 7.  Thus, not only are the defendants asking for a broad array of documents to search for what they truly want, they also cannot even articulate to the Court that the documents they seek will support the argument they are trying to make. Indeed, "the 'mere hope' of finding exculpatory material is insufficient to justify enforcement of a 17(c) subpoena." *Ferguson*, 2007 WL 2815068, at *4 n.15 (citation omitted)).  This cannot support the specificity or relevance prongs of *Nixon*.

## II.     RULE 17(C)(3) REQUIRES THE COURT TO GIVE NOTICE TO AFFECTED VICTIMS

Rule 17(c)(3) requires the Court before entering an order to give notice to victims whose confidential information is being subpoenaed. The defendants seek victims' trading data from third-party RMBS dealers. This data includes the prices that victims bought or sold bonds for, as well as bids and offers victims made or received. As discussed above, the RMBS market is opaque and this data is typically confidential. Since these subpoenas seek victims' trading strategies and profitability information held by third parties, this Court should require the defendants to give notice to the victims prior to authorizing subpoenas so that victims have the opportunity to move to quash or modify subpoenas seeking their confidential information from third-party broker/dealers.

## III.    THE SUBPOENAS IMPROPERLY CALL FOR THE DOCUMENTS TO BE PRODUCED TO THE DEFENDANTS

The subpoenas improperly call for the documents to be produced to the defendants. Rule 17(c)(1) contemplates production to the Court, not to counsel.  Under the rule, the Court may then permit inspection by the parties.

## CONCLUSION

The Government respectfully requests that the Court deny the defendants' motion except as set forth above.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

_____/s/_____
LIAM BRENNAN
ASSTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT27924

HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. PHV07037

U.S. Attorney's Office
157 Church Street
New Haven, CT 06510
(203) 821-3835

- 10 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.


/s/
_____
LIAM BRENNAN
ASSISTANT UNITED STATES ATTORNEY
