

**United States Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*  *(203) 821-3700*
*157 Church Street, 25th Floor*  *Fax (203) 773-5376*
*New Haven, Connecticut  06510*  *www.justice.gov/usao-ct*

November 22, 2016

Hon. Robert N. Chatigny
United States District Judge
450 Main Street
Hartford, CT 06103

                    Re:    *United States v. Ross Shapiro, et. al.*
                           3:15CR155(RNC)

Dear Judge Chatigny,

      We write at the Court's request to identify current disputes between the Government and the defendants regarding the defendants' expert disclosures.  The defendants currently have a deadline of November 30, 2016 for final expert disclosures.

**I.     Background**

      At the hearing on October 26, 2016, the Court indicated that it would be available in advance of the November 30th deadline to resolve specific disputes over expert disclosures, so that the deadline would in fact be a firm one.  To date, the defendants have repeatedly refused to commit to the finality of their disclosures, and have reserved the right to amend them as they deem appropriate.  While the Government would otherwise wait until the "final" disclosures to object, the Government agrees that a procedure that will eliminate surprise and promote finality is appropriate here.

      To facilitate this process, on November 8, 2016, the Government wrote to counsel for the defendants to state comprehensively its view of the deficiencies in the current iterations of the expert disclosures—understanding that these are subject to change until November 30th.  *See* Exhibit A. This was done in large part to permit the defendants to note any disputes with those alleged deficiencies, so that they could be resolved prior to the November 30th deadline.  On November 15, 2016, the defendants responded with a letter (hereinafter the "November 15

Revised Disclosure," attached as Exhibit B)[1] that addressed certain deficiencies related to Professor Frank Fabozzi, in addition to arguing with the timing[2] of the Government's letter and the requirements of disclosures generally.  On the one hand, the defendants indicated that their November 15 Revised Disclosure and the final disclosure on November 30th "will fully satisfy the purported deficiencies that the government has raised regarding the adequacy of our disclosures."  At the same time, however, the defendants have provided a Revised Disclosure that does not meet some of the core issues repeatedly raised by the Government.  Similarly, the defendants have requested a hearing without specifying which of the Government's complaints they dispute, and without any attempt to address these issues directly with the Government.

The core dispute appears to be the detail with which the defendants must disclose their experts' testimony and the bases thereof.  Fed. R. Crim. P. 16(b)(1)(C) requires that "[t]he defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. . . .This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." "Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions." *United States v. Ferguson*, No. 3:06CR137(CFD), 2007 WL 4539646 at *1, (D. Conn. December 14, 2007).  Such disclosures should include "not only written and oral reports, tests, reports and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." *Id*. (quoting Fed. R. Crim. P. 16 Advisory Committee Notes (1993)).  Moreover, a disclosure must do more than provide a laundry list of sources that a witness has either written or reviewed.  Rather, the disclosure must describe which source was used to reach which opinion. "Absent information that links specific sources to each of the experts' opinions, the government does not have the type of information envisioned by Rule 16(b)(1)(C) with which to prepare for cross-examining the experts." *Id*. at *2.

Judge Droney's description of the deficiencies in *Ferguson* mirror those claimed by the Government here.  As explained in the Government's November 8th letter, many of the experts' most critical "opinions" in the original disclosures (and supplements) were in fact neutral descriptions of topics rather than actual opinions and/or are insufficiently sourced given the background of the particular expert.  As to Dr. Fabozzi, the defendants' responses in the November 15 Revised Disclosure are addressed below.  The defendants have today sent letters to the Government addressing the concerns related to the disclosures of Favret, Vahey, and Ellson and we will respond as soon as possible with remaining disclosure issues, if any.

---

[1] The defendants' also provided a redline against the original disclosure of Dr. Fabozzi, which we attach at the end of Exhibit A.

[2] The defendants complain in their November 15 Revised Disclosure that the Government's November 8th letter raises issues for the first time.  First, the core issues in the Government's most recent letter have been raised and re-raised in prior filings, and the defendants have still not cured these deficiencies.  Second, it is the defendants who have repeatedly failed to commit to final disclosures, and continue to push back their disclosure deadlines.  Thus it seems at best ironic that the defendants should seek relief on timing grounds.  Third, there were many deficiencies that the Government was prepared to accept in order to accommodate the defendants' request for a speedy trial in October.  Now that the defendants have moved for a continuance, and have concomitantly expanded the time for their own expert disclosures, the Government reasonably expects that the disclosures should be fulsome.

## II.     Disclosure Issues Related to Professor Fabozzi

With regard to Dr. Fabozzi, the defendants have amended their expert disclosure in response to the Government's letter of November 8th and issues raised in prior filings. *See* November 15 Revised Disclosure. While in some respects the revisions have improved the disclosure, in others the deficiencies persist and in some cases have been exacerbated. To be specific, the Government will address each of its claims from its November 8th letter, and the defendants' responses, in turn:[3]

**Deficiency #1**

Deficient Proposed Opinion (P. 2): *How RMBS are structured, how they perform, and how they are evaluated as investments, including specifically during the time period covered by the Superseding Indictment, when RMBS were viewed as distressed assets. What a non-agency RMBS is and how its expected value to an investor is driven by assumptions about the underlying mortgage pool and other factors such as default rates, recovery rates, prepayment rates, housing market conditions, and geographical factors.*

Additional Information Required: Please summarize the actual opinions the witness intends to offer with regard to each of these topics listed. For example, what will he say about how RMBS are evaluated as investments? How will he describe a non-agency RMBS?

Analysis:

Here, the defendants have addressed their disclosure's lack of clarity by suggesting in their November 15 Revised Disclosure that Dr. Fabozzi will use certain of the models from the discovery in this case to "explain to the jury the various components of these models . . . and how those inputs are used to generate a price range for a given RMBS." November 15 Revised Disclosure, Section (b)(i). It is clear that Dr. Fabozzi is not going to limit his testimony to the fact that investors use models, but instead he intends to walk the jury through *how* they use specific models from the discovery. To that end, the defendants must provide the opinions Dr. Fabozzi will offer as to each of the models to which he will refer, rather than a non-exhaustive list of models. While specificity may be inconvenient to the defendants, it is clearly required by the rules. As the Second Circuit has noted in application of the Government's analogous obligation, "[t]his disclosure requirement creates an incentive for the government to limit its use of experts to proper subject matters of expert testimony, lest broader expert testimony require broader pre-trial disclosure." *United States v. Dukagjini*, 326 F.3d 45, 56 (2d Cir. 2002).

Moreover (and as will be a common theme in this letter), despite the "final" nature of the disclosure, the defendants seem unwilling to limit themselves to the models they now disclose. As of November 30th, this list should be final.

---

[3] For each deficiency, the Government will lay out (1) the deficient opinion, (2) the Government's request for more information, and (3) the Government's analysis of the defendants' revised disclosure on that particular point.

**Deficiency #2**

<u>Deficient Proposed Opinion</u> (P.4): *In principal-to-principal trades, the dealer's profit on a trade consists of the difference between the prices at which the firm purchases and sells a bond, which prices incorporate any mark-up on the bond in issue. There are no separate commissions. Certain of the trade confirmations relating to the charged offenses illustrate Dr. Fabozzi's opinions regarding the principal-principal nature of these trades.*

<u>Additional Information Required</u>: What specific trade confirmations will Dr. Fabozzi reference in his testimony? Are these Government exhibits? If so, please reference the exhibit number. If not, please indicate what defense exhibit they represent. Please summarize whatever opinion he may offer with regard to those confirmations.

<u>Analysis</u>:

The November 15 Revised Disclosure, Section (b)(vi), as well as Section (b)(vii), newly identifies a series of trade confirmations that the defendants claim will be used to show the principal-to-principal nature of RMBS trades. First, the defendants do not actually explain what Dr. Fabozzi will say about each of these trade confirmations. Second, the defendants' use of the abbreviation "e.g." indicates again that this list is non-exhaustive. The defendants should be expected at this point to commit to a set of documents upon which their experts will rely.

**Deficiency #3**

<u>Deficient Proposed Opinion (P.4)</u>: *Analysis of Counterparty Models. The complexity of certain models used by buy-side firms (and obtained by Defendants through discovery), their importance to investors, the assumptions used in the models, the variance of such assumptions, and the relative sensitivity of the models to those assumptions.*

<u>Additional Information Required</u>: What specific models will Dr. Fabozzi reference? Please cite the Bates numbers in the discovery. Please also summarize the opinions he will offer with regard to each model, rather than generalities over the models collectively. We do not believe it is sufficient to simply aver that the models *are* complex, particularly if (as we assume) he will say more than just that. What will he say about their importance to investors? What will he say about the assumptions, the variance of those assumptions, and sensitivity of the models to those assumptions?

<u>Analysis</u>:

This deficiency was first raised in the context of the Government's expert motion, *see* Doc. 172 at 6-7, and has been pressed in each subsequent communication. The defendants initially declined to provide any more specificity, other than to say that Fabozzi "would testify that counterparty financial models *are* complex and *are* important to buy-side investors." Doc. 207 at 3. The defendants provided marginally more information in their response to the Government's September 22nd letter (attached hereto as Exhibit C), saying that "Dr. Fabozzi has reviewed certain financial models provided to defendants during the course of discovery, and may testify about specific models at trial, including ELL001447, HIMCO-PT-00000004,

HIMCOPT-00000009. Dr. Fabozzi may also review and testify about additional models received during the course of discovery." Defendants' Letter of October 17, 2016 ("Oct. 17 letter," attached as Exhibit D) at 2. However, even as to these models the disclosure was spartan. The defendants explained: "At this time, we expect that Mr. Vahey and Dr. Fabozzi will generally describe the complexity of these models; the types of inputs, assumptions, and variables utilized by these models and their importance to valuation; and how these models are used by financial institutions to evaluate residential mortgage-backed securities ("RMBS") and inform their RMBS trading decisions." *Id*.

The November 15 Revised Disclosure has not cured the deficiency. On the one hand, the November 15 Revised Disclosure now lists—for the first time—several models that will inform Dr. Fabozzi's testimony. *See* November 15 Revised Disclosure, Section (b)(viii). However, even though the disclosure now lists several more models, it still fails to summarize what Dr. Fabozzi will say about each model. It seems unlikely that Dr. Fabozzi will limit himself simply to saying that these models are highly complex and that they were important to investors. Moreover, the November 15 Revised Disclosure *still* fails to explain what Dr. Fabozzi will say about the large number of assumptions and the sensitivity of the models to those assumptions. If Dr. Fabozzi intends to use a counterparty model to show that it is sensitive or insensitive to changes in particular assumptions, that is an opinion that must be disclosed. Most importantly, the disclosure is still generic—to the extent that the defendants intend to have Fabozzi analyze models to make any of his points, they must disclose the opinions he will offer specific to each model, rather than in broad, general terms across all models.

Finally, as we have noted repeatedly, the defendants still refuse to commit to a list of models. First, the list is again given with an "e.g.," suggesting that they may supplement this beyond the November 30th deadline. Second, the Bates numbers referenced in the defendants' October 17th letter, which purported to answer the same question, are not included in the November 15 Revised Disclosure. It is not clear to the Government if that means that the earlier-disclosed models are no longer a part of the anticipated testimony.

**Deficiencies #4-5[4]**

Deficient Proposed Opinion (P. 4): *Process that Non-Agency RMBS Investors Use to Make Investment Decisions. The manner in which sophisticated investors in the non-agency RMBS market make decisions about whether to buy, sell, or hold a bond, including the role of proprietary modeling in the decision-making process, as well as other relevant market information, and how reasonable investors go about acquiring, compiling, evaluating and verifying such information.*

Additional Information Required: Please summarize *what* Dr. Fabozzi will actually say about each of these topics. For example, what will he say about how investors make decisions? What will he say about the role of modeling? What will he say about the role of market information? What will he say regarding how investors acquire, compile, evaluate, and verify such information? What you have provided thus far does not answer these questions. Finally, please explain what sources Dr. Fabozzi will rely on for his knowledge of this process and each of its

---

[4] We have combined two issues here for purposes of efficiency.

components. Where you cite material that Dr. Fabozzi has written, please explain his sources for the information, not just that he has written it.  You also refer to treatises that Dr. Fabozzi has edited, such as the *Handbook of Mortgage Backed Securities*, which has a number of discrete articles written by other people in addition to material authored by Fabozzi.  Please specify what articles Dr. Fabozzi will rely on and for what propositions.

<u>Deficient Proposed Opinion (P.4-5)</u>: *A reasonable investor, such as the sophisticated counterparties identified in the Superseding Indictment, would give little, if any, weight to statements made by a dealer in the course of negotiations, including the dealer's representations about the price at which the dealer previously purchased the RMBS, whether the RMBS was being sold from the dealer's inventory, or whether the dealer was acting as an intermediary. It would be a breach of the counterparties' duties to their own investors to rely on such representations in making a decision whether to purchase an RMBS and, if so, at what price. As an economic matter, the dealer profit as a principal on a given trade has no effect on the future cash flows from the bond.*

<u>Additional Information Required</u>: Again, please explain Dr. Fabozzi's specific sources for this information.  Nothing in any of the material you have thus far provided to us explains his basis for testifying to these points.

<u>Analysis</u>:

      Again, these issues have been raised by the Government on several prior occasions, beginning with the Government's expert motion.  *See* Doc. 172 at 7.  As to the substance of this part of the disclosure, the defendants have provided some additional detail.  If the defendants intend to use analysis of counterparty models here to support Fabozzi's points, they must produce that analysis and identify what models are being used.

      As to the bases of the opinions, the defendants *still* fail to source in Mr. Fabozzi's literature significant portions of these opinions.  Initially, the defendants answered this complaint by reference to Fabozzi's impressive academic and literary credentials and his lengthy bibliography, much of which is irrelevant to the issues here.  *See* Doc. 207 at 3-4.  While they identified in a footnote three books in particular, they did not explain which book supported which opinion.   Then, in the defendants' October 17th letter, they singled out "the *Handbook of Fixed-Income Securities* and the *Handbook of Mortgage-Backed Securities*," which the defendants state "are fixtures on mortgage-backed trading desks across the country, and cover the RMBS investment process extensively."  They also reiterated that these opinions are informed by Fabozzi's activities training traders at buy-side and sell-side firms, and his teaching of business school students.  *Id*. at 3.  The Government pointed out in its November 8th letter that the defendants had still not explained where these sell-side process-oriented opinions came from, even if Fabozzi has written or taught about it.  As to the handbooks, these are in significant part compilations of the academic work of others that Fabozzi edited; the Government sought to know which of this material Fabozzi will rely on for which opinion.

      While the November 15 Revised Disclosure now specifies particular chapters of Fabozzi's work (and edited work) upon which he relies, he still does not explain how those chapters would support his basis of knowledge for how buy-side investors made investment

decisions.  If anything, the November 15 Revised Disclosure actually exacerbates the issue, as it expands the disclosure of testimony related to the negotiation process.  *See* November 15 Revised Disclosure, Section (b)(x).  To be clear, the Government does not contest Dr. Fabozzi's ability to testify about modeling and how bonds are valued.  All of the sources identified by the defendants speak to that issue in a remarkable level of scientific detail.  The defendants, however, appear to want Mr. Fabozzi to testify about how "reasonable" buy-side investors made their decisions, what weight they put on particular factors, how they gathered pricing information, and the weight a "reasonable" buy-side investor would put on the sell-side's price information; there is nothing in any of the sources provided by the defendants that touches at all on the negotiation process or the actual buying or selling of an RMBS.  The Government seeks a disclosure that "links specific sources to each of the experts' opinions."  *Ferguson*, 2007 WL 4539646 at *2.  Since this trial is about the negotiation process, and *not* the valuing of bonds, the Government is entitled to know how Fabozzi—clearly an expert on valuation—can testify to the negotiation process, including his opinions about what reasonable investors will and will not rely on.  None of the sources cited by the defendants reach this issue.

**Deficiency #6**

Deficient Proposed Opinion (P. 5): *The market roles of investors and dealers, what information they typically exchange, and how dealers are compensated. The typical dynamics of negotiations in the non-agency RMBS space and, in particular, that reasonable investors treat unverifiable information with skepticism. The counterparty's unverified acquisition price would not affect a reasonable investor's decision about whether to purchase a non-agency RMBS and at what price.*

Additional Information Required: Please summarize what opinions Dr. Fabozzi actually intends to offer with regard to each of these topics.  For example, what will he say about the information investors and dealers typically exchange and how dealers are compensated?  What will he say about the dynamics of negotiations beyond so-called unverifiable information? How has he gained knowledge of the "dynamics of negotiations in the non-agency RMBS space and, in particular, that reasonable investors treat unverifiable information with skepticism?"

Analysis:

      The defendants have clarified several issues with this disclosure.  *See* November 15 Revised Disclosure, Section (b)(xi).  It appears that this paragraph is substantially similar to prior paragraphs concerning valuation of bonds and the investment decisions of buy-side investors, including the opinion that buy-side investors would not rely on price information from sell-side traders.  Again, as discussed in Deficiency #4, the defendants have not properly sourced these opinions related to the process of negotiation for RMBS bonds.

**Deficiency #7**

Deficient Proposed Opinion (P. 5): *Since non-agency RMBS were viewed as distressed assets during the time period covered by the Superseding Indictment, reasonable investors were willing to pay, and did pay, a range of prices for the same RMBS during the same periods of time. Dr. Fabozzi may further explain, based on his review of the trade confirmations obtained by*

*Defendants during discovery, the amount of profit or loss realized by the counterparties identified in the Superseding Indictment through their prior or subsequent trades of the RMBS they bought from or sold to Nomura.*

Additional Information Required: Precisely what trade confirmations will Dr. Fabozzi testify about?  Please explain what calculations Dr. Fabozzi engaged in, and their results.  Although we understand that the Court will likely exclude evidence of ultimate profitability, your disclosure is bereft of any specificity, such that we cannot assess the proposed testimony in light of the Court's statements.

Analysis:

First, the defendants have now—for the first time—identified two Bates numbers of trade confirmations to which Dr. Fabozzi may refer, but again use "e.g.," suggesting they intend to add other confirmations.  *See* November 15 Revised Disclosure, Section (b)(xii).  Second, the ultimate profit or loss of a trade (based on prior or subsequent trades by victim investors) is irrelevant, consistent with the Court's prior statements on the matter, and yet the defendants seemingly persist in their intention to offer the testimony.  Third, the defendants have still not provided any of Dr. Fabozzi's analysis of particular trades to make this point.  Putting its irrelevance to the side, the disclosure does not actually explain what opinions Dr. Fabozzi will give as to each of the trade confirmations he analyzes, including what profit he claims the investor made on which particular bond.

## III.     Disclosure Issues Related to Other Experts

The Government also raised a number of other issues with the disclosures of the remaining three experts.  Earlier today, the defendants e-mailed revisions to their disclosures of Andrew Favret, Brian Vahey, and Dr. Richard Ellson (hereinafter the "November 22 Revised Disclosures").   These November 22 Revised Disclosures not only appear to address themselves to the deficiencies raised by the Government, but they also add entirely new opinions that had not been previously suggested in the earlier disclosures.

Although the Government has preliminarily reviewed the November 22 Revised Disclosures, we are not yet in a position to comment on whether it satisfies the Government's concerns.  The Government will proceed with all due speed over the impending holiday to review the disclosure, and will raise any issues that we believe are not satisfied by the November 22 Revised Disclosures.

**IV.     Conclusion**

In sum, the core dispute between the parties remains the level of detail required by the rules.  The defendants' disclosures lack specificity; they repeatedly suggest analysis of documents in discovery without actually disclosing that analysis or the opinions derived therefrom; they reveal topics rather than opinions; and they insufficiently source several opinions.

In light of the lack of finality of the expert disclosures to date, the Government is not yet moving to preclude testimony as a result of these deficiencies.  Indeed, the Government has no interest in so moving; rather, we simply seek disclosures sufficient to prepare for cross examination of these expert witnesses in accordance with the rules.[5]

                                      Sincerely,

                                      DEIRDRE M. DALY
                                    UNITED STATES ATTORNEY

                                    DAVID E. NOVICK
                                    LIAM B. BRENNAN
                                    HEATHER L. CHERRY
                                    ASSISTANT UNITED STATES ATTORNEYS

cc. All defense counsel

---

[5] To be clear, the Government may still move to preclude expert testimony on other grounds.  An initial review of the November 22 Revised Disclosure reveals newly offered opinions that may be inadmissible, and the Government is considering whether to file a motion accordingly.