

**United States Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*  (203) 821-3700
*157 Church Street, 25th Floor*  *Fax (203) 773-5376*
*New Haven, Connecticut  06510*  *www.justice.gov/usao/ct*

November 8, 2016

<u>*Via Email*</u>

| | |
|---|---|
| Guy Petrillo | Marc Mukasey |
| Petrillo Klein & Boxer LLP | Bracewell & Giuliani LLP |
| 655 Third Avenue, 22nd Floor | 1251 Avenue of the Americas, 49th Floor |
| New York, NY 10017 | New York, NY 10020-1100 |
| *(Counsel for Defendant Ross Shapiro)* | *(Counsel for Defendant Michael Gramins)* |

Brett D. Jaffe
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
*(Counsel for Defendant Tyler Peters)*

    Re: *United States v. Ross Shapiro, et al.*
       Case No.: 3:15CR155(RNC)

Dear Counsel:

  At the October 26, 2016 hearing, Judge Chatigny set a firm final deadline of November 30, 2016, for the defendants' expert disclosures. The Court also suggested that it would be available to address the sufficiency of disclosures prior to the deadline so that there is no misunderstanding. We write now to state our view of what the defendants' final disclosure should address, so that we may attempt to work out any differences. Should we ultimately disagree, we believe a hearing with the Court may be appropriate.

  Generally speaking, and as more specifically described below, we believe your disclosures (a) are more topics than opinions; (b) fail to summarize sufficiently several of the opinions that are offered; (c) provide insufficient bases for opinions; and (d) fail to disclose the documents and analysis underlying opinions. We have attempted to comprehensively set out specific issues below.

**1. Frank J. Fabozzi, Ph. D. (June 13, 2016 disclosure)**

<u>Deficient Proposed Opinion (P. 2)</u>: *How RMBS are structured, how they perform, and how they are evaluated as investments, including specifically during the time period covered by the Superseding Indictment, when RMBS were viewed as distressed assets. What a non-agency*

*Letter to All Counsel*
*November 8, 2016  Page 2*

*RMBS is and how its expected value to an investor is driven by assumptions about the underlying mortgage pool and other factors such as default rates, recovery rates, prepayment rates, housing market conditions, and geographical factors.*

<u>Additional Information Required</u>: Please summarize the actual opinions the witness intends to offer with regard to each of these topics listed.  For example, what will he say about how RMBS are evaluated as investments? How will he describe a non-agency RMBS?

<u>Deficient Proposed Opinion</u> (P.4): *In principal-to-principal trades, the dealer's profit on a trade consists of the difference between the prices at which the firm purchases and sells a bond, which prices incorporate any mark-up on the bond in issue. There are no separate commissions. Certain of the trade confirmations relating to the charged offenses illustrate Dr. Fabozzi's opinions regarding the principal-principal nature of these trades.*

<u>Additional Information Required</u>: What specific trade confirmations will Dr. Fabozzi reference in his testimony? Are these Government exhibits?  If so, please reference the exhibit number.  If not, please indicate what defense exhibit they represent.  Please summarize whatever opinion he may offer with regard to those confirmations.

<u>Deficient Proposed Opinion (P.4)</u>: *Analysis of Counterparty Models. The complexity of certain models used by buy-side firms (and obtained by Defendants through discovery), their importance to investors, the assumptions used in the models, the variance of such assumptions, and the relative sensitivity of the models to those assumptions.*

<u>Additional Information Required</u>: What specific models will Dr. Fabozzi reference?  Please cite the Bates numbers in the discovery. Please also summarize the opinions he will offer with regard to each model, rather than generalities over the models collectively.  We do not believe it is sufficient to simply aver that the models *are* complex, particularly if (as we assume) he will say more than just that.  What will he say about their importance to investors?  What will he say about the assumptions, the variance of those assumptions, and sensitivity of the models to those assumptions?

<u>Deficient Proposed Opinion (P. 4)</u>: *Process that Non-Agency RMBS Investors Use to Make Investment Decisions. The manner in which sophisticated investors in the non-agency RMBS market make decisions about whether to buy, sell, or hold a bond, including the role of proprietary modeling in the decision-making process, as well as other relevant market information, and how reasonable investors go about acquiring, compiling, evaluating and verifying such information.*

<u>Additional Information Required</u>: Please summarize *what* Dr. Fabozzi will actually say about each of these topics.  For example, what will he say about how investors make decisions?  What will he say about the role of modeling? What will he say about the role of market information?  What will he say regarding how investors acquire, compile, evaluate, and verify such information?  What you have provided thus far does not answer these questions. Finally, please explain what sources Dr. Fabozzi will rely on for his knowledge of this process and each of its components. Where you cite material that Dr. Fabozzi has written, please explain his sources for the information, not just that he has written it.  You also refer to treatises that Dr. Fabozzi has

*Letter to All Counsel*
*November 8, 2016   Page 3*

edited, such as the *Handbook of Mortgage Backed Securities*, which has a number of discrete articles written by other people in addition to material authored by Fabozzi. Please specify what articles Dr. Fabozzi will rely on and for what propositions.

Deficient Proposed Opinion (P.4-5): *A reasonable investor, such as the sophisticated counterparties identified in the Superseding Indictment, would give little, if any, weight to statements made by a dealer in the course of negotiations, including the dealer's representations about the price at which the dealer previously purchased the RMBS, whether the RMBS was being sold from the dealer's inventory, or whether the dealer was acting as an intermediary. It would be a breach of the counterparties' duties to their own investors to rely on such representations in making a decision whether to purchase an RMBS and, if so, at what price. As an economic matter, the dealer profit as a principal on a given trade has no effect on the future cash flows from the bond.*

Additional Information Required: Again, please explain Dr. Fabozzi's specific sources for this information. Nothing in any of the material you have thus far provided to us explains his basis for testifying to these points.

Deficient Proposed Opinion (P. 5): *The market roles of investors and dealers, what information they typically exchange, and how dealers are compensated. The typical dynamics of negotiations in the non-agency RMBS space and, in particular, that reasonable investors treat unverifiable information with skepticism. The counterparty's unverified acquisition price would not affect a reasonable investor's decision about whether to purchase a non-agency RMBS and at what price.*

Additional Information Required: Please summarize what opinions Dr. Fabozzi actually intends to offer with regard to each of these topics. For example, what will he say about the information investors and dealers typically exchange and how dealers are compensated? What will he say about the dynamics of negotiations beyond so-called unverifiable information? How has he gained knowledge of the "dynamics of negotiations in the non-agency RMBS space and, in particular, that reasonable investors treat unverifiable information with skepticism?"

Deficient Proposed Opinion (P. 5): *Since non-agency RMBS were viewed as distressed assets during the time period covered by the Superseding Indictment, reasonable investors were willing to pay, and did pay, a range of prices for the same RMBS during the same periods of time. Dr. Fabozzi may further explain, based on his review of the trade confirmations obtained by Defendants during discovery, the amount of profit or loss realized by the counterparties identified in the Superseding Indictment through their prior or subsequent trades of the RMBS they bought from or sold to Nomura.*

Additional Information Required: Precisely what trade confirmations will Dr. Fabozzi testify about? Please explain what calculations Dr. Fabozzi engaged in, and their results. Although we understand that the Court will likely exclude evidence of ultimate profitability, your disclosure is bereft of any specificity, such that we cannot assess the proposed testimony in light of the Court's statements.

*Letter to All Counsel*
*November 8, 2016   Page 4*

**2.   Andrew Favret (June 13, 2016 Disclosure)**

Deficient Proposed Opinion (P. 7): *Buy-side bond market participants such as asset managers, investment funds, and hedge funds do not regard disclosure of a dealer's costs or profits as important; rather institutional bond buyers focus on total price and yield, which necessarily take into account any embedded profit in the price quoted by a dealer; these buy-side firms are equipped to evaluate the fairness of a price and negotiate accordingly.*

Additional Information Required:  On what basis do you propose to offer Mr. Favret's testimony regarding what buy-side investors regard as important?

Deficient Proposed Opinion (P. 7): *Attempts on the regulatory level to require dealers to disclose mark-ups and require greater price transparency have been opposed by both the "sell side" and the "buy side."*

Additional Information Required: To what is Mr. Favret referring?  How does he know this?  Please summarize his actual testimony on this issue.

Deficient Proposed Opinion (P. 8): *Rather, a more typical negotiation would involve a buyer's agreement to pay some price greater than its bid. It is incorrect to assume that a buyer's bid depends upon, or is the equivalent of, a broker-dealer's acquisition cost.*

Additional Information Required: On what basis does Mr. Favret propose to testify about a "typical negotiation" between a buyer and seller?  If his opinion is based on regulation, please refer us to the specific regulation.  If not, please tell us what sources Mr. Favret intends to draw on.

Deficient Proposed Opinion (P. 9): *From the QIB buy-side perspective, there is a different duty of best execution: that of the investment manager to his clients to get the most favorable execution price for his client under the circumstances. This is typically done by comparing quotes from various dealers and negotiating with one or more dealers. Again, price is not the sole consideration. Speed, size, certainty, and other factors with respect to a transaction of institutional size may also be relevant, as well as relationships that an investment manager may have with dealers that may benefit its client.*

Additional Information Required: On what basis does Mr. Favret propose to testify about these issues?  If his opinion is based on regulation, please refer us to the specific regulation.  If not, please tell us what sources Mr. Favret intends to draw on to explain the obligations a buy-side QIB has to its clients or investors.

Deficient Proposed Opinion (P. 10): F*rom the buy-side account's perspective, one could only say that the price component of a trade execution was "poor" in terms of a comparison to what was available from other broker-dealers. If the price negotiated was the only price available in the market there would be no basis to conclude that the execution was "poor" and that the price should have been better.*

Additional Information Required: What basis does Mr. Favret have for this proposition? Is he

*Letter to All Counsel*
*November 8, 2016  Page 5*

testifying to this as a regulator?  If so, what regulation applies?  Is "poor" in quotation marks because it is a term of art?  How is he qualified to assess the quality of a trade execution?

### 3.   Brian P. Vahey, Jr. (June 27, 2016 Disclosure)

Deficient Proposed Opinion (P. 4): *Mr. Vahey will explain that the reasonable investor's model of the potential yield of a subject non-agency RMBS is sensitive to changes in the model's core assumptions, including prepayments, defaults, and loss severity, and that changes in these assumptions have more influence on yield than minor changes in trade price. Reasonable investors would have viewed minor price differences within the range of prices corresponding to the investor's target yield as unimportant.*

Additional Information Required: On what is Mr. Vahey's opinion based?  If based on his review of models from this case, which models did Mr. Vahey review to be able to assess what the "reasonable" investor uses?  What is a "minor price difference?"  On what basis does he assess what is a minor price difference?  How does he arrive at that number?  Given your defense, the relevance of this testimony would appear to turn on the answers to these questions.

Deficient Proposed Opinion (P. 5): *Analysis of Counter-Party Models Used by Investors in the Relevant Period of the Non-Agency RMBS Market and Subject Trades: Mr. Vahey will evaluate and testify as to investor models received through discovery in this case, and whether they are versions of the above-described modeling tools; whether the models, in content, are consistent with Mr. Vahey's experience in the non-agency RMBS market; the types of assumptions made in the models, and how they impact the output of the models; and the sensitivity of the models' analysis to changes in the these assumptions. Mr. Vahey, in view of this assessment, would apply the above-summarized opinions to the trades that are the subject of the Superseding Indictment and the government's disclosure of June 13, 2016 ("Subject Trades").*

Additional Information Required: What models has Mr. Vahey evaluated?  What models will he testify about?  What will he say about each model?  In this regard, we do not believe it sufficient to simply note in your summary the general topics that Mr. Vahey will address—if you intend to ask him about specific models, you must summarize the opinions he will give about those models.  For example, as to each model, is the model consistent with Vahey's experience?  If so, in which way?  If not, in which way?  What assumptions will he discuss as to each model, and what will he say about the effect on outputs?  What opinion will he offer about the sensitivity of the models to particular assumptions?  To the extent that Vahey "appl[ies] the above summarized assumptions" to the subject trades, what will he actually say about the subject trades?  What will he say about the application of his opinions to the subject trades?  What opinions does he hold regarding the subject trades?

Deficient Proposed Opinion (P. 6): *Subject to ongoing analysis, as additional documents and information are received, Mr. Vahey will assess whether the Subject Trades were executed at fair value.*

Additional Information Required: Subject to a final ruling, it appears to us that the Court will likely exclude testimony that trades occurred at "fair market value."  Please confirm that, should the Court enter an order to that effect, you agree that Vahey would be precluded from this line of

*Letter to All Counsel*
*November 8, 2016  Page 6*

testimony.  In any event, please explain the basis for Mr. Vahey's fair value opinion, including materials reviewed and analysis performed, including an explanation of his methodology.

Deficient Proposed Opinion (P. 7): *The fact that the same non-agency RMBS traded at different prices, often at wide spreads, during the relevant period, reflects that different investors, based on their own independent value analyses and market views, would determine value based on varying assumptions, and would further underscore that the Subject Trades were consummated at fair value.*

Additional Information Required: Notwithstanding the Court's preclusion of fair market value evidence, does Mr. Vahey intend to testify about the trading of specific RMBS and their spreads? If so, as above, please explain the basis for Mr. Vahey's fair value opinion, including materials reviewed and analysis performed, including an explanation of his methodology.

Deficient Proposed Opinion (P. 7): *Mr. Vahey will also evaluate the models received in discovery to assess the reasonableness of the models, their assumptions and output. For example, in the case of the models received in discovery labeled ELL001447 to ELL001450, HIMCO-PT-00000004, HIMCO-PT-00000009, and HIMCO-PT-00000010, based on Mr. Vahey's review, experience and training, the models' components reflect the incorporation of qualitative and quantitative factors that reasonable investors would consider in determining value. Comparing the models' output to the price(s) at which the relevant non-agency RMBS trade(s) were executed confirms that these prices were consistent with fair value as determined by the model.*

Additional Information Required: You reference models by way of example.  But in a follow-up letter dated October 17, 2016, you state that "Mr. Vahey may opine about other financial models … including, but not limited to, AllianceBernstein, MKP, PIMCO and Putnam."  If Mr. Vahey does, in fact, intend to offer any opinions about models other than those identified by Bates number in your notice, please identify them by Bates number. Please provide summaries of the opinions Mr. Vahey will provide as to each model individually, rather than the general topics of his testimony about the models in general.  To the extent he performed analysis on any model, and intends to testify about that analysis or base his testimony upon it, please disclose the analysis and its methodology.

Deficient Proposed Opinion (P. 7): *As indicated above, Mr. Vahey's opportunity to expand on his analysis of fair value is expressly reserved, pending receipt and review of additional discovery, specifically concerning trade data, trade profitability, and model documentation. In particular, Mr. Vahey reserves the right to offer amended opinion summaries that the trades in issue were highly profitable and done at fair market value.*

Additional Information Required: Again, please confirm that, should the Court in fact exclude testimony regarding fair market value and profitability, this testimony would be precluded.  In any event, as above, please explain the basis for Mr. Vahey's fair value opinion, including materials reviewed and analysis performed, including an explanation of his methodology.

*Letter to All Counsel*
*November 8, 2016   Page 7*

### 4. Richard Ellson, Ph. D. (June 27, 2016 Disclosure)

Deficient Proposed Opinion (P. 9): *Explanation of RMBS: What an RMBS is, how it is created and how it performs. The differences between Non-Agency RMBS and other types of investments, as well as the different types of Non-Agency RMBS.*

Additional Information Required: These are topics. Please summarize what Dr. Ellson will actually say about each subject.

Deficient Proposed Opinion (P. 10): *The structure of the buy-side firms, and their emphasis on research, modeling and analytics, as well as the structure of sell-side firms and the roles of traders, salespersons, analysts, and compliance officers.*

Additional Information Required: These are topics. Please summarize what Dr. Ellson will actually say about each subject.

Deficient Proposed Opinion (P. 10): *That a buy-side firm would be aware that any price given by a sell-side firm is the amount that the sell-side firm is willing to pay or accept, and that it does not necessarily reflect the actual price a third party would be willing to pay or accept, despite statements by the sell-side firm to the contrary, and that a buy-side firm would not be influenced by such statements.*

Additional Information Required: To what "statements" is Dr. Ellson referring? What "statements" would a buy-side firm not be influenced by?

Deficient Proposed Opinion (P. 11): *RMBS and Liquidity: The liquidity of the Non-Agency RMBS market and the level of price transparency compared to other securities markets.*

Additional Information Required: Regarding the general topics of liquidity and price transparency, please confirm that Dr. Ellson will not testify to anything other than the opinions suggested by the subsequent four bullet points. If not, please include any other opinion under these topics that Dr. Ellson will offer.

Deficient Proposed Opinion (P. 11): *That certain RMBS bonds are broadly understood to trade at higher spreads, such as Re-REMIC Mezzanine bonds and credit sensitive RMBS.*

Additional Information Required: Regarding the ambiguity of the phrase "such as," please clarify any other types of RMBS that Dr. Ellson plans to testify traded at higher spreads. Also, please identify any subject trades that, in Dr. Ellson's opinion, concern RMBS bonds that fall into this "higher spread" category.

Deficient Proposed Opinion (P. 11): *The reasons that the low levels of liquidity and transparency exist in the Non-Agency RMBS market.*

Additional Information Required: Please tell us what opinion Dr. Ellson will actually offer regarding the reasons for low liquidity levels and transparency. It is not sufficient to simply state that he is of the opinion that there are reasons—what are the reasons, and on what basis does he hold that opinion?

*Letter to All Counsel*
*November 8, 2016  Page 8*

Deficient Proposed Opinion (P. 11): *That, during the time period relevant to the Superseding Indictment, Non- Agency RMBS traded in a distressed market and, generally, at large discounts to their par value.  That, as with assets in any distressed market, a reasonable investor in Non-Agency RMBS would have been relatively insensitive to small price differences within a reasonable range of value for that asset.*

Additional Information Required: Please provide the basis for Dr. Ellson's testimony regarding price insensitivity.  What does Dr. Ellson mean by "small" price differences?

Deficient Proposed Opinion (P. 11): *The process that buy-side participants in the Non-Agency RMBS market undergo to decide what prices to pay for Non-Agency RMBS.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say regarding this process and his basis for that testimony.

Deficient Proposed Opinion (P. 11): *The use of INTEX, Bloomberg, and proprietary valuation models by buy- side firms to conduct thorough and independent valuations and cash flow analyses on Non-Agency RMBS.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say regarding modeling and his basis for that testimony.

Deficient Proposed Opinion (P. 11): *The independent due diligence conducted, and their use of assumptions about the collateral loan pools to value the RMBS, and the sensitivity of attempted RMBS valuation to small changes in those assumptions.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say regarding assumptions about the collateral loan pools and the sensitivity of attempted RMBS valuation to small changes in those assumptions, and his basis for that testimony.

Deficient Proposed Opinion (P. 11): *The meaning of "par value," as well as the relationship between the price paid for an RMBS and its par value, particularly during the turbulent time period at issue in the Superseding Indictment.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say about the meaning of par value, and the relationship of price to par value.

Deficient Proposed Opinion (P. 11): *That any statement made by a sell-side firm during negotiations would not impact the underlying loan pool or cash flows associated with the RMBS, and that a buy-side firm would place negligible or no value on a statement by the sell-side firm that cannot be confirmed with data.*

Additional Information Required: Please clarify whether Dr. Ellson's opinion encompasses buy-side firms in general or is limited to traders employed by buy-side firms.  In either event, please explain the basis for that opinion.

Deficient Proposed Opinion (P. 11): *That, in valuing an RMBS and deciding an appropriate*

*Letter to All Counsel*
*November 8, 2016  Page 9*

*price to pay, a reasonable buy-side firm would not rely on any sell-side stated amount of compensation that a sell-side firm would earn in any transaction.*

Additional Information Required: As above, please clarify whether Dr. Ellson's opinion encompasses buy-side firms in general or is limited to traders employed by buy-side firms.  In either event, please explain the basis for that opinion.

Deficient Proposed Opinion (P. 12): *The process of executing a trade in the Non-Agency RMBS market. The "bids wanted in competition" or "BWIC" process.*

Additional Information Required: These are topics, not opinions.  Please summarize Dr. Ellson's testimony regarding these processes.

Deficient Proposed Opinion (P. 12): *That a reasonable buy-side firm would place negligible value on statements of a sell-side trader, including, among other things, statements about the price at which the trader could purchase a given RMBS, based on the reasonable buy-side firm's knowledge that RMBS market participants (including both buy-side and sell-side firms) regularly misstate price information.*

Additional Information Required: As above, please clarify whether Dr. Ellson's opinion encompasses buy-side firms in general or is limited to traders employed by buy side firms.  In either event, please explain the basis for that opinion.

Deficient Proposed Opinion (P. 12):  *The range of values at which a buy-side firm determines of its own accord that it would be willing to invest in RMBS and the satisfaction of a buy-side firm to the extent it trades within that range.*

Additional Information Required: These are topics, not opinions.  Please summarize Dr. Ellson's testimony regarding these processes.  In addition, please clarify whether Dr. Ellson will give actual range values related to the subject RMBS trades and, if so, please give the ranges and his basis for that opinion.  Moreover, please summarize what Dr. Ellson will say regarding buy-side firm's so-called satisfaction and the basis for that opinion.

Deficient Proposed Opinion (P. 12): *The other factors that form part of the decision by a buy-side firm to trade an RMBS, such as among other things, the relationship of the relevant parties, based on, inter alia, past performance, as well as the desire to trade anonymously in the market, the desire to trade in size, and the ability to consummate the trade in a timely fashion.*

Additional Information Required: The use of "such as" and "inter alia" is open ended—please confirm that the only "factors" about which Dr. Ellson will testify are those enumerated here.  If there are other factors, please list them.  Moreover, please provide the basis for that opinion.

Deficient Proposed Opinion (P. 12): *The negotiation of and prices paid for the particular RMBS at issue in this case.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say about this subject.  If Dr. Ellson plans to offer trade-specific testimony, the summary should similarly be trade-specific, that is, what Dr. Ellson will say about each

*Letter to All Counsel*
*November 8, 2016  Page 10*

particular trade.  Moreover, please provide the basis for those opinions; if Dr. Ellson's trade-specific opinions are based on his review of documents, please identify those by Bates number.

Deficient Proposed Opinion (P. 12): *The effect of the volatile market for RMBS during the relevant period, characterized by historically wide price spreads on the prices paid for the RMBS at issue.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say regarding the effect of volatility in the RMBS market on the subject trades and provide the basis for his opinion.  Again, if he intends to testify about individual trades, the disclosure should summarize his testimony and basis for the opinion reached for each trade.

Deficient Proposed Opinion (P. 12): *That a reasonable investor would not have incorporated the alleged misstatements into its own investment analysis, an opinion based on Dr. Ellson's analysis of the actual valuation models used by buy-side firms, as well as other documents, such as, for example, trade confirmations, emails, or chats relating to the trades at issue in this case and testify that a reasonable investor.*

Additional Information Required: First, this opinion trails off, ending "and testify that a reasonable investor [. . .]."  Please finish the explanation.  Second, to the extent that Dr. Ellson intends to opine as to specific trades, rather than the generalities you have disclosed here, please provide his *actual* opinions on each specific trade, and the documents or other analysis he used to reach those opinions.

Deficient Proposed Opinion (P. 12): *The reasonable range of values at which a buy-side firm would have been willing to invest and that all trades at issue in this case occurred at the fair value for the RMBS. Dr. Ellson reserves the right to expand on his analysis of fair value pending receipt and review of additional discovery, including trade data and model documentation. Dr. Ellson may offer amended opinion summaries regarding the profitability of the Subject Trades and the fact that the trades occurred at fair value.*

Additional Information Required: Please confirm that this testimony would be precluded should the Court preclude testimony regarding fair market value and profitability.  Putting that issue aside, please summarize Dr. Ellson's testimony trade-by-trade rather in the generalities provided.  Please provide any analysis performed by Dr. Ellson, and any underlying data or other bases used by Dr. Ellson to reach his opinions.

Deficient Proposed Opinion (P. 13): *The role of compliance officers and compliance departments at sell-side firms.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say on this subject, and also upon what basis he will offer that testimony.

Deficient Proposed Opinion (P. 13): *That, if a compliance officer monitors or becomes aware of certain conduct involving a sell-side trade and does not raise any issues with it, the sell-side trader would have no reason to believe that his conduct was wrongful.*

*Letter to All Counsel*
*November 8, 2016  Page 11*

<u>Additional Information Required</u>: Please provide Dr. Ellson's basis for this testimony.  With whom did he speak? What sell-side firms did he study?

  Again, we are happy to discuss any of these issues with you prior to the November 30, 2016 deadline, in the event you decide that your revised disclosure will not answer any or all of the above issues.  If you believe that a hearing is necessary to resolve disputes, please let us know as soon as possible.  We reserve the right to move to preclude any testimony that is not properly noticed.  We also reserve the right to move to preclude testimony on relevance and other grounds once these deficiencies are corrected.

        Sincerely,

        DEIRDRE M. DALY
        UNITED STATES ATTORNEY

        DAVID E. NOVICK
        LIAM B. BRENNAN
        HEATHER L. CHERRY
        ASSISTANT UNITED STATES ATTORNEYS