

**United States Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*       (203) 821-3700
*157 Church Street, 25th Floor*      *Fax (203) 773-5376*
*New Haven, Connecticut  06510*      *www.justice.gov/usao-ct*

November 26, 2016

Hon. Robert N. Chatigny
United States District Judge
450 Main Street
Hartford, CT 06103

                Re:    *United States v. Ross Shapiro, et. al.*
                         3:15CR155(RNC)

Dear Judge Chatigny,

       The Government submits this letter to supplement its letter of November 22, 2016, regarding the defendants' expert disclosures, in which the Government noted several deficiencies in the revised disclosure of Professor Fabozzi.  The defendants provided revised disclosures on November 22nd as to experts Vahey, Ellson, and Favret, but not in time for the Government to address them in its letter to the Court.  The Government and the defendants conferred via phone for approximately two hours on November 25, 2016 about the remaining deficiencies in their disclosures. During their conversation, the Government informed the defendants that, regarding Dr. Ellson, the defendants have sufficiently answered a number of the questions in the Government's November 8th letter, but, as outlined below, certain disclosures remain incomplete as to Dr. Ellson, Mr. Vahey, and Mr. Favret.  The Government outlined in substance all of the below issues on the call, and the defendants agreed to consider these issues and attempt to arrange further discussion with the Government in advance of the hearing on November 28, 2016.  The Government files this letter so the Court is aware of what has been resolved already, and what issues remain.

**I.**        **Resolved Deficiencies (Dr. Richard Ellson, Ph. D.)**

       In its November 8, 2016 letter to the defendants, the Government outlined a number of deficiencies in the defendants' expert disclosures. In the disclosures that the defendants made to the Government on November 22, 2016, the defendants satisfied their notice requirement regarding the following items related to Dr. Richard Ellson, Ph. D., at least to the extent that Government does not press them further. Although the Government does not dispute that the following items have been properly noticed, we do reserve our right to object to any of the testimony on other grounds.  As with our previous letter, we review these issues below first by restating the challenged opinion with a page cite to the original disclosure for the expert,

1

followed by the issues raised by the Government on November 8th, and then followed by the Government's analysis of the defendants' revised disclosure on that point.

**Resolved Deficiency #1**

Deficient Proposed Opinion (P. 9): *Explanation of RMBS: What an RMBS is, how it is created and how it performs. The differences between Non-Agency RMBS and other types of investments, as well as the different types of Non-Agency RMBS.*

Additional Information Required: These are topics. Please summarize what Dr. Ellson will actually say about each subject.

Information Amended on November 22: The defendants have amended their disclosure to provide the actual opinions Dr. Ellson will give on these topics.

**Resolved Deficiency #2**

Deficient Proposed Opinion (P. 10): *The structure of the buy-side firms, and their emphasis on research, modeling and analytics, as well as the structure of sell-side firms and the roles of traders, salespersons, analysts, and compliance officers.*

Additional Information Required: These are topics. Please summarize what Dr. Ellson will actually say about each subject.

Information Amended on November 22: The defendants have amended their disclosure to provide the actual opinions Dr. Ellson will give on these topics.

**Resolved Deficiency #3**

Deficient Proposed Opinion (P. 10): *That a buy-side firm would be aware that any price given by a sell-side firm is the amount that the sell-side firm is willing to pay or accept, and that it does not necessarily reflect the actual price a third party would be willing to pay or accept, despite statements by the sell-side firm to the contrary, and that a buy-side firm would not be influenced by such statements.*

Additional Information Required: To what "statements" is Dr. Ellson referring? What "statements" would a buy-side firm not be influenced by?

Information Amended on November 22: The defendants have amended their disclosure to provide the statements that Dr. Ellson would say would not influence a buy-side firm.

**Resolved Deficiency #4**

Deficient Proposed Opinion (P. 11): *That, during the time period relevant to the Superseding Indictment, Non- Agency RMBS traded in a distressed market and, generally, at large discounts to their par value. That, as with assets in any distressed market, a reasonable investor in Non-*

*Agency RMBS would have been relatively insensitive to small price differences within a reasonable range of value for that asset.*

Additional Information Required: Please provide the basis for Dr. Ellson's testimony regarding price insensitivity.  What does Dr. Ellson mean by "small" price differences?

Information Amended on November 22: The defendants have amended their disclosures to make clear that Dr. Ellson's opinions are based on his trading experience and analysis of thousands of bonds during his years trading.  They have further clarified that the "definition of a 'small' variation depends on the nominal value of the RMBS relative to the nominal value of an investor's overall investment portfolio, the performance of the RMBS, the range of value the investor assigns to the RMBS, and its bid/ask spread."

**Resolved Deficiency #5**

Deficient Proposed Opinion (P. 11): *The process that buy-side participants in the Non-Agency RMBS market undergo to decide what prices to pay for Non-Agency RMBS.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say regarding this process and his basis for that testimony.

Information Amended on November 22: The defendants have amended their disclosure to provide the actual opinions Dr. Ellson will give on these topics.

**Resolved Deficiency #6**

Deficient Proposed Opinion (P. 11): *The use of INTEX, Bloomberg, and proprietary valuation models by buy- side firms to conduct thorough and independent valuations and cash flow analyses on Non-Agency RMBS.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say regarding modeling and his basis for that testimony.

Information Amended on November 22: The defendants have amended their disclosure to provide the actual opinions Dr. Ellson will give on these topics.

**Resolved Deficiency #7**

Deficient Proposed Opinion (P. 11): *The meaning of "par value," as well as the relationship between the price paid for an RMBS and its par value, particularly during the turbulent time period at issue in the Superseding Indictment.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say about the meaning of par value, and the relationship of price to par value.

Information Amended on November 22: The defendants have amended their disclosure to

provide the actual opinions Dr. Ellson will give on these topics.

**Resolved Deficiency #8**

Deficient Proposed Opinion (P. 11): *That any statement made by a sell-side firm during negotiations would not impact the underlying loan pool or cash flows associated with the RMBS, and that a buy-side firm would place negligible or no value on a statement by the sell-side firm that cannot be confirmed with data.*

Additional Information Required: Please clarify whether Dr. Ellson's opinion encompasses buy-side firms in general or is limited to traders employed by buy-side firms. In either event, please explain the basis for that opinion.

Information Amended on November 22: The defendants have amended their disclosure to provide the basis for Dr. Ellson's opinion. The defendants also clarified that it is his opinion that reasonable traders would not rely on sell-side statements that cannot be confirmed.

**Resolved Deficiency #9**

Deficient Proposed Opinion (P. 11): *That, in valuing an RMBS and deciding an appropriate price to pay, a reasonable buy-side firm would not rely on any sell-side stated amount of compensation that a sell-side firm would earn in any transaction.*

Additional Information Required: As above, please clarify whether Dr. Ellson's opinion encompasses buy-side firms in general or is limited to traders employed by buy-side firms. In either event, please explain the basis for that opinion.

Information Amended on November 22: The defendants have amended their disclosure to provide the basis for Dr. Ellson's opinion. The defendants also clarified that his opinion encompasses both the firm and its traders.

**Resolved Deficiency #10**

Deficient Proposed Opinion (P. 12): *The process of executing a trade in the Non-Agency RMBS market. The "bids wanted in competition" or "BWIC" process.*

Additional Information Required: These are topics, not opinions. Please summarize Dr. Ellson's testimony regarding these processes.

Information Amended on November 22: The defendants have amended their disclosure to provide the actual opinions Dr. Ellson will give on these topics.

**Resolved Deficiency #11**

Deficient Proposed Opinion (P. 12): *That a reasonable buy-side firm would place negligible value on statements of a sell-side trader, including, among other things, statements about the*

4

*price at which the trader could purchase a given RMBS, based on the reasonable buy-side firm's knowledge that RMBS market participants (including both buy-side and sell-side firms) regularly misstate price information.*

Additional Information Required: As above, please clarify whether Dr. Ellson's opinion encompasses buy-side firms in general or is limited to traders employed by buy side firms. In either event, please explain the basis for that opinion.

Information Amended on November 22: The defendants have amended their disclosure to provide the basis for Dr. Ellson's opinion. The defendants also clarified that his opinion encompasses both the firm and its traders.

## II.     Insufficient Disclosures

The defendants did not sufficiently address the following items in their revised November 22, 2016 disclosures.

### a.    Andrew Favret Insufficient Disclosures

**Deficiency #1**

Deficient Proposed Opinion (P. 7): *Buy-side bond market participants such as asset managers, investment funds, and hedge funds do not regard disclosure of a dealer's costs or profits as important; rather institutional bond buyers focus on total price and yield, which necessarily take into account any embedded profit in the price quoted by a dealer; these buy-side firms are equipped to evaluate the fairness of a price and negotiate accordingly.*

Additional Information Required:  On what basis do you propose to offer Mr. Favret's testimony regarding what buy-side investors regard as important?

Analysis:  The defendants amended their disclosure on November 22nd to provide Favret's basis for this knowledge, which included participation in fixed income roundtables and conferences at which he discussed markup guidelines with industry participants. November 22, 2016 Revised Disclosure of Andrew Favret ("Favret Revision") at Section III(C)(2). The Government requests more clarity here—what relevant conferences did he attend?  What roundtables? Related to what regulations? Was Favret a panelist or speaker at these conferences and roundtables?  Is his testimony just based on informal conversations with industry participants, or is there something more?

**Deficiency #2**

Deficient Proposed Opinion (P. 7): *Attempts on the regulatory level to require dealers to disclose mark-ups and require greater price transparency have been opposed by both the "sell side" and the "buy side."*

Additional Information Required: To what is Mr. Favret referring?  How does he know this?

5

Please summarize his actual testimony on this issue.

Analysis: In their subsequent disclosures, the defendants clarified that Mr. Favret's opinions are based on TBA and SIFMA comment letters. Favret Revision at Section III(C)(2). However, the defendants do not identify the specific comment letters that form the basis of the opinion. "Absent information that links specific sources to each of the experts' opinions, the Government does not have the type of information envisioned by Rule 16(b)(1)(C) with which to prepare for cross-examining the experts." *United States v. Ferguson*, No. 3:06CR137(CFD), 2007 WL 4539646 at *2, (D. Conn. December 14, 2007)

**Deficiency #3**

Deficient Proposed Opinion (P. 8): *Rather, a more typical negotiation would involve a buyer's agreement to pay some price greater than its bid. It is incorrect to assume that a buyer's bid depends upon, or is the equivalent of, a broker-dealer's acquisition cost.*

Additional Information Required: On what basis does Mr. Favret propose to testify about a "typical negotiation" between a buyer and seller? If his opinion is based on regulation, please refer us to the specific regulation. If not, please tell us what sources Mr. Favret intends to draw on.

Information Amended on November 22: The defendants amended their disclosure to provide Favret's basis for this knowledge, which included experience handling fixed income markup related cases, participation in FINRA rulemaking and policymaking, discussion with market participants, drafting position papers, and the giving of opinions on market practices related to fixed income bond negotiations. Favret Revision at Section III(C)(3). The Government seeks more specificity here—what rules and policies did he participate in making? What position papers did he author or review? In what relevant enforcement cases did he participate?

**Deficiency #4**

Deficient Proposed Opinion (P. 9): *From the QIB buy-side perspective, there is a different duty of best execution: that of the investment manager to his clients to get the most favorable execution price for his client under the circumstances. This is typically done by comparing quotes from various dealers and negotiating with one or more dealers. Again, price is not the sole consideration. Speed, size, certainty, and other factors with respect to a transaction of institutional size may also be relevant, as well as relationships that an investment manager may have with dealers that may benefit its client.*

Additional Information Required: On what basis does Mr. Favret propose to testify about these issues? If his opinion is based on regulation, please refer us to the specific regulation. If not, please tell us what sources Mr. Favret intends to draw on to explain the obligations a buy-side QIB has to its clients or investors.

Information Amended on November 22: The defendants amended their disclosure to provide Favret's basis for this knowledge, which included conducting and participating in extensive

testimony sessions and depositions of market participants while with FINRA. Favret Revision at Section III(C)(7). The Government believes the defendants should disclose to what testimony and depositions is he referring. The Government requests access to that material to the extent that Mr. Favret is relying on it.

**Deficiency #5**

Deficient Proposed Opinion (P. 10): F*rom the buy-side account's perspective, one could only say that the price component of a trade execution was "poor" in terms of a comparison to what was available from other broker-dealers. If the price negotiated was the only price available in the market there would be no basis to conclude that the execution was "poor" and that the price should have been better.*

Additional Information Required: What basis does Mr. Favret have for this proposition? Is he testifying to this as a regulator? If so, what regulation applies? Is "poor" in quotation marks because it is a term of art? How is he qualified to assess the quality of a trade execution?

Analysis: The defendants' revised disclosure does not address how Mr. Favret is qualified to address whether a particular trade was well or poorly executed, nor does it address what basis he has for this opinion. Favret Revision at Section III(E).

    **b.** Brian P. Vahey, Jr. Insufficient Disclosures

**Deficiency #1**

Deficient Proposed Opinion (P. 4): *Mr. Vahey will explain that the reasonable investor's model of the potential yield of a subject non-agency RMBS is sensitive to changes in the model's core assumptions, including prepayments, defaults, and loss severity, and that changes in these assumptions have more influence on yield than minor changes in trade price. Reasonable investors would have viewed minor price differences within the range of prices corresponding to the investor's target yield as unimportant.*

Additional Information Required: On what is Mr. Vahey's opinion based? If based on his review of models from this case, which models did Mr. Vahey review to be able to assess what the "reasonable" investor uses? What is a "minor price difference?" On what basis does he assess what is a minor price difference? How does he arrive at that number? Given your defense, the relevance of this testimony would appear to turn on the answers to these questions.

Analysis: The defendants have amended this disclosure to make clear Vahey's opinion is based on his history of trading and investment, *as well as* a review of models. November 22, 2016 Revised Disclosure of Brian P. Vahey ("Vahey Revision") at Section III(A). However, they do not clarify which models that Mr. Vahey reviewed, his analysis of those models, or his individual conclusions from each model. Moreover, they do not answer any of the other questions above, particularly what he considers a "minor price difference" and how he arrived at that conclusion.

**Deficiency #2**

Deficient Proposed Opinion (P. 5): *Analysis of Counter-Party Models Used by Investors in the Relevant Period of the Non-Agency RMBS Market and Subject Trades: Mr. Vahey will evaluate and testify as to investor models received through discovery in this case, and whether they are versions of the above-described modeling tools; whether the models, in content, are consistent with Mr. Vahey's experience in the non-agency RMBS market; the types of assumptions made in the models, and how they impact the output of the models; and the sensitivity of the models' analysis to changes in the these assumptions. Mr. Vahey, in view of this assessment, would apply the above-summarized opinions to the trades that are the subject of the Superseding Indictment and the Government's disclosure of June 13, 2016 ("Subject Trades").*

Additional Information Required: What models has Mr. Vahey evaluated? What models will he testify about? What will he say about each model? In this regard, we do not believe it sufficient to simply note in your summary the general topics that Mr. Vahey will address—if you intend to ask him about specific models, you must summarize the opinions he will give about those models. For example, as to each model, is the model consistent with Vahey's experience? If so, in which way? If not, in which way? What assumptions will he discuss as to each model, and what will he say about the effect on outputs? What opinion will he offer about the sensitivity of the models to particular assumptions? To the extent that Vahey "appl[ies] the above summarized assumptions" to the subject trades, what will he actually say about the subject trades? What will he say about the application of his opinions to the subject trades? What opinions does he hold regarding the subject trades?

Analysis: First, the defendants have now listed a series of models that Vahey analyzed and to which he may refer during his testimony. Vahey Revision at Section III(B). The defendants have not, however, explained what Vahey intends to say about each model individually, including what he will say about the sensitivity of each model individually. As this is not generalized testimony, but testimony specific to the evidence in this case, the defendants' disclosure should be similarly specific. Second, the defendants apparently intend that Vahey will apply his analysis to each of the Subject Trades to show that the input assumptions have greater influence on price and yield than the undisclosed markups. As before, the revised disclosure fails because it does not summarize Vahey's opinion on each of the Subject Trades, and how he arrived at those opinions.

**Deficiency #3**

Deficient Proposed Opinion (P. 6): *Subject to ongoing analysis, as additional documents and information are received, Mr. Vahey will assess whether the Subject Trades were executed at fair value.*

Additional Information Required: Subject to a final ruling, it appears to us that the Court will likely exclude testimony that trades occurred at "fair market value." Please confirm that, should the Court enter an order to that effect, you agree that Vahey would be precluded from this line of testimony. In any event, please explain the basis for Mr. Vahey's fair value opinion, including

8

materials reviewed and analysis performed, including an explanation of his methodology.

Analysis: None of the preceding issues were addressed by the revised disclosure. Vahey Revision at Section III(F).  To the extent that Vahey intends to assess Subject Trades as having occurred at "fair value," and putting aside the Court's ultimate ruling on the relevance of such testimony, the defendants must disclose each individual opinion, its basis, and its underlying analysis so that the Court can fulfill its gate-keeper role and weigh issues of admissibility. Second, the defendants continue to claim that they may amend this disclosure as they continue to receive discovery with regard to fair value and profitability.  Similarly, they suggest an entirely new line of testimony related to marks and marks to market, which purportedly will be based on discovery to be received.  As discussed above, the Government understands the November 30th deadline to be a final one; the Government cannot prepare for cross-examination on these complicated topics with well-credentialed experts without such finality.

**Deficiency #4**

Deficient Proposed Opinion (P. 7): *The fact that the same non-agency RMBS traded at different prices, often at wide spreads, during the relevant period, reflects that different investors, based on their own independent value analyses and market views, would determine value based on varying assumptions, and would further underscore that the Subject Trades were consummated at fair value.*

Additional Information Required: Notwithstanding the Court's preclusion of fair market value evidence, does Mr. Vahey intend to testify about the trading of specific RMBS and their spreads? If so, as above, please explain the basis for Mr. Vahey's fair value opinion, including materials reviewed and analysis performed, including an explanation of his methodology.

Analysis: These questions remain unanswered. Vahey Revision at Section III(F).  Additionally, the defendants vaguely state that Vahey will point to actual illustrative examples of bonds trading at wide spreads, without explaining which bonds he is referring to, how wide such spreads are, over what time period such spreads occur, or how Vahey arrived at those conclusions, including the methodology of his analysis.  The defendants must disclose those opinions and their bases in their entirety as part of their notice in order for the Government to prepare and the Court to decide their admissibility.

**Deficiency #5**

Deficient Proposed Opinion (P. 7): *As indicated above, Mr. Vahey's opportunity to expand on his analysis of fair value is expressly reserved, pending receipt and review of additional discovery, specifically concerning trade data, trade profitability, and model documentation. In particular, Mr. Vahey reserves the right to offer amended opinion summaries that the trades in issue were highly profitable and done at fair market value.*

Additional Information Required: Again, please confirm that, should the Court in fact exclude testimony regarding fair market value and profitability, this testimony would be precluded. In any event, as above, please explain the basis for Mr. Vahey's fair value opinion, including

materials reviewed and analysis performed, including an explanation of his methodology.

Analysis: As discussed above, the revised disclosure addresses none of these concerns. Vahey Revision at Section III(F).

    c.   Richard Ellson, Ph. D. Insufficient Disclosures

**Deficiency #1**

Deficient Proposed Opinion (P. 11): *RMBS and Liquidity: The liquidity of the Non-Agency RMBS market and the level of price transparency compared to other securities markets.*

Additional Information Required: Regarding the general topics of liquidity and price transparency, please confirm that Dr. Ellson will not testify to anything other than the opinions suggested by the subsequent five bullet points. If not, please include any other opinion under these topics that Dr. Ellson will offer.

Analysis: The defendants do not confirm that Dr. Ellson's opinions are limited to the subsequent bullet points or whether he will testify to any other related, undisclosed opinions. November 22, 2016 Revised Disclosure of Dr. Richard Ellson ("Ellson Revision") at Section III(E).

**Deficiency #2**

Deficient Proposed Opinion (P. 11): *That certain RMBS bonds are broadly understood to trade at higher spreads, such as Re-REMIC Mezzanine bonds and credit sensitive RMBS.*

Additional Information Required: Regarding the ambiguity of the phrase "such as," please clarify any other types of RMBS that Dr. Ellson plans to testify traded at higher spreads. Also, please identify any subject trades that, in Dr. Ellson's opinion, concern RMBS bonds that fall into this "higher spread" category.

Analysis:  In the revised disclosure, the defendants still do not say what other types of RMBS will fall into this "credit sensitive" category according to Dr. Ellson. Ellson Revision at Section III(E) (second bullet point). Moreover, the disclosure does not clarify whether Ellson will testify that any of the Subject Trades fell into such category, so the Government understands from this silence that Ellson does not intend to offer such opinion; if he does, the defendants must specifically disclose as much, along with his basis for so concluding.

**Deficiency #3**

Deficient Proposed Opinion (P. 11): *The reasons that the low levels of liquidity and transparency exist in the Non-Agency RMBS market.*

Additional Information Required: Please tell us what opinion Dr. Ellson will actually offer regarding the reasons for low liquidity levels and transparency. It is not sufficient to simply state that he is of the opinion that there are reasons—what are the reasons, and on what basis does he

hold that opinion?

Analysis: The defendants have clarified that Dr. Ellson believes that low levels of liquidity resulted from a decrease in the number of broker-dealers, as well as counterparty risks and bankruptcies. Ellson Revision at Section III(E) (third bullet point). However, his opinion is incomplete, citing these reasons as "among" a number of other reasons. The defendants still have not disclosed to the Government what, in his opinion, the other reasons are.

**Deficiency #4**

Deficient Proposed Opinion (P. 11): *The independent due diligence conducted, and their use of assumptions about the collateral loan pools to value the RMBS, and the sensitivity of attempted RMBS valuation to small changes in those assumptions.*

Additional Information Required: This is a topic, not an opinion. Please summarize what Dr. Ellson will say regarding assumptions about the collateral loan pools and the sensitivity of attempted RMBS valuation to small changes in those assumptions, and his basis for that testimony.

Analysis: The defendants have amended their disclosure to provide the actual opinions Dr. Ellson will give on these topics. Ellson Revision at Section III(F) (second bullet point). They have not, however, answered the Government's question regarding the basis for his opinions.

**Deficiency #5**

Deficient Proposed Opinion (P. 12): *The range of values at which a buy-side firm determines of its own accord that it would be willing to invest in RMBS and the satisfaction of a buy-side firm to the extent it trades within that range.*

Additional Information Required: These are topics, not opinions. Please summarize Dr. Ellson's testimony regarding these processes. In addition, please clarify whether Dr. Ellson will give actual range values related to the subject RMBS trades and, if so, please give the ranges and his basis for that opinion. Moreover, please summarize what Dr. Ellson will say regarding buy-side firm's so-called satisfaction and the basis for that opinion.

Analysis: The defendants have amended their disclosure to provide the actual opinions Dr. Ellson will give on these topics. Ellson Revision at III (G) (fifth bullet). However, the revised disclosure does not address any specific trade-related opinion, and therefore the Government understands that this opinion is intended to be generic; to the extent that the defendants intend to elicit an opinion related to any specific trade, their notice is deficient and must be corrected.

**Deficiency #6**

Deficient Proposed Opinion (P. 12): *The other factors that form part of the decision by a buy-side firm to trade an RMBS, such as among other things, the relationship of the relevant parties, based on, inter alia, past performance, as well as the desire to trade anonymously in the market,*

11

*the desire to trade in size, and the ability to consummate the trade in a timely fashion.*

Additional Information Required: The use of "such as" and "inter alia" is open ended—please confirm that the only "factors" about which Dr. Ellson will testify are those enumerated here.  If there are other factors, please list them.  Moreover, please provide the basis for that opinion.

Analysis: In the revised disclosure, the defendants have amended their disclosures to make clear that Dr. Ellson's opinions are based on his trading experience. The do not address the open-ended nature of the opinion, which simply supplements "such as" with its synonym, "include." Ellson Revised Disclosure, Section III(G) (sixth bullet point).  If Dr. Ellson believes there are other factors, the defendants must disclose them.

**Deficiency #7**

Deficient Proposed Opinion (P. 12): *The negotiation of and prices paid for the particular RMBS at issue in this case.*

Additional Information Required: This is a topic, not an opinion.  Please summarize what Dr. Ellson will say about this subject.  If Dr. Ellson plans to offer trade-specific testimony, the summary should similarly be trade-specific, that is, what Dr. Ellson will say about each particular trade.  Moreover, please provide the basis for those opinions; if Dr. Ellson's trade-specific opinions are based on his review of documents, please identify those by Bates number.

Analysis: The defendants revise their disclosure to state that the RMBS trades in this case occurred within the industry norms and that the prices were in "the reasonable range of fair market value for those RMBS." Ellson Revision at Section III(H) (first bullet point).  First, this testimony would be contrary to the Court's initial reaction to the Government's motion to preclude fair market value evidence.  Second, the disclosure appears to suggest that Ellson will make an across-the-board assessment of all of the Subject Trades, but the defendants have provided no notice on how Dr. Ellson intends to reach that conclusion.  The defendants do not reveal any of the documents used by Ellson to reach this conclusion, nor do they explain his analysis.  This opinion, even though given in broad strokes, is at base a trade-specific assessment, and the disclosure should be similarly specific. Finally, the defendants "reserve the right" to amend their disclosure on fair market value based on subsequently received discovery; the Government believes that the November 30th deadline is intended to be a final disclosure as to expert opinions.

**Deficiency #8**

Deficient Proposed Opinion (P. 12): *The reasonable range of values at which a buy-side firm would have been willing to invest and that all trades at issue in this case occurred at the fair value for the RMBS. Dr. Ellson reserves the right to expand on his analysis of fair value pending receipt and review of additional discovery, including trade data and model documentation. Dr. Ellson may offer amended opinion summaries regarding the profitability of the Subject Trades and the fact that the trades occurred at fair value.*

12

Additional Information Required: Please confirm that this testimony would be precluded should the Court preclude testimony regarding fair market value and profitability. Putting that issue aside, please summarize Dr. Ellson's testimony trade-by-trade rather in the generalities provided. Please provide any analysis performed by Dr. Ellson, and any underlying data or other bases used by Dr. Ellson to reach his opinions.

Analysis: The defendants have incorporated this opinion into the opinion referenced in Deficiency #6, without answering any of the Government's questions—this is improper fair market value analysis; its notice lacks the appropriate degree of trade specificity and lacks any information related to the analysis or bases underlying Dr. Ellson's testimony. Ellson Revision at Section III(H).

**Deficiency #9**

Deficient Proposed Opinion (P. 12): *The effect of the volatile market for RMBS during the relevant period, characterized by historically wide price spreads on the prices paid for the RMBS at issue.*

Additional Information Required: This is a topic, not an opinion. Please summarize what Dr. Ellson will say regarding the effect of volatility in the RMBS market on the subject trades and provide the basis for his opinion. Again, if he intends to testify about individual trades, the disclosure should summarize his testimony and basis for the opinion reached for each trade.

Analysis: The defendants edited the opinion to read as a declarative statement, which appears to answer the first deficiency. Ellson Revision at Section III(H) (second bullet point). However, as above, the Government takes the defendants' silence to indicate that they intend this opinion to be generic, and that Ellson will not discuss specific trades in reference to volatility; if that is not the case, then the defendants must further amend their notice to address the deficiency.

**Deficiency #10**

Deficient Proposed Opinion (P. 12): *That a reasonable investor would not have incorporated the alleged misstatements into its own investment analysis, an opinion based on Dr. Ellson's analysis of the actual valuation models used by buy-side firms, as well as other documents, such as, for example, trade confirmations, emails, or chats relating to the trades at issue in this case and testify that a reasonable investor.*

Additional Information Required: First, this opinion trails off, ending "and testify that a reasonable investor [. . .]." Please finish the explanation. Second, to the extent that Dr. Ellson intends to opine as to specific trades, rather than the generalities you have disclosed here, please provide his *actual* opinions on each specific trade, and the documents or other analysis he used to reach those opinions.

Analysis:  The revised disclosure has not answered any of these questions, other than to correct the issue of an incomplete sentence. Ellson Revision at Section III(H) (third bullet point). The opinion appears to be specific to the misrepresentations in this case, but does not provide trade-

13

specific opinions. Second, the defendants' revised disclosure states that Dr. Ellson's opinions are based on his review of models, but they do not clarify which models or what he will say about the models or what his analysis was of those models.

**Deficiency #11**

Deficient Proposed Opinion (P. 13): *The role of compliance officers and compliance departments at sell-side firms.*

Additional Information Required: This is a topic, not an opinion. Please summarize what Dr. Ellson will say on this subject, and also upon what basis he will offer that testimony.

Analysis: The defendants supplement their disclosure on this topic, describing Dr. Ellson's opinion. Ellson Revision at Section III(I) (first bullet point). However, the defendants still do not provide Dr. Ellson's basis for this opinion.

**Deficiency #12**

Deficient Proposed Opinion (P. 13): *That, if a compliance officer monitors or becomes aware of certain conduct involving a sell-side trade and does not raise any issues with it, the sell-side trader would have no reason to believe that his conduct was wrongful.*

Additional Information Required: Please provide Dr. Ellson's basis for this testimony. With whom did he speak? What sell-side firms did he study?

Analysis: This topic appears to be withdrawn and largely changed. Ellson Revision at Section III(I) (second bullet point). The defendants now state that Dr. Ellson will say that traders rely on compliance personnel to tell them when they're doing something wrong. Although the defendants aver that this is based on his "years of trading experience," the Government does not believe that such experience can be gleaned from simply "trading." The defendants should provide a more complete basis for such a discrete piece of information related to the compliance function rather than trading, particularly where Dr. Ellson is opining about the sell-side and most of his experience is on the buy-side. Moreover, does Dr. Ellson have any knowledge of the compliance function at Nomura? If not, how is this testimony relevant?

### III.    New Insufficient Disclosures

In their November 22, 2016 disclosures, the defendants disclosed several opinions for the first time. The Government is still digesting this new notice, but initially observes some disclosure failures.

    **a.**  Richard Ellson, Ph. D. New Insufficient Disclosures

**New Deficient Opinion #1**

Deficient Proposed Opinion: *There can be instances where a buy-side firm learns that it has*

14

*purchased an RMBS at what it believes to be an "excess spread." There are several options available to the buy-side firm in that scenario. The buy-side firm could ignore it, ask for the trade to be cancelled, request that the purchase price be adjusted (cancel and correct), or put the sell-side firm "in the box," in which case the broker-dealer would not receive any business from that buy-side firm for a period of time.* Ellson Revision at Section III(G) (second bullet point).

Deficiency: What do the defendants mean by "excess spread?" What does it mean that a buy-side firm learned they made a purchase at an "excess spread?" How would a buy-side firm learn that? Is Dr. Ellson testifying from his personal experience, or does he have some other basis for this opinion?

      **b.** <u>Brian P. Vahey New Insufficient Disclosures</u>

**New Deficient Opinion #1**

Deficient Proposed Opinion: *If the price negotiated fell within this range of prices, using these performance expectations, the investor might determine to purchase. An exhibit will be employed to demonstrate this concept to the jury.* Vahey Revision at Section III(A).

Additional Information Required: The Government requests disclosure of the exhibit and a summary of what Vahey will say about it.

**New Deficient Opinion #2**

Deficient Proposed Opinion: *Mr. Vahey will testify that he reviewed trading data consisting of non-agency RMBS trades that were reported to FINRA through its Trade Compliance and Reporting Engine ("TRACE") for the period commencing on May 15, 2011 (the date at which such trade reporting became compulsory) and ending on December 31, 2013 (the "FINRA Reporting Period") involving bonds that were purchased and sold on the same day ("Market Same Day Trades"). Mr. Vahey will testify that he compared the distribution of markups for Nomura Same Day Trades with the distribution of markups for Market Same Day Trades for the FINRA Reporting Period and that the distribution of markups for the Nomura Same Day Trades were substantially similar to the distribution of markups for the Market Same Day Trades during the FINRA Reporting Period. Specifically, Mr. Vahey will testify that the percentage of Nomura Same Day Trades involving markups that exceeded 4-8 ticks was substantially similar to the percentage of Market Same Day Trades involving markups that exceeded 4-8 ticks during the FINRA Reporting Period. Mr. Vahey will testify that this analysis shows that the alleged negotiation tactics at issue did not result in larger markups for Nomura Same Day Trades relative to the markups generated for Market Same Day Trades during the FINRA Reporting Period. Mr. Vahey will illustrate this analysis with exhibit(s) similar to attached Exhibit 2.* Vahey Revision at Section III(E).

Additional Information Required: To the extent that Vahey is analyzing data that has been disclosed in discovery, we request from the defendants that they indicate the Bates numbers that contain the data; otherwise, the defendants should be required to turn over the data. Moreover, the exhibit disclosed provides little clarity as to the plotting of individual trades; we request that

the defendants provide the raw data in lieu of our request for a hearing on the accuracy of the chart.

**New Deficient Opinion #3**

Deficient Proposed Opinion: *Mr. Vahey will also point to actual illustrative examples of bonds trading at wide spreads during the FINRA Reporting Period.*  Vahey Revision at Section III(F).

Additional Information Required: The defendants should disclose these illustrative examples about which Mr. Vahey will testify, including his opinions and the bases thereof.

    **c.**  Andrew Favret New Insufficient Opinions

Deficient Proposed Opinion: *Mr. Favret has been involved in many FINRA investigations over the years, and is intimately familiar with FINRA's investigatory process. Mr. Favret would testify that FINRA has broad authority, pursuant to FINRA Rule 8210, to request access to the books and records of its members, and to request testimony or other information from its members and the associated persons of its members. Mr. Favret would testify that FINRA's staff may use such information as the basis to allege violations of its rules (or other laws and rules it is authorized to enforce), may seek to impose fines and sanctions, and may make referrals to other regulatory agencies, regardless of the initial focus of its investigation. Conversely, the FINRA staff may conduct a thorough review and choose not to take action. Mr. Favret would testify that the FINRA staff commenced an investigation into excessive markups at Nomura and obtained documents (e.g., trader statements, chats, e-mails, and trade tickets) that reflect that a Nomura trader had an internal discussion with another Nomura employee about making a misrepresentation to a putative bond purchaser regarding the price at which the bond was available to Nomura. FINRA chose not to allege violations of applicable laws and rules, or to seek to impose fines and sanctions, or to make referrals to other regulatory agencies. To the contrary, FINRA concluded that the firm "appeared to be in compliance with respect to the rules and regulations reviewed." Mr. Favret would provide this testimony based on his extensive experience conducting and supervising FINRA enforcement matters and his review of the following documents: SEC-EPROD-E-000090770, SEC-EPROD-E-000090543, SEC-EPROD-E-000091008.*

Additional Information Required: This is an entirely new opinion by the defendants, and the Government is still reviewing the opinion and its bases.  In the first instance, the defendants should explain how this testimony—whether FINRA chose to pursue a case against Nomura—was relevant to the charges here.  Favret Revision at Section III(G).

**IV.**    **Withdrawn Disclosures:**

    In their November 23, 2014 disclosures, the defendants appeared to withdraw at least one opinion to which the Government objected. These opinions are described below.

      **a.** Brian P. Vahey, Jr. (June 27, 2016 Disclosure)

<u>Deficient Proposed Opinion (P. 7)</u>: *Mr. Vahey will also evaluate the models received in discovery to assess the reasonableness of the models, their assumptions and output. For example, in the case of the models received in discovery labeled ELL001447 to ELL001450, HIMCO-PT-00000004, HIMCO-PT-00000009, and HIMCO-PT-00000010, based on Mr. Vahey's review, experience and training, the models' components reflect the incorporation of qualitative and quantitative factors that reasonable investors would consider in determining value. Comparing the models' output to the price(s) at which the relevant non-agency RMBS trade(s) were executed confirms that these prices were consistent with fair value as determined by the model.*

<u>Additional Information Required</u>: You reference models by way of example. But in a follow-up letter dated October 17, 2016, you state that "Mr. Vahey may opine about other financial models … including, but not limited to, AllianceBernstein, MKP, PIMCO and Putnam." If Mr. Vahey does, in fact, intend to offer any opinions about models other than those identified by Bates number in your notice, please identify them by Bates number. Please provide summaries of the opinions Mr. Vahey will provide as to each model individually, rather than the general topics of his testimony about the models in general. To the extent he performed analysis on any model, and intends to testify about that analysis or base his testimony upon it, please disclose the analysis and its methodology.

<u>Analysis</u>: The defendants appear to withdraw this line of testimony; if that is not the case, they must make full disclosure.

## Conclusion

      In sum, as noted previously, the core dispute between the parties remains the level of detail required by the rules. The defendants' disclosures lack specificity; they repeatedly suggest analysis of documents in discovery without actually disclosing that analysis or the opinions derived therefrom; they reveal topics rather than opinions; and they insufficiently source several opinions. The Government continues to believe many of these issues can be worked out short of a hearing, and remains committed to further discussion with defense counsel to that end.

                                           Sincerely,

                                           DEIRDRE M. DALY
                                           UNITED STATES ATTORNEY

                                           DAVID E. NOVICK
                                           LIAM B. BRENNAN
                                           HEATHER L. CHERRY
                                           ASSISTANT UNITED STATES ATTORNEYS

CERTIFICATE OF SERVICE

This is to certify that on November 26, 2016, a copy of the foregoing Letter was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/

DAVID E. NOVICK
ASSISTANT U.S. ATTORNEY