UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> ) CRIM NO. 3:15-CR-155 (RNC) <br> ) |
| vs. | ) <br> ) <br> ) December 2, 2016 |
| ROSS SHAPIRO, MICHAEL GRAMINS, AND TYLER PETERS. | ) <br> ) <br> ) |

**DEFENDANT TYLER PETERS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER DIRECTING EARLY RETURN OF A SUBPOENA *DUCES TECUM* UNDER RULE 17(C)(1)**

This memorandum is respectfully submitted in support of Defendant Tyler Peters' motion to obtain a Court-ordered subpoena for documents under Rule 17(c)(1) of the Federal Rules of Criminal Procedure, bearing a return date in advance of trial of December 30, 2016. As set forth below, the subpoena conforms to the standards under the Rule and early return is warranted to facilitate trial preparation.

## INTRODUCTION

The Second Superseding Indictment alleges that Defendant Tyler Peters and his Co-Defendants, Ross Shapiro and Michael Gramins, all former traders on the residential mortgage backed securities ("RMBS") desk at Nomura Securities International, Inc. ("Nomura"), conspired to commit securities fraud and wire fraud through statements they made in negotiations with professional investment managers.

The Indictment includes allegations that concern the conduct of certain uncharged co-conspirators, including an individual identified in the Indictment as "Trader 2." Defendants believe that "Trader 2" is Alejandro Feely, a former Nomura trader who left Nomura in May 2012

to become a trader at Morgan Stanley & Co. LLC ("Morgan Stanley"). Feely has entered into a non-prosecution agreement with the government. As part of his cooperation, Feely has told the government that – while at Nomura – he sometimes provided deceptive information to customers during RMBS negotiations. He claimed, however, that whenever he did so, he was acting at the direction of Defendants Shapiro or Peters. Based upon Feely's statements, the government seeks to prosecute Defendant Peters for fraudulent statements Feely made during negotiations when Defendant Peters was not involved. In an effort to bolster his own credibility, Feely further told the government that he was uncomfortable with the deceptive conduct but felt compelled to follow orders. Feely also told the Government (and testified before the grand jury) that he left Nomura and joined Morgan Stanley because he wanted to get away from the deceptive conduct. Finally, he claimed that, while at Morgan Stanley, he never engaged in similar conduct – statements Feely made, defense counsel believes, in a transparent attempt to bolster his own credibility and to deflect any criminal liability from himself. Defendant Peters expects the government to elicit the same testimony during the trial of this matter.

Defendant Peters has reason to believe that the statements Feely made to the government, regarding his time at Morgan Stanley, are not credible.[1] For example, Jonathan Fife (who worked with Feely at Morgan Stanley) told the government that Morgan Stanley traders sometimes told potential purchasers of RMBS that a third-party owned the securities when, in fact, Morgan Stanley owned the securities. This is the same conduct for which the government seeks to prosecute Defendant Peters and the other defendants. Fife explained that Feely engaged in this deceptive practice at Morgan Stanley and that Feely even told him how to do it. Fife, for example, explained that, "[i]n discussing the use of the tactic, Feely told Fife that he would have to make

---

[1] Of course, Defendant Peters also believes that Feely's grand jury testimony with respect to his time at Nomura and, specifically, his recollections about Peters's conduct, are also not credible.

2

clear to the buyer how much Fife was making to make the tactic seem more believable," and "[t]hat no one would believe there was a third party was [sic] involved in the trade unless specific amounts were used." DOJ_OTHER-004085.[2]

The Court-ordered subpoena that Defendant Peters seeks under Rule 17(c)(1) goes directly to the government's theory that Defendant Peters is responsible for instructing Feely to misstate facts to customers and, further, to Feely's claim that, barring Peters's instructions, he would not have engaged in these trading practices. Specifically, Defendant Peters seeks to obtain information from Morgan Stanley to show – just as Feely's former colleague told the government – that Feely continued in the same trading practices *after* he left Nomura and *after* he could no longer blame Defendant Peters for his conduct. The evidence is essential to Defendant Peters' ability to defend himself against the claim that he directed Feely's conduct at Nomura and, therefore, bears criminal responsibility for Feely's actions.

## ARGUMENT

Rule 17 of the Federal Rules of Criminal Procedure governs the use of subpoenas in criminal cases. Subsection (c) provides for the issuance of subpoenas for documentary evidence and permits this Court to order the pretrial return of subpoenaed materials: "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). Enforcement of Rule 17(c) subpoenas is within the sound discretion of the district court. *United States v. Ferguson*, No. CRIM. 3:06-CR-137(CFD), 2007 WL 2815068, at *2 (D. Conn. Sept. 26, 2007) (citing *United*

---

[2] In October 2015, Feely was "permitted to resign" from Morgan Stanley because of the trading practices he engaged in at Nomura.

*States v. Nixon*, 418 U.S. 683, 702 (1975)). The plain language of Rule 17 establishes "a more liberal policy for the production, inspection and use" of evidentiary materials in federal criminal cases. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

Pretrial production of documents is appropriate where the requesting party demonstrates (1) relevance, (2) potential admissibility, and (3) reasonable specificity with respect to the documents sought. *Nixon*, 418 U.S. at 700.

### I. The Requested Documents Are Relevant

The documents Defendant Peters seeks are relevant because they will show that Defendant Peters is not criminally responsible for Feely's conduct at Nomura. Indeed, these documents directly contradict Feely's contention that – while working for Nomura – he only made misrepresentations to customers when pressured to do so by Defendants Peters or Ross. The subpoenaed documents will show that, contrary to what Feely told the Government, he used such sales tactics on his own initiative, while employed at Morgan Stanley, and when totally free from Defendants Peters and Ross.

The documents Defendant Peters seeks to subpoena are communications in which Feely represented to Morgan Stanley's customers the price at which the firm had purchased or sold bonds. Rather than seek all such communications, however, Defendant Peters seeks only those documents sent or received within a seven-month period, June 18, 2012 through January 31, 2013, that contain at least one out of a small set of narrowly tailored search terms. Those search terms are as follows:

1. Feely w/15 bot
2. Feely w/15 bought
3. Feely w/15 sold

4

4. Feely w/15 traded

5. Feely w/15 "can buy"

6. Feely w/15 "can sell"

7. Feely w/15 "in touch"

8. Feely w/15 itw

9. Feely w/15 offered

10. Feely w/15 offer

11. Feely w/15 pay

12. Feely w/15 paid

Once it has received communications responsive to the search criteria outlined above, the defense will identify representations made by Feely about bond purchase and sale prices and compare those representations to trade data the defense has received from the Financial Industry Regulatory Authority (FINRA). FINRA's trade data reflects, among other things, the prices Morgan Stanley paid and received in RMBS transactions from May 16, 2011 through December 31, 2013. By comparing the trade data with Feely's representations, Defendant Peters will demonstrate that Feely – in fact – continued to engage in deceptive practices after leaving Nomura. The subpoena, therefore, clearly requests relevant documents, satisfying the first *Nixon* requirement.

The documents sought are also not prohibited impeachment information. As a threshold matter, *Nixon* does not hold that evidence requested in a Rule 17(c) subpoena cannot be used for impeachment purposes—it simply holds that, generally, impeachment cannot be the ***only*** "valid potential evidentiary use[]" for the materials. *Nixon*, 418 U.S. at 702. For that reason, courts have held that "[i]mpeachment materials may be the proper subject of a subpoena." *United States v.*

*Carollo*, No. 10 CR 654 HB, 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012). Obviously, communications in which Feely misrepresented the true ownership of RMBS to customers while at Morgan Stanley would bear on Feely's credibility. Indeed, it may be the only way for Defendant Peters to challenge Feely's claim that Defendant Peters pressured him to engage in the deceptive trading practices at Nomura.

But, the information has valid evidentiary use even if Feely does not testify and Defendant Peters does not have to impeach him. Specifically, the evidence will be used by Defendant Peters to rebut the government's claim that Defendant Peters is responsible for Feely's deceptive statements made during negotiations in which Peters did not participate. Showing that these types of statements were made by Feely after he stopped working with Defendant Peters will allow Defendant Peters to defend himself against the allegations in the Indictment. Therefore, the first-prong of the *Nixon* test, relevance, is satisfied when, as here, there is a "rational inference that at least part of the [materials] relate to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700.

## II. The Requested Documents Are Potentially Admissible

With respect to the second-prong of *Nixon*, admissibility, the communications are admissible because they very likely satisfy the business records exception to the hearsay rule. Fed. R. Evid. 803(6); *see United States v. Nachamie*, 91 F. Supp. 2d 552, 564 (S.D.N.Y. 2000) ("Because the documents primarily seek business records, they are at this early stage likely to be admissible at trial."). Indeed, the communications are part of the books and records that Morgan Stanley must retain as a matter of law. *See* 17 CFR § 240.17a-4(a) (requiring preservation of records for a period of not less than six years, the first two years in an easily accessible place).

The materials are also admissible because they will establish the reasons why Feely fabricated large parts of the testimony and statements he has provided to the government to date, which he will likely repeat at trial: "Extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground." *United States v. Frank*, 208 F.3d 204 (2d Cir. 2000) (unpublished opinion) (quoting *Justice v. Hoke*, 90 F.3d 43, 48 (2d Cir. 1996)) (internal quotations omitted). More specifically, these materials "may suggest bias or a motive on the part" of Feely "to cooperate with the government on the conspiracy count in order . . . to protect himself from indictment here, or to otherwise guard against additional charges for other crimes." *See United States v. Carollo*, No. 10 CR 654 HB, 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012).

Defendant Peters believes the materials will reflect that, consistent with the recollections of Feely's former colleague at Morgan Stanley, Jonathan Fife, Feely continued to engage in the same allegedly deceptive trading practices at Morgan Stanley as he did at Nomura, despite the denials he offered to the government. Armed with such documents, Defendant Peters would argue at trial that Feely was motivated to cooperate with the government when confronted with his allegedly fraudulent activity at Nomura, to avoid any attention on the conduct Fife observed at Morgan Stanley. This also provided the motivation, Defendant Peters would argue, for Feely to cast himself as a reluctant participant in the trading practices used at Nomura.

**III. The Requested Documents Have Been Described With Specificity**

In order to meet the third-prong of the *Nixon* test ("reasonable specificity with respect to the documents sought"), Defendant Peters has requested documents that Morgan Stanley must retain as a matter of law and, therefore, that Morgan Stanley should be able to easily locate and produce. Morgan Stanley has likely preserved these communications in a form that makes them

easily searchable, both in light of applicable law and, as the defense understands, subpoenas Morgan Stanley has received from the government as part of a separate investigation into the trading practices used at Morgan Stanley's own RMBS desk.

## IV. The Requested Documents Should be Produced Before Trial

Pre-trial production of the materials is also appropriate. Courts have held that "when a person is almost certain to testify as a witness at trial and there is an indication of what that testimony will be . . . pre-trial production is appropriate." *United States v. Libby*, 432 F. Supp. 2d 26, 38 (D.D.C. 2006). Here, Feely is a critical witness for the government, and it is close to certain that the Government will call Feely as a witness at trial. The government has relied on Feely as a key resource throughout its investigation of this matter and interviewed Feely five separate times, at least as reflected in the memoranda the defense has received to date.[3] And the government also called Feely as a witness before the grand jury. NOM_USAOCT_000548. Finally, the government included Feely on the witness list it disclosed to Defendants on June 13, and Feely is one of only four former Nomura traders identified on the government's witness list.[4]

Beyond the high likelihood that Feely will appear as a witness at trial, little doubt exists as to the testimony the Government expects to elicit from him. As noted above, Feely has provided the Government with sworn grand jury testimony and has met with the Government at least five times, with each meeting memorialized in an interview memorandum and agent notes.

---

[3] NOM_USAOCT_000025; NOM_USAOCT_000050; NOM_USAOCT_000208; NOM_USAOCT_001118; NOM_USAOCT_0017450.

[4] Based on the government's recent disclosures to the defense, one of the other two former Nomura traders identified on the government's witness list, Frank Dinucci, engaged in the trading practices at issue here at a subsequent employer. Notably, the government interviewed Dinucci on multiple occasions, and, like Feely, Dinucci represented during those interviews that, after leaving Nomura, he never again engaged in the trading practices at issue here. However, documents from investigations by the government and the Financial Industry Regulatory Authority, Inc. (FINRA) into Dinucci's conduct at Auriga demonstrate that Dinucci did, in fact, make misrepresentations to clients while at Auriga. *See* F_000243.

Finally, Defendant Peters has no reasonable means of obtaining these materials but through a subpoena, as the materials are confidential business records of Morgan Stanley.  And, he must have them in advance of trial in order to conduct the analysis described above so that he can use the documents during the trial of this matter.  Waiting until trial will not allow sufficient time for Defendant Peters – or possibly an expert witness retained by Defendant Peters – to use the documents during trial.

## CONCLUSION

For the foregoing reasons, Defendant Peters respectfully requests that the Court direct issuance of the subpoena attached hereto as Exhibit 1 with a return date of December 30, 2016.

Dated: New York, New York
       December 2, 2016

>           Respectfully submitted,
>
>           **ALSTON & BIRD LLP**
>
>           By: */s/ Brett D. Jaffe*
>               Brett D. Jaffe (PHV07701)
>               Michael Brown (PHV08372)
>               Joseph G. Tully (PHV07702)
>               90 Park Avenue
>               New York, NY 10016
>               Telephone: (212) 210-9493
>               Facsimile: (212) 210-9444
>               brett.jaffe@alston.com
>               mike.brown@alston.com
>               joe.tully@alston.com
>
>           *Counsel for Tyler Peters*