UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | S2 No. 15-cr-00155 (RNC) |
| | : | |
| ROSS SHAPIRO, | : | |
| MICHAEL GRAMINS and | : | January 4, 2017 |
| TYLER PETERS | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S MOTION FOR A CONTINUANCE**

Defendant Ross Shapiro, by his attorneys, Petrillo Klein & Boxer LLP, Defendant Michael Gramins, by his attorneys Greenberg Traurig LLP, and Defendant Tyler Peters, by his attorneys, Alston & Bird LLP, respectfully submit this Memorandum of Law in opposition to the government's motion for a continuance of the trial date in this matter.

While the defense in no way intends to downplay the severity of the circumstances surrounding the government's request, the government's motion must be denied. The Sixth Amendment and the Speedy Trial Act entitle the defendants to a speedy trial and the prejudice that the defendants would suffer as a result of a continuance until May 2017 greatly outweighs any inconvenience to the government. Accordingly, the government's motion for an adjournment should be denied.

**BACKGROUND**

On September 3, 2015, Indictment 15 Cr. 155 (RNC) was filed in ten counts. (Dkt. No.

2).[1] The Indictment charged Shapiro, Gramins and Peters with conspiracy to commit securities fraud and wire fraud and with substantive counts charging the same. On September 10, 2015, the defendants were arraigned and admitted to bail, and the Court entered an order setting jury selection for November 10, 2015. (Dkt. No. 23). On October 6, 2015, after conferring with the government, the defendants filed a motion to continue, requesting that jury selection be postponed until October 18, 2016, and consenting to exclude time under the Speedy Trial Act, 18 U.S.C. § 3161 ("Speedy Trial Act" or "STA"). (Dkt. No. 66). The parties appeared before this Court for a pretrial conference on October 7, 2015, and subsequently submitted a joint proposed pretrial schedule, which the Court endorsed by order dated October 22, 2015. (Dkt. No. 73). The parties thereafter made minor adjustments to certain pretrial deadlines, but otherwise prepared to begin trial in October 2016.

On September 2, 2016, the parties appeared before the Court for a hearing on motions *in limine*. During the hearing, the Court expressed concern that the parties would not be able to pick a jury that would be fair to both sides since the jury summonses would require jurors to be available from mid-October through early-December, which would likely interfere with many potential jurors' Thanksgiving travel plans. The parties then attempted to choose a new trial date. The defense expressed a strong preference for commencing in January. *See* Motions Hr'g Tr. 26:18-19; 27:1-2 (Sept. 2, 2016) ("[W]e would be amenable to the earliest possible January date. . . Starting January 3, 4, 5, would be our ideal starting date."). The Court also initially expressed a preference for January 2017. *See id.* at 22:13-14 ("To me ideally the best time would be January. Perhaps mid January."). However, the government objected on the grounds that the trial in *United States v. Litvak* is scheduled to commence on January 4, 2017 and AUSA Cherry – one

---

[1] A superseding indictment was returned on February 4, 2016 (Dkt. No. 115), and a second superseding indictment was returned on August 3, 2016 (Dkt. No. 193).

of three AUSAs handling this matter – is working on both cases and several witnesses are expected to testify at both trials. The government instead requested that trial commence on March 15, 2017. The defense objected, arguing that the Speedy Trial Act entitled the defendants to the earliest trial possible, constitutional concerns accompany delay, and the government had adequate personnel to cover both trials. Additionally, counsel for Mr. Gramins informed the Court that Mr. Gramins' wife is expecting a child in late March 2017. After further discussion, the parties subsequently agreed to a new trial date of February 27, 2017. Following a telephonic conference with the Court on September 6, 2016, the parties submitted a joint proposed scheduling order that memorialized the new trial date, which the Court endorsed on October 3, 2016. (Dkt. No. 244). Pursuant to the new schedule, the Court again excluded time under the Speedy Trial Act in the interest of justice. (Dkt. No. 268). Save for a few minor adjustments, the parties have since adhered to all deadlines under the revised pretrial schedule, including further briefing and oral argument on motions *in limine* and the exchange of expert disclosures.

In reliance on the firmness of the February 27, 2017 trial date, counsel for the three defense teams, who are all based in New York City or Atlanta, have spent significant time and resources handling the logistics involved with trying a lengthy case in Hartford. All three defense teams, totaling over twenty people, have committed enormous sums of money – including sizeable non-refundable deposits – to reserve hotel rooms and office space near the courthouse from mid-February through mid-April, and to move lawyers, paralegals, support personnel and computer systems housing the discovery to Hartford. Defense counsel have re-arranged, postponed or declined other matters to ensure that they will not face any interferences between February and April 2017. The three defendants have also prepared to uproot their wives and children and make childcare and housing arrangements for the February-April time period. In

3

addition, defense witnesses, including experts with other professional and personal commitments, have adjusted their hectic personal and professional schedules and made themselves available between February and April.

On December 28, 2016, the government sent an email to the Court requesting that the jury administrator refrain from mailing out jury summonses due to a medical issue affecting one member of the government's trial team and the likelihood that the government would request a continuance of the trial date. The following day, the Court informed the parties that the jury administrator would proceed with issuing the summonses in order to stay on schedule pending the government's decision to file its motion.

On January 3, 2017, the government filed its motion for a continuance. (Dkt. No. 280).

## RELEVANT LEGAL PRINCIPLES

Pursuant to the Sixth Amendment, all criminal defendants "shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court has explained the purpose of this clause as follows:

> Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*United States v. MacDonald*, 456 U.S. 1, 7–8 (1982); *see also United States v. Roberts*, 515 F.2d 642, 645 (2d Cir. 1975) ("The Sixth Amendment's guarantee of a speedy trial gives recognition to an accused's significant stakes psychological, physical and financial in the prompt termination of a proceeding which may ultimately deprive him of life, liberty or property."). This right "is

not a theoretical or abstract . . . but one rooted in hard reality in the need to have charges promptly exposed." *Dickey v. Florida*, 398 U.S. 30, 37 (1970). Similarly, under the Speedy Trial Act, the defendants are entitled to a trial "at the earliest practicable time." 18 U.S.C. § 3161(a). The Speedy Trial Act is "designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in ensuring prompt criminal proceedings." *United States v. Shellef*, 756 F. Supp. 2d 280, 288 (E.D.N.Y. 2011), *aff'd*, 718 F.3d 94 (2d Cir. 2013) (quoting *United States v. Hill*, 197 F.3d 436, 440 (10th Cir. 1999)). Further, timely resolution of criminal cases serves the purpose of "minimizing the length of the periods of anxiety for victims, witnesses and defendants, and their families." *ABA Standards for Criminal Justice* 12-3.1; *see also United States v. Ledee*, No. CRIM. 09-131, 2011 WL 2518775, at *2 (D.P.R. June 22, 2011) (quoting *United States v. Pringle*, 751 F.2d 419, 429 (1st Cir. 1984)) (stating that one of the primary concerns of the STA is allowing defendants to avoid "anxiety and public suspicion arising out of the accusation").

## ARGUMENT

### I. The Defendants Will be Unfairly Prejudiced by a Continuance

The constitutional and statutory speedy trial factors, as well as the balance of equities in this case clearly dictate that the government's request for a continuance must be denied. The current trial date, February 27, 2017, was painstakingly selected and agreed upon by the government, the defense and the Court. A continuance at this point would cause extreme prejudice to the defendants and defense counsel on logistical, emotional, and financial levels.

This case was indicted in September of 2015, more than sixteen months ago. For the defendants, however, the anxiety involved with awaiting the resolution of this case began well before the indictment was returned. The defendants became aware of the underlying

investigation in late 2013 and were placed on leave by Nomura as a result of the investigation in November 2014. Thus, it has been over three years since the defendants learned of the potential charges against them and over two years since they have been out of work as a result of the charges.  With a felony indictment in place for more than a year, their ability to seek meaningful employment and provide for their families is hamstrung. This financial and professional paralysis is worsened by the conditions of release imposed by the government, which have prevented the defendants from contact with friends and former colleagues for well over a year. These factors have placed an unquantifiable amount of stress, pressure and emotional hardship on the defendants and their families. The defendants, who are presumed innocent, should not have to endure this hardship and anxiety until May 1, 2017, and then endure a trial that would stretch into the summer of 2017.

The practical considerations attendant to the trial also weigh heavily in favor of maintaining the February 27th trial date.  The three defense teams have gone to great lengths to coordinate all of the details attached to trying a lengthy out-of-state case, such as arranging travel, lodging accommodations and office space. Some of these arrangements have required the defense teams to make sizeable non-refundable deposits. Partners, associates, and paralegals from each law firm have taken steps to ensure that they will not face any interferences throughout the duration of the trial, which has involved not only rearranging schedules in other cases, but handling all of the miscellaneous details associated with being away from family and home for over a month.[2] Defendants' expert witnesses have also planned their busy professional schedules for the late February start date.  These schedules cannot be easily rearranged.

---

[2] For example, Mr. Spiro, counsel for Mr. Peters, is scheduled to start trial in *United States v. Mitchell*, No. 1:16-cr-00234-BMC (E.D.N.Y. May 2, 2016), on June 12, 2017 (or on April 19, 2017, if Mr. Spiro is not on trial in the case before Your Honor).  Delaying this trial would result not only in a delay for Mr. Spiro's client, but a delay for two

The defendants have also made travel and lodging plans based on the February start date, as their families struggle to make ends meet and care for young children. Mr. Shapiro has personal and family commitments in May and June. Mr. Gramins' wife is expecting their second child in late March or early April, and the February trial date was selected, in part, to accommodate this event. If the trial is postponed, Mr. Gramins and his wife will be concurrently faced with the stress of the trial and its possible consequences and the burdens associated with caring for a newborn.

Reshuffling all of these carefully scheduled plans is unfeasible. The cost and inconvenience involved with changing these arrangements would be significant, particularly since this would be the second time that the defense would have to make such rearrangements. In short, it is simply unreasonable to inconvenience dozens of people in order to accommodate a single AUSA.

### II. The Government is Well-Equipped to Try this Case in February

The government's desire to maintain the complete continuity of its three-person trial team is not a sufficient reason to adjourn the trial. Indeed, none of the cases cited by the government support its request. In several of the cases cited by the government, the defendant had consented to, not challenged, or was himself responsible for the lower court's exclusion of time under the Speedy Trial Act. *See United States v. Griffin*, 194 F.3d 808, 824 (7th Cir. 1999) ("Because Mr. Griffin failed to raise [the speedy trial] issue in the district court . . . he has forfeited the claim on appeal. We can reverse [only for] plain error."); *United States v. Keith*, 42 F.3d 234, 240 (4th Cir. 1994) (holding that "Keith affirmatively agreed to the government's motion for a continuance due to the illness of counsel" and "if a defendant affirmatively consents to a motion

---

other defendants, one of whom has cancer. Additionally, six other defendants in the case who have pleaded guilty cannot be sentenced until the other three are tried.

7

for a continuance . . . the defendant cannot take advantage of that discrete period of time . . . in asserting a violation of the Speedy Trial Act"); *United States v. Stackhouse*, 183 F.3d 900, 901-02 (8th Cir. 1999) (holding that defendant had waited until after "his trial date had passed" before deciding not to change his plea to guilty, and thus finding proper the lower court's exclusion of time to set a new trial date). None of the defendants here consent to the government's motion, nor have they engaged in conduct that would justify a continuance.

The remaining cases cited by the government are easily distinguishable from the case at bar, and stand only for the proposition that the appellate courts in those cases found no clear error or abuse of discretion by the lower courts in responding to different factual circumstances. In *United States. v. Eccleston*, 615 F. App'x 767, 777 (4th Cir. 2015) (decided under a "clearly erroneous" standard), the government sought a three-week continuance only twenty-seven days prior to trial, and ultimately less than a year passed between the defendant's arrest and the conclusion of the trial. In *United States v. Moutry*, 46 F.3d 598, 600 (7th Cir. 1995), the government sought a significantly shorter continuance than here, and did so only a few weeks after the defendant's initial appearance in the district court. These cases do not support the government's request in this case, through which it seeks a *nine*-week adjournment of a trial date that all parties have been working toward for many months, and for which the government still has over two months to prepare.

Nor does *United States v. DiTommaso*, 817 F.2d 201, 210 (2d Cir 1987), offer any support for the government's request. In that case, the illness of a prosecutor required the government to get two *new* prosecutors ready for trial. *Id.* Here, two experienced and trial-ready AUSAs are already on the trial team, including Mr. Novick, Chief of the Criminal Division's Financial Fraud and Public Corruption Unit, and Ms. Cherry, who has been immersed in the facts

8

of this case since its inception. *See* Motions Hr'g Tr. 24:25 (Sept. 2, 2016) (government stating that Ms. Cherry is a "vital part of this team" and has "spent two years preparing this case").

Two AUSAs is standard for all but the most lengthy and complex criminal trials. If the government truly believes it needs a third prosecutor, there is sufficient time and the U.S. Attorney's Office in Connecticut is well-equipped. Seven weeks remain until trial. Assistant U.S. Attorneys in Connecticut are quite familiar with RMBS cases, having charged four other defendants on nearly identical allegations [3] and investigated numerous others. [4] There are approximately sixty AUSAs in the District of Connecticut who would undoubtedly be ready, willing and able to assist at the February 27th trial.

The government's cry that this case is so "complex [and] difficult" that only three specific prosecutors are able to try it should fall on deaf ears. In April 2016, the government took quite a different position before this Court:

> MS. CHERRY: I mean, I think that you can try to complicate the case by trying to get into the nitty-gritty to understand these bonds, but I don't think you have to. They are just things that were purchased—that were bought and sold.

Motions Hr'g Tr. 20:18-22, April 6, 2016.

At bottom, the government should be not be permitted to jeopardize the defendants' rights, or compromise the time, energy, schedules and resources of dozens of other people, simply because it wants to have the three prosecutors of its choice on the case. There is more than sufficient time for a substitute, if needed, to be found.

**III. It Will be Difficult to Select a Fair Jury in May**

This Court has already recognized that the timing of jury selection is critical to a trial of

---

[3] *See United States v. Litvak*, No. 3:13-cr-00019-JCH (D. Conn. Jan. 25, 2013); *United States v. Katke*, No. 3:15-cr-00038-RNC (D. Conn. Mar.11, 2015); *United States v. Siegel*, No. 3:15-cr-00231-RNC (D. Conn. Dec. 21, 2015); *United States v. Demos*, No. 3:16-cr-00220-AWT (D. Conn. Dec. 7, 2016).
[4] The defense has learned of these investigations as a result of discovery turned over by the government.

9

this type. At the September 2, 2016 hearing, the Court expressed concern that the parties would have great difficulty picking a jury for a trial that would intersect with the Thanksgiving holiday:

> People who would otherwise be willing to serve, people who would otherwise be good jurors, are going to understandably ask to be excused, and they will be excused because we're not going to force people to come here if they don't want to be here. That's a prescription for disaster. . . . In a case of this complexity and this length, I envision a jury that is capable of comprehending the subject matter and dealing fairly with the nuances in order to provide both sides with a fair trial. Whether you can get such a jury on the schedule that you folks have in mind is something that I'm skeptical about, and I think the chances of your getting such a jury would be significantly -- and I underscore the word "significantly" -- enhanced if you waited.

Motions Hr'g Tr. 16:19-24;18:20-19:3 (Sept. 2, 2016). As a result of the Court's observations, the October 18, 2016 trial date was adjourned until February 27, 2017.

Should the trial be postponed until May 1, 2017, the concerns previously expressed by the Court would be even greater. The jury summonses would require jurors to be available well into June. The trial would overlap with Memorial Day weekend and the end of the school year and would undoubtedly interfere with the family and vacation plans of a vast number of potential jurors. The pool of qualified jurors available to the Court given those obstacles would shrink significantly, to the detriment of both parties and the interests of justice. In a criminal case, exposing the defendants to such peril simply in order to allow the government to retain its three preferred prosecutors is a risk that must be avoided.

This Court observed on November 28, 2016, at a hearing on expert witness disclosures, that "[t]here's a reason for deadlines.  It's important that people comply." Expert Hr'g Tr. 35:9-

10

10 (Nov. 28, 2016). The February 27, 2017 trial date has been set in stone for months. There is no reason that the government cannot adhere to the deadline.[5]

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny the government's motion for a continuance.

Respectfully submitted,

GREENBERG TRAURIG LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
*Attorneys for Michael Gramins*

PETRILLO KLEIN & BOXER LLP

By: /s/ Guy Petrillo
Guy Petrillo
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
*Attorneys for Ross Shapiro*

ALSTON & BIRD LLP

By: /s/ Brett D. Jaffe
Brett D. Jaffe (PHV07701)
90 Park Avenue

---

[5] The government's request for an adjournment cannot be buttressed by its claim that the defense has engaged in "deadline gamesmanship" related to expert disclosures. That issue has already been argued extensively and resolved without either party contemplating an adjournment of the trial based thereon.

11

15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
*Attorneys for Tyler Peters*

## CERTIFICATION OF SERVICE

I hereby certify that on January 4, 2017, a copy of foregoing Memorandum of Law in Opposition to the Government's Motion for a Continuance was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
January 4, 2017

      /s/ Marc L. Mukasey
Marc L. Mukasey
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mukaseym@gtlaw.com