1                    UNITED STATES DISTRICT COURT

2

3                 FOR THE DISTRICT OF CONNECTICUT

4

5       - - - - - - - - - - - - - - - x
                                      :
6       UNITED STATES OF AMERICA      :   No.  3:15CR155(RNC)
                                      :
7                 vs.                 :
                                      :
8       ROSS SHAPIRO, ET AL,          :
                                      :   HARTFORD, CONNECTICUT
9                     Defendants.     :   January 6, 2017
                                      :
10      - - - - - - - - - - - - - - - x

11

12

13                      TELEPHONE CONFERENCE

14          BEFORE:

15              HON. ROBERT N. CHATIGNY, U.S.D.J.

16

17

18

19

20

21                              Darlene A. Warner, RDR-CRR
                                Official Court Reporter
22

23

24

25

```
 1    APPEARANCES:

 2

 3            FOR THE GOVERNMENT:

 4                U.S. ATTORNEY'S OFFICE-NH
                  157 Church Street
                  P.O. Box 1824; 23rd Floor
 5                New Haven, Connecticut 06510
                  BY:  DAVID NOVICK, AUSA
 6

 7            FOR ROSS SHAPIRO:

 8                PETRILLO, KLEIN & BOXER LLP
                  665 Third Avenue
                  22nd Floor
 9                New York, New York 10017
                  BY:  GUY PETRILLO, ESQ.
10                     JOSHUA KLEIN, ESQ.

11                REID & RIEGE, P.C.
                  One Financial Plaza
12                Hartford, Connecticut 06103
                  BY:  THOMAS V. DAILY, ESQ.
13

14            FOR MICHAEL GRAMINS:

15                BRACEWELL & GIULIANI, LLP
                  1251 Avenue of the Americas
16                49th Floor
                  New York, New York 10020-1100
17                BY:  MARC L. MUKASEY, ESQ.

18                SHIPMAN & GOODWIN, LLP
                  One Constitution Plaza
19                Hartford, Connecticut 06103
                  BY:  ROSS H. GARBER, ESQ.
20

21

22

23

24

25
```

1    APPEARANCES (CONTINUED):

2

3        FOR TYLER PETERS:

4            ALSTON & BIRD, LLP-NY
             90 Park Avenue
5            12th Floor
             New York, New York 10016
6            BY:  BRETT D. JAFFEE, ESQ.
                 MICHAEL L. BROWN, ESQ.
7
             BRAFMAN & ASSOCIATES, PC
8                767 Third Avenue, 26th Floor
                 New York, New York 10017
9            BY: ALEX SPIRO, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              11:30 A.M.

2

3               COURT REPORTER:  Good morning, Judge Chatigny

4       has joined the conference.  Please state your appearances.

5                    MR. NOVICK:  For the government, it's David

6       Novick.  Good morning, Your Honor.

7                    THE COURT:  Good morning.

8                    MR. PETRILLO:  For Mr. Shapiro, it's Guy

9       Petrillo, Josh Klein and Tom Daily; and Mr. Shapiro is on

10      the line.

11                   MR. MUKASEY:  Good morning, Judge Chatigny, it's

12      Marc Mukasey, and I believe Ross Garber is also on the

13      line for the defendant Mike Gramins; and our client is on

14      the line as well.

15                   THE COURT:  Good morning.

16                   MR. BROWN:  Your Honor, this is Mike Brown with

17      Alston & Bird.  I'm joined with Brett Jaffe and Alex

18      Spiro.  We represent Tyler Peters who is on the line.

19                   THE COURT:  Okay, thank you.

20               This is a telephone conference to address the

21      government's motion for a continuance.  I've read your

22      papers and I asked my law clerk, Katie, to alert you to

23      the matters that seem to me to require our focused

24      attention.  It may be that I have overlooked something

25      important.

1          In any event, I would propose to start with

2    those matters that I asked her to highlight for you and we

3    can proceed from there.

4          Based on my review of the papers, it appears to

5    me what this boils down to is whether the interest in

6    having the case tried fairly and effectively by both sides

7    requires this continuance.

8          As I understand the situation based on the

9    papers submitted to me, Mr. Brennan's personal situation

10   is likely to sideline him for the foreseeable future.  The

11   government's description of Mr. Brennan's situation seems

12   to suggest that he is going to be preoccupied with urgent

13   and pressing and continuing personal concerns for weeks,

14   if not months; and while the motion doesn't say that,

15   Mr. Brennan is effectively unavailable now and for the

16   foreseeable future.  Indeed, while the motion seems to

17   assume that he is available and will continue to be

18   available to give time and attention to this case, it

19   strikes me as unrealistic to expect that a person in his

20   situation, as described in the papers, can be expected to

21   give attention to this case in a focused way with

22   everything else that he has to deal with on a daily basis;

23   indeed a minute-to-minute basis.

24          So for me, the issue becomes whether, given

25   Mr. Brennan's personal situation, we can reasonably expect

1     the government to be ready in accordance with the existing

2     schedule.

3             I don't want to go on and on here, but I do want

4     to frame this discussion and be sure that I'm seeing it

5     the way it should be seen.

6             It's not my place to staff the case for either

7     side, of course, but in the circumstances, given the

8     motion, trying to understand the situation and trying to

9     get a handle on the parties' interests, it seems to me

10    that the issue is whether Mr. Novick, together with

11    Ms. Cherry and one or more other assistants, can

12    reasonably be expected to be ready for a trial with

13    Mr. Novick as the lead counsel.

14            In the language of the Speedy Trial Act, would

15    adhering to the schedule deny the government reasonable

16    time necessary for effective preparation.  With that

17    question in mind, I would ask government counsel what must

18    be done to adequately prepare that simply cannot be done

19    now that Mr. Brennan is no longer available?

20            MR. NOVICK:  Certainly, Your Honor, and I would

21    just add at the outset, it is both preparation that

22    concerns the government acutely here as well as continuity

23    of counsel, which is also in the statute, which I

24    understand sometimes we can't have, but in this case there

25    seems to be a reasonable path to permit that and it seems

1    to permit, particularly important in this case, in the

2    interest of having a fair trial.

3            But let me address Your Honor's points in the

4    email that Katie sent yesterday.  I think I can cover all

5    of that.

6            I want to first give a couple of overarching

7    points that I think are important to frame the issue in

8    terms of what must be done in terms of preparation as well

9    as continuity of counsel.

10           The first overarching point is that, as the

11   Court is aware, this was Mr. -- it's not just that

12   Mr. Brennan was the lead counsel here, this has been

13   Mr. Brennan's case for two and a half years.  It was

14   Ms. Cherry's first case when she joined the office in her

15   first job as a lawyer, you know, roughly I want to say

16   probably a little bit more than two years ago.  But

17   Mr. Brennan, you know, has interviewed all of the

18   witnesses, has, you know, dealt with all the document

19   productions and the discovery, has dealt with the lion's

20   share of the motion practice.

21           And so it's not again just a question of being

22   lead counsel, but it's also a question of the immense

23   amount of knowledge that he has that I simply do not have.

24           Which brings me to my second point, sort of

25   overarching point, which is that, you know, my role in

1      this case will obviously change now, and I understand and

2      appreciate that, and I want the Court to understand that,

3      you know, and I know the Court does, that I will be in

4      court ready for the government whenever the Court orders

5      me to and I will obviously change my role accordingly.

6             But my role on this case was to provide -- I'm

7      the supervisor of Ms. Cherry and Mr. Brennan -- was to

8      provide guidance to them and assistance where I could, in

9      light of the fact there are 20 lawyers on the other side.

10     We're obviously not going to staff that way, but we

11     recognize the need to have somebody additional, perhaps

12     somebody with additional trial experience.  And so my role

13     was to assist where I could.

14            And I have assisted, as the Court is aware, in

15     issues such as the expert disclosures, some of the motions

16     in limine, areas where I believed that my lack of history

17     with the case would not prevent me, but nonetheless my

18     appreciation and understanding of the theory of the case

19     would not prevent me from being of assistance, and that's

20     where I've focused my time and attention.

21            I also was intending to direct a small number of

22     witnesses during the trial, and it was undetermined

23     whether I would do any of the jury addresses.

24            It was not to handle the more complicated

25     witnesses who were handling several of these trades.  It

1      was not to really lead the government's effort here.  You

2      know, that was going to be the province of Mr. Brennan

3      and, to a degree, Ms. Cherry.

4             Obviously that will change, Your Honor, but I

5      just want to make sure the Court understands that the

6      position I'm starting from here is not where I would

7      normally be coming before the Court as lead prosecutor

8      having the knowledge of the case that I would normally

9      have, would normally expect to have in a matter like this.

10     And I guess the follow on to that is that I don't see how

11     it's reasonable for the government to get there, for me to

12     get there, for the government to get there, you know,

13     within the next, you know, six, seven weeks, and even

14     under the best of circumstances.

15            You know, and I'll be as specific as possible,

16     but, you know, I do want to say that it's not just what

17     I'm about to say in terms of the specific things I will

18     need to do but it's also a question of when we're

19     preparing witnesses, when I'm preparing witnesses, at

20     least until next month, when Ms. Cherry is not available,

21     I don't have a full view of the case in the way that

22     Mr. Brennan did.

23            So I can do this at a basic level, and I will

24     prepare each of the times that I'm preparing these

25     witnesses, but I lose something, something extremely

1     significant in doing that by not having Mr. Brennan or,

2     frankly for the next month, Ms. Cherry, available.

3                 So the tasks at hand, Your Honor, in no

4     particular order, are:

5                 To prepare the witnesses for trial.  And it's

6     worth mentioning that this is the time, you know, six

7     weeks, a month to six weeks prior to trial, that's when

8     the government typically prepares a case because you don't

9     necessarily prepare witnesses farther out than that.

10                We have some where, I would say between 15 and

11    20 witnesses -- I didn't play a role in putting an order

12    of proof together, a tentative one -- but it's my

13    understanding it's about 15 to 20 witnesses, again only a

14    few of which I was planning on handling.

15                Many of these witnesses involve multiple trades,

16    each of these trades is a narrative, a story unto it

17    itself.

18                And many of these witnesses, I would add, are

19    out of town.  Some of them will come to us, but some of

20    them will not, so I'm going to go have to deal with that.

21                I have not met the majority of these witnesses.

22    I'm going to have to review the prior statements, the

23    trade documents, chats, et cetera, and also be familiar

24    with the material that would potentially be used on cross

25    examination.  Something I'm trying to work on now, among

1   other things.

2           The defense has given 1500 exhibits, and I've

3   tried to start separating out the ones that relate to each

4   witness.

5           But I'm fully cognizant of the fact that they

6   can be cross-examined with anything that's in the

7   discovery, and we're talking about 400 gigabytes of

8   discovery that, you know, Mr. Brennan has the knowledge

9   of, much more so than I do.  I doubt he knows every

10  document, but I suspect -- I know that he knows, excuse

11  me -- the salient ones and is in a far better position to

12  be able to assist in that exercise, you know.  And that's

13  another one of the reasons why the government is looking

14  to have this delayed until when he can resume his

15  participation.

16          One moment, please, Your Honor?

17          THE COURT:  Yes.

18              (Pause)

19          MR. NOVICK:  Again, Your Honor, given the time,

20  and I understand there are occasions where people leave

21  the office and trials must go on, but then we would

22  probably be asking for additional time to get somebody new

23  up to speed on the case, and that's really the crux of it.

24  And to some degree in this short time period, that seems

25  to be impossible.

1        I have the familiarity with the case, I can do

2    this, not on this time schedule, but it seems like almost

3    Herculean to get somebody who has no familiarity with the

4    case ready in six weeks and with something with this

5    amount of discovery that has become this complex over

6    time.

7        The next thing that I think needs to be dealt

8    with from the government's perspective, there are a number

9    of undecided motions, motions in limine, that I believe

10   are still open and that we need to -- I think the Court at

11   times has requested additional information that we've been

12   working on, and part of that has been interviewing new

13   witnesses, part of that's been reviewing our old material

14   and working on additional information to provide the Court

15   so that the Court could potentially deal with these, you

16   know, difficult issues prior to trial in an efficient way,

17   and obviously that's something that's underway.  I'm

18   interviewing folks next week on one of those issues and so

19   I continue to work on that.  That's something that I was

20   working on with Mr. Brennan, but obviously I'm not going

21   to be able to do that.  It's going to be me.

22       Dealing with the defense exhibits, Your Honor,

23   there are about 1500 or so exhibits.  We were candidly

24   getting to the point, prior to Mr. Brennan's emergency,

25   where we were going to ask, you know, probably first the

1    defense in an attempt to work some of this out, and then

2    the Court, for some understanding as to the basis in

3    relevance for a lot of this material, because we don't

4    necessarily understand it, and then potentially try to

5    deal with some of the admissibility relevance of these

6    documents prior to trial.

7            Mr. Brennan was in the process -- I think we had

8    it a third of the way done, of a letter which obviously is

9    fallow now, because I don't happen to work on that, but I

10   will continue to push that forward because I think it's

11   important to push that forward.  Frankly, Your Honor, to

12   get through 1500 exhibits, compare them up with other

13   information in the case is extremely difficult even when

14   you know the case, and so that's another task that I'm

15   trying to understand and work on.  I think it would really

16   prejudice the government if we don't have the ability to

17   try to do that.

18           We still don't have access to some of the

19   exhibits.  You know, much of these exhibits were simply --

20   that were on the list, the defense produced them to us in

21   late November.  Because we use a vendor that simply has

22   not loaded some of this material on, we've got with them a

23   number of these 17(c) productions as well.  And so I'm

24   hoping that by the end of this week or next week some of

25   those remaining documents will be loaded so that I can

1    finish my review of -- at least initial review of the

2    defendants' exhibits.

3         When I say "my review" sort of collective

4    review, I have not reviewed nearly all of those and,

5    frankly, just the ones that seemed relevant to the

6    witnesses that I was going to be working on, but obviously

7    I'm going to expand my role in that.

8         The next area that I think I will have to handle

9    by myself for now and then hopefully when Ms. Cherry is

10   done with the trial, with hers, is preparing for the

11   defense witnesses.  I know Your Honor had raised this

12   issue with the defense, and I certainly would, you know,

13   be appreciative of any winnowing of the 90 witness defense

14   list that the defense is willing to offer.  I've not heard

15   of that yet.

16        However, I suspect -- well, let me say this:

17   Absent that winnowing, that is a fairly heavy lift.  We

18   have begun to, and I don't know if we've done all of them,

19   but a large of number, I've reached out to them to try to

20   understand what they may say, why they may be witnesses

21   here.  Some I may need to interview.  I don't know.  That

22   is still a work in progress.  It's just the volume,

23   frankly, Your Honor.  It's a matter of triage at this

24   point and all of that obviously takes additional time.

25        The defense experts is an entirely other area of

1    engagement that I have to be involved in.  Obviously I

2    spent a lot of time dealing with the disclosures.  And we

3    now have -- I'm not going to call them perfect

4    disclosures, but disclosures that are much lengthier and

5    provide additional exhibits, backup material, references

6    to Bates numbers and ranges that are support for those

7    that we received as late as December 21, Your Honor, two

8    days before I left for my vacation, and I have not gotten

9    through all of that yet.

10          As recently as last night was communicating with

11   counsel on one of them because one of the dates ranges I

12   didn't have, and it turns out it was somewhere else in the

13   discovery under a different Bates number.  There's no bad

14   faith on the part of the part of counsel, and I appreciate

15   that, but these are things that I'm looking through now.

16          And it may very well be that now having more to

17   go on on these experts, that I may need, and I suspect I

18   will need to hire, to get started on that process, a

19   professional to assist me.  But that's another thing

20   that's probably the more complicated part of the case that

21   I need to deal with, at least for the next month on my

22   own.

23          It's worth, you know, mentioning to the Court

24   that obviously the February 27th date in the first place

25   was a compromise from March 15th when I thought that we

1     would reasonably have time and Ms. Cherry would be fully

2     returned in her preparation to be able to prepare for the

3     witnesses.  I frankly thought that doing it on February 27

4     would be okay because I would have Mr. Brennan here to

5     assist even preparing some of Ms. Cherry's witnesses.  But

6     I don't foresee that.  God willing maybe Mr. Brennan will

7     be back earlier than they -- than I understand, but I'm

8     certainly not counting on any of that.

9          Your Honor, I would -- just got a couple more

10    points.  I think I mentioned in the briefing, but it's

11    worth reiterating, that when the defense asks for 13

12    months of a continuance, we were at about 50 gigabytes of

13    discovery, which is a lot of discovery in the first place.

14    We're now over 400 gigabytes on this case alone, about six

15    terabytes across all of the discovery.  That's just a lot

16    for any one person to get up to speed on in the period of

17    time that we have.  Even if I were to get somebody who

18    knows nothing or minimal about the case with me in that

19    endeavor.  I certainly will assign to folks within the

20    office discrete, small research projects that doesn't

21    require knowledge of the case, but I suspect those are

22    going to be few and far between.

23          So the Court understands, this is not a question

24    on the lack of diligence on my part, the government's

25    part.  I've given up my supervisory roles going forward

1    and handed it off to the people that work with me.  I've

2    consulted, because I recognize that this is an unusual

3    request, not one that I've ever made before for these

4    particular reasons, unusual request by the government to

5    continue a case.  I suspect that if the shoe were on the

6    other foot.  We wouldn't be having this discussion if

7    Mr. Petrillo and Mr. Mukasey or Mr. Jaffee, God forbid,

8    had an emergency, that this would be an entirely different

9    question.

10            So I did consult with folks in the office,

11   including Ms. Daily, Mr. Gustafson, Mr. Durham,

12   Mr. Nardini, all of whom you know, not only encouraged me

13   to or told me to ask for this period of time or ask for a

14   continuance, but also specifically worked through what

15   time we thought was reasonable and made that request to

16   the Court.

17            And as I said in the brief, this was not a

18   question of me wanting to offer an opening bid thinking

19   that I would get negotiated down.  I'd perhaps be a bad

20   bond trader.  But the question is what did I think was

21   reasonable, and that's where we came up with our date.

22            But as I said before, Your Honor, and I'll say

23   it again at the end, I will show up and put a case on when

24   the Court tells me to.

25            THE COURT:  All right, thank you.

1          MR. MUKASEY:  Judge, this is Marc Mukasey,

2     counsel for Mike Gramins.  If you can hear me?

3          THE COURT:  Yes.

4          MR. MUKASEY:  I'm going to make some points that

5     I think apply to all of the defendants, and then if any of

6     my co-counsel would like to jump in, I'm sure you'll let

7     them.

8          But, Judge, it was once said, I think of Ginger

9     Rogers, that she had to do everything that Fred Astaire

10    had to do, but she had to do it backwards and in heels.

11    Well, the list of items that Mr. Novick just articulated

12    that he has to do, we have to do also, and if we don't do

13    it, well, we go to prison, our clients go to prison.

14         So those trial steps and trial preparation, that

15    affects both sides, both sides are equally affected and

16    both sides need to do the job the best they can.  That's

17    not certainly unique to the government.

18         I would point out by way of background, Judge,

19    this case was indicted in September of 2015.  The

20    defendants certainly knew about the investigation before

21    that.  It had been looming like a black cloud over their

22    heads for two years or more.  It has been looming over

23    their families and their children and their finances and

24    their psyches and their friendships and relationships,

25    which are substantially curtailed as a result of the bail

1    restrictions in this case, and the date that we've picked,

2    I believe, was the earliest possible dates when these

3    incredibly draconian forces could begin to be lifted off

4    the defendants, they could finally get the case going.

5         The difference between the way postponement

6    affects the U.S. Attorney's Office and the way it affects

7    the defendants who are charged here is epic.  It's epic.

8    Everybody has to prep before every trial and everybody has

9    to recruit everybody they can to prep for a trial.  That

10   is a far different position than being a father, a son, a

11   brother, a friend who's looking at the possibility of

12   going to prison; and that at the end of the day is what

13   the Speedy Trial Act is about and the 3161 statutes are

14   about and the constitutional protection or your due

15   process right to a speedy trial is about.

16        The next point I want to make, Judge, is that an

17   indescribable amount of logistical planning -- I think,

18   you know, if you want to be colloquial, I call it herding

19   calves, but an incredible amount of logistical planning

20   has gone into the February 27th date.  That includes all

21   the defendants, all their families, all their caretakers,

22   their finances and their budgets -- because they're not

23   working as a result of the indictment -- the lawyers, our

24   witnesses, and I'm talking about things like not just

25   preparing witnesses, where are we going to put our heads

1       down at night and who's going to take care of the Gramins'

2       baby or who's going to be able to sleep in which bed.

3       That has all been geared for February 27th.

4               The witnesses that we have noticed, experts have

5       cleared away schedules, counsel in this case have cleared

6       away schedules, have put aside other matters, have spoken

7       to other judges about their schedules and correspondingly

8       moved those cases in reliance of the February 27th date.

9               Having to rearrange that and having to sort of

10      start from scratch is going to be almost an indescribable

11      effort financially and logistically.  Everything is locked

12      in for February 27th, and to upset that apple cart, it

13      will be hard to put it back together.

14              I will say this, Judge, and I don't, you know,

15      often call on this when I'm in court these days, but when

16      I was an Assistant U.S. Attorney, you know, Mary Jo White,

17      who was my boss, told us the government is always ready,

18      and the reason the government is always ready is it's the

19      defendants' rights.  The government has no really moral

20      authority to ask for postponement when it's the

21      defendants' rights at stake.

22              And assistants who would want to step in and

23      help try this case, I suggest are probably legions in the

24      U.S. Attorney's Office in Connecticut.  If I was an

25      assistant, I could crawl over broken glass to get a chance

1    to try this case.  And I have no doubt that other

2    assistants in Mr. Novick's office would jump at the chance

3    to participate in this.  And to have seven weeks to get

4    ready, not seven days, not a month, not 47 days, seven

5    full weeks to get ready, certainly doesn't seem impossible

6    from where I come from.

7           I pointed out in the papers that the government

8    now talks about the complexity of this case.  The

9    government stood in front of a jury yesterday, Ms. Cherry

10   stood in front of a jury yesterday in New Haven and told

11   the Litvak jury that this was not a complex case, and

12   that's a reiteration of what she said about the case on

13   the record in Your Honor's courtroom.

14          Judge, I would also point out that I certainly

15   don't envy Mr. Novick and I think he is going to take a

16   more increased role, but the notion that he was sort of a

17   casual participant in this case before the last few days

18   sort of flies in the face of what I've seen.  He has been

19   leading every telephone call we have had over the past --

20   really since he joined the case, and he's been the lead

21   lawyer in the courtroom since he joined the case, even

22   with Mr. Brennan present.

23          So this notion that he's all of a sudden

24   overwhelmed, you know, he'll take a bigger role, but there

25   are a handful of assistants in that office that are

1    familiar with the RMBS cases because they've indicted a

2    bunch of them, they've charged people and interviewed a

3    ton of people, and it's not limited to Ms. Cherry,

4    Mr. Brennan and Mr. Novick.  There are others quite

5    familiar with these facts and quite familiar with these

6    cases.  And as I've said earlier, I think virtually any

7    assistant in that office would be ready, willing and able

8    to step up and help replace Mr. Brennan.

9            With respect to the exhibit list or the witness

10   list, anything Mr. Novick requests from us and which he

11   does rightfully, we can pledge to the Court that we will

12   get a substantially pared down witness and exhibit list to

13   the government by January 27 which still gives them a

14   month before the February 27 trial date to get in, roll up

15   their sleeves and study those exhibits and interview the

16   witnesses or prepare for cross-examination.

17           My understanding, Judge, is that there are

18   something like 60 other assistants in that office.  And to

19   potentially stop dozens of people -- and I mean people on

20   the government's side and people on the defense side and

21   people in the courthouse who have scheduled February 27th

22   and scheduled their lives around it -- all these got to be

23   dozens of people who were ready for February 27th, all on

24   account of a single individual seems to me to really not

25   be fair to the defendants and to the other participants in

1    this trial who have relied on this date.

2          I think Mr. Brennan is probably a very skilled

3    and learned assistant.  I have no doubt there's 60 other

4    skilled, learned assistants.  I truthfully haven't ever

5    heard of an assistant being so vital to a single case that

6    dozens of people had to come to a halt and rearrange their

7    lives because of that one person.

8          And I say all this really only to protect the

9    rights of the defendants and their right to the quickest

10   possible adjudication of this black cloud that's been

11   hanging over their heads and which continues to hang over

12   their heads, and not because we don't have sympathy for

13   Mr. Brennan -- and obviously everybody on the defense

14   side, clients included, wish the best for Mr. Brennan and

15   his family.  Our job is to protect the rights of our

16   clients.

17         And finally, Judge, Your Honor was insightful, I

18   think, in talking both parties off of a February 2016

19   trial date because of the fact that it would have run

20   through Thanksgiving and made a jury difficult to pick and

21   made any jury that was picked possibly have their

22   attention and time and energy compromised as a result of

23   that holiday.  The May 1st date is going to run headlong

24   into Memorial Day weekend.  And essentially a week or so

25   after that, you're talking about kids getting out of

1    school, and I suggest that the February 27th date is the

2    date in which the fairest, most attentive jury could be

3    picked with the least amount of distractions.

4              Finally, this point is particular to Mike

5    Gramins, Judge:  Mr. Gramins' wife is scheduled to give

6    birth on or about March 30th or April 1st.  We agreed on

7    the February 27th trial date because we hoped that the

8    bulk of the trial, if not all of it, might be finished

9    around the time of the labor.  I know Mr. Gramins would

10   rather try the case with his wife pregnant than with a

11   brand new one month old, which is obviously a handful.

12             So the May 1st date really, in addition to all

13   the reasons, the sort of global reasons that I think

14   touched on all the defendants, the May 1st date is just

15   handicapping to our team.

16             In my view, Judge, and I think the law requires,

17   that the line here really be drawn in favor of protecting

18   the defendants' constitutional rights, speedy trial rights

19   and their right to have this case over with.

20             We may not be able to rearrange everything for

21   May 1st or whenever Mr. Brennan comes back, and I know for

22   sure Mr. Novick can recruit other assistants to try this

23   case.

24             That's all I have, Judge, thank you.

25             THE COURT:  Thank you.

1    Do other counsel wish to be heard?

2    MR. SPIRO:  Judge, Alex Spiro, counsel to

3    Mr. Peters.  I just wanted to add one other thing, Your

4    Honor, which is, you know, as I was listening to

5    Mr. Novick, it just sort of occurred to me that his

6    description of the case, you know, of 15-ish witnesses,

7    and he's got about two months to prepare is -- strikes me

8    as a rather standard amount of witnesses and a pretty

9    lengthy period of time in which to prepare.

10    And so while, you know, there's been a lot of,

11    you know, back and forth about complexity and things, you

12    know, if there was an answer of ready for trial months ago

13    and there was an intention on Mr. Novick's part to handle

14    a handful of witnesses, this would only be a few more than

15    that.  This isn't a case with 50, 60, 75 witnesses.

16    I just wanted to note that.  I have nothing

17    further.

18    THE COURT:  Okay, thank you.

19    Anyone else?

20    MR. NOVICK:  Your Honor, I'll let any other

21    defense counsel speak if the Court wants me to respond to

22    this.

23    MR. PETRILLO:  Your Honor, we don't have

24    anything at the moment, Your Honor.

25    THE COURT:  Okay, thank you.

1          Mr. Novick, I'll give you an opportunity to

2   reply.

3          MR. NOVICK:  Sure.

4          Your Honor, I understand the points made by

5   Mr. Mukasey more or less to be identical to the ones he

6   made in his brief and, you know, I suppose I can address

7   them.

8          You know, my view of this, Your Honor, is not

9   putting aside the logistical concerns -- which I certainly

10  understand both sides -- as I think he said at the very

11  beginning -- both sides have logistical concerns in trying

12  a case that are different from the substance.  But what

13  we're really talking about, what I think we're talking

14  about here is, is this going to be a fair trial to the

15  government.

16         I agree from a due process perspective the law

17  protects the defendant obviously.  But from the speedy

18  trial perspective, there's an interest to the public at

19  stake here as well, and I believe that the public has an

20  interest in seeing this case tried fairly.  And I just

21  don't think that that's going to happen on the current

22  schedule given the emergency here that no one anticipated,

23  that is incredibly frightening for Mr. Brennan, obviously,

24  and it is going to put the government at a tactical

25  disadvantage, a significant tactical disadvantage that the

1    defendants will gain from based purely on this unforeseen

2    situation.

3          Just a few additional points, Your Honor.

4          You know, with regard to some of these

5    logistical issues, I do note -- Mr. Mukasey noted, that

6    this is not the first continuance that the defendants have

7    gotten in this case, and I believe that the continuance in

8    September, which the defendants agreed to, appeared

9    actually closer to trial than this, and so -- and I do not

10   recall hearing any of those issues raised back then.

11         I don't understand -- you know, I wonder how

12   difficult it is to find hotel rooms in Hartford in either

13   of the two areas over the days we're talking about.  But

14   again, I go back to the idea of can we get a fair trial,

15   and if the defense says May won't work, then tell me what

16   will work beyond that.  What we're saying is that May 1 is

17   just unreasonable for the government to get ready before.

18         In addition to some things that Mr. Mukasey said

19   with regard to their being other assistants in this

20   office:  That's certainly true, Your Honor.  There are

21   roughly 60 to 62 assistants in the office, about 40 of

22   whom, or so, are in the criminal division, and about 13 --

23   14, but one's on maternity leave, are in the white collar

24   unit.  Obviously Mr. Francis and Ms. Cherry are engaged in

25   the other trial along with Mr. Nardini, and it's not true

1    that there are legions of other folks who have familiarity

2    with these cases.  In fact, the only people who have

3    worked on these other cases are Mr. Francis and

4    Ms. Cherry.

5           It's worth noting as well, Your Honor, that we

6    are talking about 20 folks, 20 attorneys on the other side

7    who have lengthy familiarity with this case, and that's

8    fine, that's the way that they want to staff the case, I

9    understand that, but it makes it all the more of an acute

10   issue for us when the one lawyer who had the most

11   familiarity by far is now no longer available.

12          And we're not talking about unavailability

13   forever.  We're talking about unavailability for a

14   discrete -- hopefully discrete period of time.  And if it

15   turns out to not be a discrete period of time, and I have

16   no reason to believe that to be true, but God forbid

17   something were to happen, then we'd be in a different

18   situation, Your Honor, and I understand that we'll have to

19   figure something out and figure out what time frame makes

20   sense to do that on.  And I would hope that we could

21   maintain that May 1 was something I thought of as when the

22   other trial is done, potentially having Mr. Francis join

23   in.

24          He has no familiarity with the facts of this

25   case, but obviously has familiarity with RMBS cases in

1    general.  He could fill in for Mr. Brennan if Mr. Brennan

2    could not continue by the date that I'm proposing.  So

3    that's something that I thought of.  But there is not, you

4    know, as sort of Mr. Mukasey suggests, just a legion of

5    folks who can step in here on this timeframe.

6         You know, certainly as I said before, I

7    appreciate the thought to have the reduction in the

8    witness list and the exhibit list.  Without knowing

9    though, Your Honor, what that actually means, it's hard

10   for me to say that that would have any impact at all.

11        As I said before, I've done this too many times

12   to think that, you know, the defense can't then turn

13   around and there's nothing I can particularly say and

14   offer a witness on rebuttal that, you know, may have came

15   off of their list, but now they believe it's something

16   that one of our witnesses said opened the door.  So I

17   don't know what meaning that would have, and obviously

18   welcome it.

19        I just obviously would make note of the fact

20   that the last time we raised this issue with the Court and

21   the Court order the defense to give us a pared down list,

22   a more realistic list, we went from, I don't remember the

23   exact numbers, Your Honor, but we went from 135 witnesses

24   to 90, or 91, which is no doubt better, but a Herculean

25   effort to try to prepare for that.

1           So even if we're talking about a pared down list

2      going from 90 to 45, that would be appreciated, but not

3      particularly helpful under the circumstances.  It doesn't

4      change the analysis significantly here, Your Honor, given

5      still the burden imposed by that.

6           With regards to, you know, the impending

7      Memorial Day holiday, I leave to the Court whether that's

8      a compelling issue here.  The only thing I would say is I

9      understood the Court's issue to be that Thanksgiving is a

10     family holiday and one -- it's probably one of the more

11     traveled holidays.  I don't know whether Memorial Day

12     would pose as acute a problem for a potential jury pool as

13     Thanksgiving and going into the Christmas holiday season.

14          And then with regard to Mr. Spiro's comment, you

15     know, look, I think every case is different and, you know,

16     I believe -- I know that Mr. Mukasey was referencing the

17     trial that's currently going on, and I believe, you know,

18     Mr. Cantor started testifying yesterday, is still on the

19     stand today, and I expect will be for some time.  When I

20     was in the DA's office, you know, maybe 15 witnesses would

21     mean a lot different than what it does when you're talking

22     about calling witnesses that are going to be talking about

23     some -- you know, lots of documents and complicated or,

24     you know, difficult concepts perhaps for the jury to

25     initially grasp.  I don't know.

1          But these are not simple witnesses, so I don't

2    think that that's -- I don't think we're talking apples to

3    apples.  Yes, there are going to be 15 witness cases that

4    I can pick up and do.  Consider a gun case or, you know, a

5    moderately complicated gun case, then we'd be having a

6    different conversation about this.

7          And as far as us having said that this is a

8    simple case, I think the simplicity of the way we believe

9    this ought to be argued and tried is a lot different from

10   the simplicity or complexity of the preparation of the

11   case.  Like any other white collared case, I suspect the

12   defense is going to want it to seem as complicated as

13   possible and we're going to want it to seem as simple as

14   possible.  It's no different from many other cases I've

15   been involved in.  But that doesn't mean the preparation

16   for that and I don't know, 75 or so pages or a hundred or

17   so pages, of experts I don't think I can now qualify as

18   simple.

19         This is stuff that's fairly dense, I think a lot

20   of it's irrelevant but, you know, I think they're going to

21   testify to a lot of it and I'm going to have to be

22   prepared to deal with it.  And so I don't put much

23   stock -- the government doesn't put much stock in the idea

24   that just because we're calling it simple to the jury

25   means that preparation for this case will in any way be

1    simple.

2              I think that's all I have, Your Honor.

3              THE COURT:  Your to do list includes retaining

4    an expert to assist you as a consultant to deal with the

5    defendants' expert disclosures, is that correct?

6              MR. NOVICK:  Yes, Your Honor.

7              THE COURT:  In thinking about what the

8    government is up against given the change of

9    circumstances, I wonder to what extent that kind of an

10   expert can assist a lawyer in effectively preparing for

11   the trial of this case assuming the lawyer has, at best,

12   only modest familiarity with the case.  Specifically, I'm

13   wondering whether, as a practical matter somebody who

14   could be brought into this case could be expected to

15   assist you in effectively preparing given the availability

16   of such an expert.

17             We're not going to take -- I hope we're not

18   going to take two months to try to educate a lay jury

19   about the facts of the case.  I'm wondering

20   realistically -- and I want to be realistic -- how much

21   time would it take another assistant to get up to speed

22   given the availability of experts to assist in that

23   effort?

24             MR. NOVICK:  There are a couple of points on

25   that matter.

1             I don't, I mean as the government, have

2    unlimited resources to pay someone to come here and sit

3    with me.  My expectation would be they're going to assist

4    me in evaluating the disclosures, in coming up with

5    questions that I might be able to use during the trial.

6    It doesn't -- again, it does not take the place of me

7    having to do the work on my own, having to read all of the

8    prior testimony and writings of these witnesses and

9    prepare the cross-examination of the witnesses.

10            Any expert that I will hire, you know, is just

11    that, and they're going to charge me probably through the

12    nose for each hour that they provide assistance, and I was

13    going to do that, Your Honor, whether Mr. Brennan was here

14    or not, I suspect, although I hadn't -- again, I hadn't

15    gotten these more fulsome disclosures until December.  As

16    I argued in my brief, that that's part of the problem

17    here, there's shifting and continuing disclosures that

18    make it very difficult for us.

19            Mr. Mukasey, you know, says that because I've

20    been handling some of these phone calls and hearings that

21    somehow I had more involvement in the case than I'm

22    letting on.  It just so happens that a lot of these issues

23    are the ones that I dealt with for the team, and so I

24    handled the hearing and the call.

25            So, Your Honor, I appreciate what you're saying

1    and I certainly hope, that's my expectation, that I will

2    get some assistance from the -- whatever expert that we

3    are able to retain.  I suspect I know who it will be, and

4    they'll assist me in that endeavor, but it's not a

5    question of they're not going to educate -- they're going

6    to educate me on I think what these experts are saying,

7    what I may be able to do on cross-examination -- but

8    they're not going to be able to educate me or a new

9    assistant on the case on the facts of this case, on the,

10   you know, statements of the witnesses that will have to be

11   prepared, on the defense witnesses and exhibits.  You

12   know, in many cases, you know, the experts are dealing

13   more conceptually than we are, you know, in the weeds and

14   the facts of the cases, and it remains to be seen here how

15   the testimony is.  I know the experts have looked at some

16   of the documents in the case.  And I also don't know when

17   I'm going to be able to use, you know, get that going.

18   It's going to take the expert some time to do that work to

19   assist me.

20             So I think it helps me certainly, and it's a

21   process to get the expert up to speed and ask them to do

22   the work and sit with them and learn it, but I don't think

23   that they're going to be the person who is going to assist

24   in getting some new unnamed assistant up to speed.  I

25   think that process is learning the discovery, is learning

1    the case, is learning the witness statements -- which are

2    volumes, they're things like the 302's, all of that other

3    stuff, which is an immense time commitment, and that's

4    what I'm doing now, and that's a lot.

5         And so I again go back to what I said earlier,

6    I'm going to show up when the Court tells me to show up,

7    but I believe it's unreasonable and unfair for the

8    government to be at as an extreme disadvantage based on

9    unforeseeable emergency and not due to any lack of

10   diligence by the government here.  And I certainly

11   appreciate everything the defense has said, but we're not

12   talking about a request for another year of time, we're

13   talking about a limited, in my view reasonable, request

14   given the nature of the emergency and given the nature of

15   Mr. Brennan's familiarity with the case.

16              THE COURT:  Okay.

17              MR. MUKASEY:  Judge, it's Marc Mukasey, if I

18   could just be heard very briefly?

19              THE COURT:  Sure.

20              MR. MUKASEY:  Thank you.

21         I'm actually shocked that Mr. Novick does not

22   think that there are assistants in his office who can get

23   up to speed on a 15 witness trial in seven weeks.  In

24   seven weeks.  I have to tell you that part of the crazy,

25   joyous, exhilarating experience of being an Assistant U.S.

1    Attorney is having the supervisor come into your office

2    and say, guess what, kid, you're up, Liam is down, Liam's

3    on the bench, you're up.  I guarantee you, any assistant

4    in that office would work night and day for seven weeks to

5    be the best possible trial lawyer he could be to be

6    included in this thing.

7              I don't think I should be the cheerleader for

8    the U.S. Attorney's Office in Connecticut, but I know what

9    would happen if Mr. Novick came to my office and said you

10   have seven weeks to get ready to try a case of this

11   import.

12             Talk about extreme strategic disadvantage?

13   Mr. Novick is talking about the extreme strategic

14   disadvantage without Mr. Brennan.

15             First of all, I'm not sure there's any case in

16   any U.S. Attorney's Office that could only be prosecuted

17   by a single person.

18             Second of all, we have, as Mr. Novick pointed

19   out, 40 gigabytes of information that we've been weeding

20   through for two years.

21             MR. NOVICK:  400.

22             MR. MUKASEY:  400, my bad.

23             We had at least 15 witnesses, who the

24   government's been working with, who the government's going

25   to call at trial to say that our clients committed crimes.

1       The government knows the order of those witnesses, what

2       they're going to say and how they're going to say it, when

3       they're going to say it.  The government -- I just find

4       this fascinating, that they think that they are in a

5       strategic disadvantage.

6               I mean, we're the ones playing defense here.

7       They're the ones setting the agenda.  They're the ones

8       that have always set the agenda.  It's our clients that

9       are facing jeopardy.  Mr. Novick's going home at the end

10      of the day, and whatever assistants he tries the case with

11      are going home at the end of the day.  Our guys are

12      fighting for their lives, so I don't think talking about

13      the government's strategic disadvantage ought to carry

14      much weight.

15              MR. NOVICK:  Your Honor, look, I'm not going to

16      belabor this much longer.  I think Mr. Mukasey perhaps has

17      a different view of the U.S. Attorney's Office than I do.

18      I don't -- it's not a question of not having folks here

19      who are capable of trying cases.  My issue is the

20      timeframe and the amount -- A, the timeframe; and B, there

21      is a lawyer, continuity of counsel, there's lawyer who has

22      all the information and experience with this case and the

23      relationship -- you know, the history of having met these

24      witnesses prior, who had an emergency and will be out for

25      a limited period of time, and I believe it's an eminently

1        reasonable request that we delay the trial in order to

2        allow him to prosecute his case or, in the alternative,

3        enough time to allow another assistant to get back up to

4        speed.

5              Look, I understand, I've been a prosecutor for

6        more than a decade, if, you know, I'm sure that I could

7        get someone else to fill in and will on a reasonable

8        timeframe, and I guess we have a difference of opinion as

9        to what that is.  And I do believe to some degree

10       Mr. Mukasey is making my point for me, which is there is a

11       lot of discovery that they and we have spent -- you know,

12       they, 20 lawyers, we, two lawyers and then a third near

13       the end, have spent a long time pouring through, and I

14       think that on the eve of trial or a couple months prior to

15       the eve of trial to simply take one of the three of us,

16       and the one with the most knowledge by far of that 400

17       gigabytes, is unreasonable for the government then to have

18       to go forward or to go forward, and I do believe it's an

19       extreme strategic advantage to the defendant and

20       disadvantage to the government.

21             I understand what Mr. Mukasey is saying.  I just

22       respectfully disagree.

23             MR. MUKASEY:  I would point out, the reason it's

24       called discovery because the defense gets to discover what

25       the government already has and already knows.  The idea

1    that, you know, the government, only one guy either has

2    knowledge of this -- I mean, this is the government's

3    case, they brought the case.  And you haven't heard

4    Mr. Novick talk at all about the rights of the defendant

5    to a speedy and public trial or the taxing, strenuous,

6    psychic public reputational wake on the defendants.  And

7    that doesn't affect the government at all.  It needs to be

8    zealously protected.

9          MR. NOVICK:  Your Honor, I want to correct one

10    factual thing.

11          It may be in a normal case that all the

12    discovery comes from the defendant to the government.  But

13    Mr. Mukasey well knows that that's not the case here.

14    They received through the civil process a lot of discovery

15    on their own, which they had long before they gave to us

16    which we got over the summer.  So a significant amount of

17    that 400 gigabytes came through that process, did not come

18    from the government, it came from the defendants seeking

19    out information.

20          Whether it might have been duplicative, I don't

21    know.  But that's simply not the case here.

22          THE COURT:  Okay.  Well, I appreciate your

23    input.  I'm going to have to wrap this up momentarily.

24    But while I have everybody on the phone, let me be sure

25    I've covered what I think I need to cover.

1          To my mind, the point that Mr. Mukasey

2     emphasizes about the defendants' interest in going ahead

3     on the existing schedule is very weighty.  I imagine there

4     are judges who would agree with United States Attorney

5     White that the government is always ready, period.  I'm

6     somewhat sympathetic to that view.

7          At the same time, Mr. Novick's point about the

8     Speedy Trial Act and its concern with the public interest

9     in having both sides put on a fair and effective

10    presentation for the jury is valid.  I mean, that's what

11    the act says, so I can't be dismissive.

12         For me, as I said at the beginning, I think it

13    is unrealistic to expect Mr. Brennan to continue as lead

14    counsel for the government on any timetable in a case

15    where we have had a tailored scheduling order in place

16    with an eye toward what would be a very taxing case for

17    all concerned.  For me, therefore, it becomes a question

18    of what the government can do with Mr. Novick as the lead,

19    and in that context, Mr. Novick, I would come back to you

20    and ask it this way:

21         If I were to deny your motion for a continuance,

22    what could you do in order to be ready to effectively

23    represent the government at this trial?  I ask that

24    because I need to understand, as best I can, what you are

25    up against and what is doable or not doable.

1          MR. NOVICK:  Sure, Your Honor.  I understand.

2          Maybe it would be helpful for me to give you by

3   way of an example what I did yesterday as I'm trying to

4   prepare for trial with the uncertainty of what we're

5   doing.

6          I did go to the opening statements in the

7   morning of the Litvak trial which, frankly, I would go to

8   more of because I think it's important.  The defense had

9   three lawyers in the audience there watching to understand

10  how that case is being argued.  But obviously I haven't

11  been there since then.

12         Then I came back, I dealt with a couple of

13  discovery issues, I worked on producing some witness

14  binders so that I could gather all the material together

15  to prep my first witnesses next week.  I then tried to

16  find all of the documents that relate to him.

17         I, among other things, spent probably the better

18  part of an hour or two trying to locate a particular

19  document, as I referenced before, which I couldn't find in

20  discovery.  I went to the paralegal who is also assisting

21  in the Litvak matter.  They didn't see this particular

22  series in discovery.  I went to one of the agents who's

23  not engaged in the Litvak trial -- most of them are -- and

24  tried to find where that is and couldn't find it until

25  finally, you know, at 7:00 or 8:00, I emailed counsel to

1      ask where there was.  And as I said before, it turned out

2      that it had been under a different number.

3              And so I, you know in an effort to try to

4      prepare that for my preparation for my witness, that

5      pretty much ate up the remainder of my day.  In part

6      because I'm not Mr. Brennan.

7              I also texted Mr. Brennan.  I never heard back,

8      and I'm trying not to do that much, but he has much more

9      knowledge as to what we have and don't have than anybody

10     else.

11             So I continue, Your Honor, and will continue to

12     go through that process, to set up meetings with folks,

13     try to prepare them, try to get ready for those meetings;

14     and I will, hopefully when Ms. Cherry gets back, get her

15     back engaged.

16             I don't know, Your Honor, candidly whether it

17     makes sense -- and it's something I'll have to talk about

18     within the office -- you know, who supported the motion to

19     continue, whether we would assign somebody who has no

20     familiarity with the case, to assist, which I think isn't

21     a great idea, or to assign Mr. Francis when he's done with

22     the trial, and that may be what I do.

23             But I'm going to continue to do that, Your

24     Honor, at least in the interim, is I'm going to make

25     appointments with folks, I'm going to continue to go

1   through all of the things that we just talked about

2   before, but each of those is cumulative.

3          You know, defense emailed me about some

4   illegible documents earlier in the discovery, and so I

5   spent an hour this morning trying to figure out -- because

6   I hadn't been handling that, somebody else had -- to try

7   to figure out what documents they're talking about, where

8   they are and can we get better copies of them.

9          So, you know, Your Honor, to give you a sense of

10  what I'm going to be doing, it's really going to be

11  everything for the foreseeable future, because that's what

12  I'm going to have to do to get ready for trial.

13         Like I said, Your Honor, I will show up, but,

14  you know, those things that I am doing to try to get ready

15  are not going to be near, at least in my view, reasonable

16  under the circumstances for what the government ought to

17  be able to do in light of the emergency that is going on.

18         But I'm going to work on trying to hire this

19  expert, I'm going to work on the motions that I talked

20  about that I want to file and hopefully do all of that,

21  Judge, I just don't -- right now, Your Honor's asking me

22  like how much of that I'm going to have time to do, I just

23  don't know because there's only so many hours in the day,

24  but I will try to come up with a schedule that lets me do

25  it.  I just don't know.  And try to assign discrete parts

1    to folks that don't require knowledge of the case.

2            THE COURT:  I appreciate your patience,

3    Mr. Novick, and I'm going to wrap up here momentarily, but

4    given that I'm being asked to determine whether it is

5    reasonable to expect the government to be prepared given

6    what has happened and recognizing that really the gist of

7    the defendants' position is that there are other people in

8    the office who are available to help, I need to ask you:

9    Why is that not right?  In other words -- and I don't mean

10   to press you and I don't mean to overstep my bounds here,

11   but I have this decision to make, and so let me just be

12   clear.  Here's my question:  Why is the defense wrong in

13   saying that the government can put together a team and

14   effectively prepare for this trial in the next seven weeks

15   considering that it's a 15- or 20-witness case,

16   considering that each trade is, as you said, sort of a

17   story, and considering that there are people available to

18   help bring people up to speed, whether they are case

19   agents, experts, paralegals, or other assistants who have

20   familiarity with the issues raised by a case of this type?

21   Why is that not correct?  Why can't you do just that?

22            I mean, why can't you reach out and have one or

23   more of your colleagues come on board and take a number of

24   the witnesses and get up to speed and in this way

25   effectively prepare?  Why is that not correct?

1           MR. MUKASEY:  Judge, it's Marc Mukasey, Your

2    Honor.  I'm sorry for interrupting.  I just want to point

3    out one quick thing, Judge, and then I'll cede the floor

4    to Mr. Novick.

5           Several of the witnesses that are going to

6    testify at our trial will have testified at the Litvak

7    trial two times and they will be very familiar with their

8    testimony.  They will be basically testifying to the same

9    thing in our trial that they've already done two times.

10   There's at least three or four witnesses that I can think

11   of that that applies to.

12          I am confident that any Assistant U.S. Attorney

13   in Connecticut can handle those witnesses.  They're

14   basically being given a script of what that person said

15   before and all they have to do is say it again.

16          Sorry for interrupting.

17          THE COURT:  Okay.  Well, that's something I'm

18   interested to know, and I appreciate you pointing that

19   out.

20          MR. NOVICK:  Your Honor, I think the answer is

21   straightforward.  Some of it I've alluded to already.  But

22   I can start there.

23          Sure, there are two victims that are in common,

24   Mr. Kendra and Mr. Wollman.  We have not -- I believe we

25   met with Mr. Wollman regarding this case.  We have not met

1    with Mr. Kendra to my recollection regarding this case, in

2    other words, the assistants, and they're different trades

3    obviously.  Some of the preamble and the type of testimony

4    will be very similar, but they are different trades,

5    different facts.

6           I need to go through and look at what the

7    cross-examination material would be for those which is in

8    order for them to be prepared to testify in this case.

9           Mr. O'Connor, Special Agent O'Connor, who will

10   likely testify in our case, is going to be testifying to

11   an entirely different set than the case agent who is going

12   to be testifying to a number of documents.  And those are

13   an entirely different set of documents than the ones that

14   he's testifying to.

15          The only person who is somewhat similar, Your

16   Honor, is Mr. Carocci, who is relatively straight forward,

17   one of the few straightforward witnesses.

18          And then there are -- you know, one of the big

19   differences, Your Honor, between the two cases is in the

20   Nomura matter, and Mr. Shapiro's case, he -- excuse me,

21   there are several cooperators, so all of them obviously

22   are going to have to be prepared, and I've not been

23   involved in most of their preparation save for one of

24   them.

25          So the answer, Your Honor, now to go back to the

1      question you asked, why can't there be someone else who

2      just jumps on board is all of what I've said before, which

3      is, it may be reasonable -- this isn't just a 15 witness

4      case, it's a case that's been made immensely more

5      complicated by the defense.  We need to be familiar with

6      all the documents to be effective here.

7                  Really, I think it does the case and the issue

8      and the governments' motion a disservice by the defense to

9      suggest that this is just an issue of getting somebody up

10     to speed in a 15 witness case.  And I can't emphasize that

11     enough that getting ready for this case without

12     Mr. Brennan, you know, with -- there is no other

13     assistants to be given short of, you know, particularly

14     where Ms. Cherry is still on trial for the foreseeable

15     future.  The paralegals know where hopefully some of

16     the -- you know, how the document production has been

17     done, but they don't know the facts of the case.  The

18     agents, save for one or two potentially, are engaged in

19     the Litvak trial.  So it would be me with my limited

20     understanding of the case trying to get other folks up to

21     speed on it, essentially doing the same thing that I would

22     be doing, which is reviewing all of the documents.

23                  So Your Honor asks why.  It's not as simple as

24     the defense wants it to be.  I understand it's in their

25     interest to make this seem like any other case, simple,

1    just get up to speed, just, you know, next man up, and

2    that's, you know, that's really just not it.

3              And they call it a 15 witness case, well, I

4    still have a 90 witness list, and even if they pare it

5    down, a significant defense case that I need to prepare

6    for.  I need to be able to cross-examine any witnesses,

7    whatever the expert tells me, and the expert is not going

8    to be the one who is actually going to be crossing the

9    witnesses, the experts.

10             And again, Mr. Mukasey made the point for me,

11   which is that they've had 20 lawyers for the last year and

12   a half looking at these 400 gigabytes of data and, you

13   know, that's a function of Mr. Brennan, and to some degree

14   Ms. Cherry, and they're not going to be with the case

15   anymore.

16             So now it's me, and that's fine, Judge.  Look, I

17   will increase my role in this case obviously, but it is

18   just an utter -- utterly unreasonable, in my view, for the

19   government in this case, you know, in light of what we're

20   really, what we're asking for is a somewhat, Your Honor,

21   at least my view, discrete continuance and, unreasonable

22   for the government to push forward with just the idea that

23   it's next man up as if this was just, you know, a sort of

24   run of the mill case.  And it gets made more complicated

25   every day by the defense, and every day I receive new

1    17(c) material.  Or every time we receive, you know, new

2    expert disclosure, it gets made, you know, it makes the

3    case more complicated, it makes the preparation more

4    complicated.  It's more that I've got to read.  And I have

5    no doubt that we're going to continue to see that and deal

6    with that as the trial goes on.

7            As I said before, the statute doesn't just say

8    preparation for trial, it says continuity of counsel.  And

9    continuity of counsel here, Judge, is particularly

10   important when we're dealing with 20 lawyers on the other

11   side.  Having the lead counsel who has the familiarity

12   with the case able to prepare for the case with us to deal

13   with motions, to deal with whatever comes up during trial

14   and during preparation for trial is a particularly

15   important thing here.  And so I would reemphasize and

16   elevate continuity of lead counsel right up there with

17   preparation, Your Honor.

18           I hope that answers the question.

19           THE COURT:  Okay.  Well, thank you all for your

20   input.  Unless there's something new that anybody wants to

21   add, I think we've done all we can and it will just be a

22   question of my deciding what to do.

23           I am not going to make the decision right now, I

24   want to think about the situation, but unless there's

25   something new, I'll thank you and say good-bye.

1          Anything else?

2          MR. NOVICK:  Thank you, Your Honor not from the

3     government, Your Honor.

4          MR. MUKASEY:  Not for Mr. Gramins.

5          MR. PETRILLO:  Or for Mr. Shapiro.

6          MR. BROWN:  Or for Mr. Peters.  Thank you.

7          THE COURT:  Thank you.  Have a good weekend.

8               (Proceedings adjourned at 12:40 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3                    In Re: U.S. vs. SHAPIRO

4

5

6            I, Darlene A. Warner, RDR-CRR, Official Court

7     Reporter for the United States District Court for the

8     District of Connecticut, do hereby certify that the

9     foregoing pages are a true and accurate transcription of

10    my shorthand notes taken in the aforementioned matter to

11    the best of my skill and ability.

12

13

14

15
                  /s/_____
16
                     DARLENE A. WARNER, RDR-CRR
17                     Official Court Reporter
                     450 Main Street, Room #223
18                   Hartford, Connecticut 06103
                        (860) 547-0580
19

20

21

22

23

24

25