**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | S3 No. 15-cr-00155 (RNC) |
| ROSS SHAPIRO, | : | |
| MICHAEL GRAMINS and | : | April 11, 2017 |
| TYLER PETERS | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROSS SHAPIRO'S MOTION *IN LIMINE* TO STRIKE SURPLUSAGE, OR, ALTERNATIVELY, ADMIT EVIDENCE RELATING TO NOMURA'S INTERNAL REVIEW, AND PRECLUDE EVIDENCE OR MENTION OF JESSE LITVAK'S INDICTMENT**

PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
*Attorneys for Ross Shapiro*

## **TABLE OF CONTENTS**

 **PAGE**

I. The References To Mr. Shapiro In Overt Acts U. And X. Should Be Stricken As Irrelevant And Prejudicial Surplusage ...................................................................1

II. If The Government Is Permitted To Adduce Evidence Of Nomura's 2013 Compliance Directive Then The Court Should Admit Evidence Of Nomura's Decision Not To Terminate Mr. Shapiro "For Cause" In Connection With The Alleged 2013 Trades ..............................................................................4

III. The Government Should Be Precluded From Offering Evidence Of, Or Referring to, The Litvak Indictment ..........................................................................9

## **TABLE OF AUTHORITIES**

**CASES**  **PAGE(S)**

*United States v. Anderson*,
    533 F.3d 623, (8th Cir. 2008) ................................................................................. 5, 6

*United States v. LaSpina*,
    299 F.3d 165, (2d Cir. 2002) ....................................................................................... 1

*United States v. Miller*,
    26 F. Supp.2d 415, (N.D.N.Y. 1998) ......................................................................... 3

*United States v. Pirro*,
    212 F.3d at 93 ............................................................................................................. 3

*United States v. Rajaratnam*,
    802 F. Supp. 2d 491, (S.D.N.Y. 2011) ....................................................................... 6

*United States v. Rubin*,
    609 F.2d 51 (2d Cir. 1979) ......................................................................................... 2

*United States v. Steffen*,
    687 F.3d 1103 (8th Cir. 2012) .................................................................................... 3


**RULES**

Fed. R. Evid. 403 ................................................................................................................6

Mr. Shapiro respectfully submits this reply memorandum of law in further support of his motion *in limine* to: (i) strike the references to him contained in overt acts u. and x. of the Third Superseding Indictment ("Indictment") as irrelevant and prejudicial surplusage, or, alternatively, admit evidence of Nomura's internal review showing that Mr. Shapiro complied with Nomura's policies and procedures; and (ii) exclude evidence or mention of the January 2013 indictment of Jefferies trader Jesse Litvak.

I. **The References To Mr. Shapiro In Overt Acts U. And X. Should Be Stricken As Irrelevant And Prejudicial Surplusage**

The references to Mr. Shapiro in overt acts u. and x. should be stricken as irrelevant and prejudicial surplusage. The government argues, in opposition, that overt act u. is necessary to show Mr. Shapiro was "in the chat at the time the misrepresentation" was made. Gov't Opp. Mem. at 8. The government further claims that the quote attributable to Mr. Shapiro in overt act x. is proper because it constitutes a "lulling statement" in furtherance of the conspiracy. Gov't Opp. Mem. at 7. Finally, the government argues that the question of whether the overt acts are in furtherance of the conspiracy is "a jury question" that should not be decided by the Court. Gov't Opp. Mem. at 8. The government is wrong on all accounts.

The government's claim that referring to Mr. Shapiro in overt act u. properly shows that Mr. Shapiro was "in the chat at the time the misrepresentation was made" is an improper assertion that Mr. Shapiro committed an overt act through his presence. However, mere presence is plainly insufficient to allege an overt act in furtherance of the conspiracy. *See, e.g.*, *United States v. LaSpina*, 299 F.3d 165, 176 (2d Cir. 2002) (overt act "must involve some affirmative conduct or deliberate omission").[1]

---

[1] It also bears mention that this trade occurs nine months after the February 2013 compliance directive. The government fails to allege a single act by Mr. Shapiro in furtherance of the alleged conspiracy during those nine months.

1

The government's claim that the remark "80 is just a #" in overt act x. constitutes a "lulling statement" is likewise baseless.  In fact, the *Indictment* does not allege that Mr. Shapiro's remark constituted an effort to lull a counterparty (or anyone else).  Further, the claim that this comment "lulled" anyone (or was intended to do so) defies common sense when considering (as noted in Mr. Shapiro's moving brief) that the counterparty had already *agreed to* the trade.  Tellingly, the government attempts to defend the Indictment by proffering evidence rather than relying, as it must, on its flawed allegations.  Specifically, the government proffers that the proof at trial will show that the "trade confirmation ticket had not yet issued" for the trade referenced in overt acts u. and x. and that "trades are not fully consummated until they 'settle,' usually three days after the confirmation ticket is sent."  *See* Gov't Opp. Mem. at 8.  But, as noted, none of these assertions are *pled* in the Indictment.  Moreover, trades fail to settle only in very rare circumstances.  Accordingly, the claim that Mr. Shapiro's comment in overt act x. plausibly could be construed as a "lulling statement" is neither pled in the Indictment nor supported by the facts.[2]

More fundamentally, the government's lulling claim is refuted by the Indictment's failure to allege that Mr. Shapiro even *knew* that an alleged misrepresentation purportedly had been made to Mr. Wollman in the chatroom referenced in these overt acts.  The government mistakenly asserts that "Shapiro does not deny his participation in the relevant chats [sic] underlying overt acts u and x."  Gov't Opp. Mem. at 8.  To be clear, Mr. Shapiro *does* deny his participation in the relevant *chats* pertaining to this *trade* but this is beside the point because

---

[2] The single case cited by the government in support of this notion, *United States v. Rubin*, 609 F.2d 51 (2d Cir. 1979), is inapposite.  In *Rubin*, the defendant argued on appeal that the indictment should have been dismissed on statute of limitations grounds on the theory that the charged fraudulent loan conspiracy ended prior to the five-year limitations period. *Id*. at 65.  But because the government elicited evidence at trial that one of the defendant's co-conspirators had executed a demand note within the five-year period that could have been found to "lull" a lender into not discovering the scheme, the Second Circuit held that "[t]his overt act was clearly in furtherance of the conspiracy and not a mere coverup or concealment of a completed scheme." *Id*. at 66.

2

there is only *one* chat referenced in these overt acts. The Indictment does not allege participation by Mr. Shapiro in other chats (or communications) related to this trade. Consequently, the Indictment fails to allege Mr. Shapiro even *knew* about an alleged misrepresentation in 2013, let alone facts sufficient to support an inference that he somehow intended to lull a counterparty into settling a trade to which the counterparty had already agreed.³

Finally, the gross prejudice that would flow from mentioning Mr. Shapiro in overt acts u. and x. requires striking this surplusage from the Indictment. *See United States v. Miller*, 26 F. Supp.2d 415, 420 (N.D.N.Y. 1998) ("The purpose of Rule 7(d) is to protect the defendant against prejudicial allegations of irrelevant facts"). As the government notes, "[t]he Indictment does not distinguish between the time before and after the *Litvak* indictment." Gov't Opp. Mem. at 2. From Mr. Shapiro's perspective, that is exactly the problem with overt acts u. and x. The government seeks to include these flawed allegations as a predicate for, and in support of, the admission of evidence relating to Nomura's 2013 compliance directive and the *Litvak* indictment. *See* Gov't Opp. Mem. at 16 (arguing that February 2013 compliance training following *Litvak* "reflects [the defendants'] knowledge as of the time of the presentation"). Thus, the government intends to argue that Mr. Shapiro's continued participation in the alleged conspiracy in 2013 occurred in the face of the *Litvak* indictment and the Nomura compliance directive that followed, and to point to his mere presence in one side of a relevant chat-pair in support. This would be improper. Allowing the surplusage in overt acts u. and x. to stand would be acutely prejudicial to Mr. Shapiro given the government's intention to link these allegations to

---

³ The government's assertion that it is for the jury to decide whether an overt act is in furtherance of the conspiracy ignores well-settled authority that allegations first must be properly pled before being submitted to a jury. *See United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) ("[T]he indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime."); *United States v. Steffen*, 687 F.3d 1104, 1113 (8th Cir. 2012) ("[W]here an indictment alleges a scheme to defraud under the bank, mail, or wire fraud statutes, it must specify facts 'not merely in the general words of the statute[.]'") (internal citation omitted).

3

the evidence it seeks to adduce regarding the *Litvak* indictment and the February 2013 Nomura compliance directive.

**II.     If The Government Is Permitted To Adduce Evidence Of Nomura's 2013 Compliance Directive, Then The Court Should Admit Evidence Of Nomura's Decision Not To Terminate Mr. Shapiro "For Cause" In Connection With The Alleged 2013 Trades**

The government seeks to introduce evidence of the *Litvak* indictment and the February 2013 Nomura compliance directive for the purported purpose of proving Mr. Shapiro's "fraudulent intent" as to the alleged 2013 offense conduct. But the government conveniently ignores the crucial fact that (as to the 2013 conduct) Mr. Shapiro's intent is not at issue. Mr. Shapiro will not assert a good faith defense as to the alleged 2013 offense conduct, but will rely, instead, on the absence of any evidence that he ever engaged in such conduct. By pointing to the *Litvak* indictment and the February 2013 Nomura compliance directive, the government seeks to suggest to the jury, unfairly and prejudicially, that Mr. Shapiro's intent and good faith are somehow relevant to the 2013 allegations, including the misleading references to Mr. Shapiro in overt acts u. and x. (which wrongly suggest there is some basis for alleging Mr. Shapiro participated in the alleged conspiracy in 2013). This is precisely the type of confusion and misdirection that Rules 401 and 403 are designed to prevent.

Furthermore, Nomura's 2013 compliance directive is, in any event, improper evidence of intent. Mr. Shapiro is charged with wire fraud and securities fraud, not the violation of internal Nomura policies (which, according to the government's own proffer, prohibited "lying," among other things, regardless of materiality or whether undertaken with an intent to harm). The government's stated intention to rely on an internal 2013 Nomura policy to prove intent and knowledge creates an unacceptable risk that the jury may convict Mr. Shapiro of violating

4

Nomura's policies, or failing to supervise others who violated Nomura's policies, instead of focusing on the Court's instructions and the elements of the relevant charges.

For example, the Nomura 2013 compliance directive cautions Nomura personnel not to lie. It then identifies some principles from the Nomura Compliance Manual, including: acting in the "best interests of clients," maintaining the confidentiality of information, and avoiding personal conflicts of interest. *See* GX 5. The contravention of any or all of these principles, including lying, is not a federal crime. Accordingly, this document would not be proper evidence of Mr. Shapiro's intent as to 2013 conduct even if his intent were in issue (which it is not), because engaging in a personal conflict, or lying, shows nothing about Mr. Shapiro's intent to commit wire fraud or securities fraud.[4]

The government's claim that "[e]vidence of compliance procedures are relevant to proof of intent and knowledge," Gov't Opp. Mem. at 13, is mistaken and misapprehends the relevant authority. For example, the very case the government cites in support of its position, *United States v. Anderson*, 533 F.3d 623 (8th Cir. 2008), actually undermines it. In *Anderson* the Eighth Circuit upheld the admission of evidence of the company's written policy prohibiting trading in the company's stock on the basis of material, inside information on grounds that knowledge of the policy was relevant to the issue of intent and relevant to whether the defendant was aware of the rule prohibiting insider trading. *Id*. at 629. But the government ignores the fact that, in

---

[4] Similarly, other policies cited by the government in its brief dated prior to 2013 proscribe, among other things: (i) taking "unfair advantage" of someone, (ii) failing to "observe good business practices," (iii) engaging in "unfair dealing practices," (iv) engaging in communications that are not "truthful and in good taste," and (v) failing to engage in "fair business practices." Gov't Opp. Mem. at 10. The violation of any or all of these proscriptions is not probative of intent to do anything other than violate the stated policy. None of these prohibitions are relevant to assessing intent to engage in securities fraud (which requires intent to deceive with respect to a material fact) or wire fraud (which requires an intent to deprive another of money or property). Accordingly, the defense reserves its right to object to the admission of such evidence. To the extent Nomura's policies contained admonitions not to violate Rule 10b-5's prohibition on making material misstatements, Mr. Shapiro does not dispute having knowledge of this prohibition. Notably, *none* of Nomura's policies hint, let alone state, that misrepresentations in *negotiations* are either material or in contravention of Rule 10b-5.

insider trading cases, the very scheme alleged requires the government to prove the defendant intentionally breached a fiduciary-like duty. *See e.g., United States v. Rajaratnam*, 802 F. Supp. 2d 491, 497-98 (S.D.N.Y. 2011) (noting that tippee liability exists only where, among other factors, "the tippee knew . . . that the tipper had violated a fiduciary duty"). One of the principal mechanisms for adducing evidence of such a breach is proving the defendant's knowledge, *and intentional breach*, of corporate insider trading policies.

Here, unlike in *Anderson,* the breach of a fiduciary-like duty is *not* an element of the charged offenses. Furthermore, unlike in *Anderson,* where the corporate policy appears to have closely tracked the elements of insider trading, the 2013 Nomura compliance directive does not track the elements of the charged offenses and contains prohibitions that, on their face, are neither criminal nor illegal. Consequently, *Anderson* provides no support for the government's hollow claim that Nomura's policies are relevant to proving intent under the wire fraud and securities fraud statutes. Of course, even if *Anderson* did support such a proposition, Nomura's policies would nevertheless be irrelevant to the 2013 offense conduct as to Mr. Shapiro for the reasons stated above.

Because Nomura's February 2013 compliance directive fails to track the elements of the charged offenses, and also because Mr. Shapiro has no intention of asserting a good faith defense as to 2013 offense conduct, admission of this evidence would be misleading and confusing and would risk that the jury would improperly convict Mr. Shapiro for violating, or failing to supervise others who violated, Nomura's policy. This is exactly the type of unfair prejudice that Rule 403 proscribes. *See* Fed. R. Evid. 403, Advisory Committee Notes ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

If the Court permits the government to retain references to Mr. Shapiro in overt acts u. and x., then fundamental fairness requires that Mr. Shapiro be permitted to introduce relevant, probative evidence that Nomura concluded he did *not* violate Nomura's policy. The government raises several objections to admission of this evidence. First, the government argues that Nomura's *post-hoc* employment decisions do not reflect what was in the defendants' minds. Gov't Opp. Mem. at 16. This argument misses the mark. Mr. Shapiro's state of mind in 2013 is *irrelevant*. Introducing evidence of Nomura's 2013 policy would imply that Mr. Shapiro violated this policy, thus risking the jury may convict based on policy violations.[5] If the government is permitted to introduce an irrelevant policy to speciously show that Mr. Shapiro's 2013 offense conduct (or, more accurately, the lack thereof) somehow *violated* this policy, then fundamental fairness requires that Mr. Shapiro be permitted to introduce evidence that Nomura concluded that Mr. Shapiro's alleged (non)involvement in the 2013 offense conduct did *not* violate its policy. As noted, Mr. Shapiro's intent in 2013 is not at issue. And even if it were, the issue of whether Nomura's *policy* was violated would be irrelevant to the jury's assessment of the principal elements of the charges – namely, whether Mr. Shapiro made (or conspired to make) material misstatements or acted with an intent to harm.

The government next argues that Mr. Shapiro's inference – that Nomura's decision to terminate others "for cause" due to their role in the alleged 2013 offense conduct, but not to terminate him "for cause" – is speculative. Gov't Opp. Mem. at 16. Indeed, the government goes so far as to assert that Nomura's "reasons [for these termination decisions] are very likely privileged. To the extent the company considered their internal policies in making personnel

---

[5] The government's purpose for introducing this policy is to imply that the offense conduct *violated* this policy of which the defendants were aware. Indeed, if this were not the government's intent then there would be no purpose for introducing the policy.

decisions the Court simply cannot know how that process was undertaken." Gov't Opp Mem. at 17. ▮

▮

▮



▮ The two trades referenced above constitute the alleged 2013 conduct. The November trade is the subject of overt acts u. and x. Any claim that this link (between the alleged 2013 conduct and the "for cause" terminations) is "speculative" is disingenuous. Moreover, as the government concedes, Mr. Shapiro was later "let go" during a "reduction in forces," Gov't Opp. Mem. at 12, and is "differentiated" from Gramins and Peters by virtue of this fact. Gov't Opp. Mem. at 17.

The government obviously remains free to cross-examine whomever the defense calls on the question of whether Nomura's failure to terminate Mr. Shapiro "for cause" was based on reasons independent of Nomura's review of the alleged 2013 offense conduct. But to deny Mr.

8

Shapiro the opportunity to introduce this evidence, even if the government disagrees as to its import, would be unjust.[6]

Lastly, the government complains that this evidence "would create a trial-within-a-trial, leading the jury on a frolic through what Nomura's management or legal personnel knew or did not know, what they considered and did not consider when they made their employment decision." Gov't Opp. Mem. at 17. As noted above, this concern is hollow. The record related to the relevant personnel decisions is clear.[7]

### III. The Government Should Be Precluded From Offering Evidence Of, Or Referring to, The Litvak Indictment

For the reasons stated above, as well as those set forth in Mr. Shapiro's moving papers, the government should be precluded from offering evidence of, or referring to, Mr. Litvak's Indictment.

Accordingly, Mr. Shapiro respectfully requests that the Court grant his motion to: (i) strike surplusage from the Indictment and order the government not to argue to the jury involvement by Mr. Shapiro in the 2013 conduct alleged therein, or, alternatively, permit Mr. Shapiro to introduce responsive evidence in the form of the disciplinary measures imposed by Nomura (or the lack thereof) following its internal investigation as proof that Mr. Shapiro did not violate the February 2013 compliance directive; and (ii) preclude evidence or mention of Mr. Litvak's indictment at trial.

---

[6] As noted in Mr. Shapiro's moving brief, Mr. Gramins and Mr. Peters object to the admission of such evidence.

[7] Indeed, it is the government's attempt to introduce irrelevant evidence that risks sending the jury on a frolic.

9

       Respectfully submitted,

       PETRILLO KLEIN & BOXER LLP

       By:  /s/ Joshua Klein
           Joshua Klein (PHV07748)
           Guy Petrillo (CT19924)
           Amy Lester (PHV08919)
           655 Third Avenue, 22nd Floor
           New York, New York 10017
           Telephone: (212) 370-0330
           Facsimile: (212) 370-0391
           *Attorneys for Ross Shapiro*

**CERTIFICATION OF SERVICE**

I hereby certify that on April 11, 2017, a copy of foregoing Reply Memorandum Of Law In Further Support Of Ross Shapiro's Motion *In Limine* To Strike Surplusage, Or, Alternatively, Admit Evidence Relating To Nomura's Internal Review, And Preclude Evidence Or Mention Of Jesse Litvak's Indictment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
April 11, 2017

 /s/ Mirah Curzer
Mirah Curzer (PHV08047)
655 Third Avenue, 22nd Floor
New York, New York, 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
mcurzer@pkbllp.com