# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | S3 No. 15-cr-00155 (RNC) |
| | : | |
| ROSS SHAPIRO, | : | |
| MICHAEL GRAMINS and | : | April 20, 2017 |
| TYLER PETERS | : | |
| | : | |
| | : | |

**SURREPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROSS SHAPIRO'S MOTION *IN LIMINE* TO STRIKE SURPLUSAGE, OR, ALTERNATIVELY, ADMIT EVIDENCE RELATING TO NOMURA'S INTERNAL REVIEW, AND PRECLUDE EVIDENCE OR MENTION OF JESSE LITVAK'S INDICTMENT**

PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
*Attorneys for Ross Shapiro*

Mr. Shapiro respectfully submits this sureply memorandum of law in further support of his motion *in limine* to:  (i) exclude evidence or mention of the January 2013 indictment of former Jefferies trader Jesse Litvak and (ii) strike the references to him contained in overt acts u. and x. of the Third Superseding Indictment ("Indictment") as irrelevant and prejudicial surplusage, or, alternatively, admit evidence of Nomura's internal review showing that Mr. Shapiro complied with Nomura's policies and procedures.

## EVIDENCE OF LITVAK'S
## INDICTMENT SHOULD BE PRECLUDED

The government's recently filed supplemental submission on evidence of the Litvak indictment (Dkt. 359) reveals the government's true intent to focus this case on defendants' reactions to charges filed in *another* criminal case, rather than the central issues presented in *this* case – namely, whether defendants' alleged misrepresentations were material and deprived counterparties of the benefit of their bargain.

As the Court is aware, the counterparties who are expected to testify at trial will acknowledge possessing (i) exceptional sophistication, resources, and knowledge about the RMBS products they traded, and (ii) an acute awareness of the RMBS market's characteristics and the various forms of misinformation that pervaded it.  Furthermore, consider the following:

- The *Litvak II* jury *acquitted* Litvak of nine of ten counts alleged.  Moreover, the sole count of conviction involved 404(b) evidence that Litvak had altered a document in connection with an uncharged trade.  In *Litvak* the jury was not distracted (or misled) by evidence of other indictments in unrelated cases as no such evidence was offered or admitted.

- The Second Circuit *vacated* the convictions in *Litvak I,* expressing concern about the defendant's inability to present expert testimony relating to materiality and good faith. The Circuit was sufficiently troubled that it undertook the unusual step of providing guidance, in the form of *dicta*, on several evidentiary issues anticipated to arise in a retrial.

- Shortly following the Second Circuit's decision in *Litvak I*, the Seventh Circuit held that misrepresentations of negotiation facts are *immaterial as a matter of law*.  *See United States v. Weimert*, 819 F.3d 351, 357 (7th Cir. 2016) ("Buyers and sellers negotiate prices and other terms. To state the obvious, they will often try to mislead the other party about the prices and terms they are willing to accept. Such deceptions are not criminal.").

- All of the government's Nomura witnesses *expressed shock* upon learning that Litvak had been indicted for making misrepresentations in trade negotiations.

In short, there are significant legal and factual questions about whether the alleged conduct is criminal.  The defense is entitled to put the government to its proof in a *fair* trial untainted by the admission of extraneous evidence of unrelated charges against another individual employed by a different dealer.

This concern cannot be overstated.  The facts here are largely not in dispute.  Mention of, or evidence relating to, the Litvak indictment would convey to the jury that *these undisputed facts constitute criminal acts*.  But, as reflected by (i) the concerns articulated by the Second Circuit in *Litvak I*, (ii) the jury's verdict in *Litvak II*, (iii) the Seventh Circuit's decision in *Weimert*, and (iv) the nature of the anticipated trial evidence on materiality, there are genuine questions about whether the alleged misrepresentations were material and deprived counterparties of the benefit of their bargain.  The purpose of this trial is to allow the parties to present evidence to a jury who can then weigh these critical questions.  Reference to the Litvak indictment will derail any such deliberations.

And a limiting instruction would only serve to exacerbate, rather than ameliorate, defendants' concerns.  Admitting evidence of the Litvak indictment for the limited purpose of showing knowledge and intent would be tantamount to instructing the jury that misrepresentations of the type Litvak made are wrong or illegal (otherwise they would not be relevant to knowledge or intent).  Practically, this would be akin to instructing the jury that such misrepresentations are *material* because, in light of the Court's charge, jurors will conclude that

such misrepresentations could not be wrong or illegal without also being material. Consequently, admitting evidence of the Litvak indictment, even if for a limited purpose, would, as a practical matter, eviscerate defendants' materiality-based defense and constructively direct the jury to convict.[1]

We reiterate that admitting such evidence against Mr. Shapiro would be all the more prejudicial given the utter lack of any *allegation*, let alone evidence, of his participation in an alleged fraud in 2013.[2]

## EVIDENCE OF LITVAK'S SEPARATION FROM JEFFRIES SHOULD BE BARRED

The government now proposes, for the first time, to introduce evidence of Litvak's separation from Jefferies on grounds that it placed defendants on notice that their conduct was wrongful. Gov't Supp. Br. at 2-3. Specifically, the government points to two articles appearing in a trade journal in January and April 2012, respectively. The first article was concededly incorrect and "led to speculation and rumor." Gov't Supp. Br. at 2. The second was entitled "Outraged Client Behind Jefferies Dismissals," thus conveying that Litvak's separation was due to a business dispute with a client. Gov't Supp. Br. at 3. This evidence should be barred as irrelevant and unduly prejudicial.

The government offers no explanation as to why these articles placed defendants on notice of the alleged wrongfulness of their conduct. Notably, none of the government's witnesses here indicated (based on the 3500 material provided to date) that they realized their

---

[1] Notably, the government claims that "the wire fraud statute has no explicit scienter requirement" and that "[I]ntent to defraud simply means to act knowingly and with the specific intent to deceive for the purpose of causing some financial or property loss to another." Gov't Opp. Br. (Dkt. 342) at 12-13 (quoting *United States v. Rossomando*, 144 F.3d 197, 199 (2d Cir. 1998)). It is difficult to see how knowledge of Litvak's indictment – which did not charge wire fraud – is relevant to the factual assessment of whether defendants acted with such intent to deceive for the purpose of causing some loss.

[2] Should this evidence (or evidence of Nomura's 2013 post-Litvak compliance directive) be admitted as to Mr. Shapiro, then we would renew our application to introduce evidence that Mr. Shapiro did not violate any Nomura policy in 2013, and we would further move for a severance, if necessary, to permit the admission of such evidence.

conduct was wrongful on the basis of these articles – to the contrary, they expressed shock upon learning of Litvak's indictment *nearly a year after* the publication of these articles.  Furthermore, the government concedes the first article was erroneous and engendered "speculation and rumor."  Surely the second article, which centered on a purported dispute between Litvak and a client, prompted even more speculation and rumor.  In any event, the government has failed to explain how these articles, which prejudicially reference an individual subsequently indicted for similar conduct, shed any light on defendants' purported intent to defraud.  Accordingly, this evidence should be barred.[3]

**THE GOVERNMENT SHOULD BE PRECLUDED
FROM ADDING EVIDENCE OF NEW TRADES**

Mr. Shapiro also objects to the government's late disclosure of an additional "November 2012 trade" it now plans to prove at trial.  *See* Gov't Supp. Br. at 4, fn. 3. (Dkt. 359).  The government also admonishes the defense that, if defendants "continue to make arguments relying on a misleading discussion of the 20 noticed trades, the Government may be required to introduce additional trades at trial."  Gov't Supp. Br. at 4, fn. 3. (Dkt. 359).  This attempt to muzzle the defense should not be permitted.  Defendants cannot possibly be expected to prepare to defend against additional trades the government may randomly pluck, on the eve of trial, from the more than 150 trades referenced in the government's recent filing.  The government represented, *nearly a year ago*, that defendants had received notice of the entire universe of trades it would introduce at trial.  In an April 6, 2016 hearing, the government stated to the Court that "there will be no unfair surprise."  52:12-40.  The government noted it would disclose its exhibit list in May 2016 and represented that the list would be exhaustive:  "Exhibit list will have

---

[3] The other evidence proffered by the government related to the Litvak indictment is marginal and its probative value is outweighed by the substantial prejudice that is sure to follow the putative admission of evidence or mention of Litvak's indictment.

all the trades that we will intend to introduce at trial barring receiving some in between there that we don't have."  *Id.*

This Court relied on those representations in denying defendants' motion for a bill of particulars.  *See* July 1, 2016 Hearing at 22:14-38 (Court noting that "having identified approximately 20 transactions involving perhaps 10 counterparties, the government has provided the defense with whatever information is needed to enable the defense to properly prepare."). Defendants have prepared for trial based on the notice provided by the government of these 20 particular trades, nearly a year ago.[4]  Introducing new trades at this juncture, just a fortnight before trial, unfairly deprives defendants of fair notice, provides insufficient lead time to conduct appropriate Rule 17 discovery, and forces the defense to make eleventh hour adjustments to its trial strategy.[5]

## OVERT ACTS U. AND X. SHOULD BE STRUCK AS IRRELEVANT AND PREJUDICIAL SURPLUSAGE

We reiterate our application to strike references to Mr. Shapiro in overt acts u. and x. as irrelevant and prejudicial surplusage.  Allegations that Mr. Shapiro made a comment to a counterparty in a chat room, *after* the counterparty had agreed to a trade, *absent* any allegation that Mr. Shapiro spoke to the other counterparty involved in the trade or possessed knowledge of an alleged misrepresentation is *not* an overt act in furtherance of the alleged conspiracy. Allowing these references to Mr. Shapiro to stand, in light of the government's attempt to

---

[4] For example, defendants previously sought Rule 17(c) discovery of documents and information relevant to the subject trades and associated counterparties, which were narrowly tailored and excluded the two counterparties involved in the newly disclosed November 2012 trade (because they played no role in the 20 disclosed trades).

[5] At the risk of belaboring the obvious, the fact of a November 2012 trade is irrelevant to the question of whether Mr. Shapiro participated in a conspiracy *a year later*, in November *2013*, or at any point *after January 2013*, following the Litvak indictment, the compliance directive, and Mr. Shapiro's own instruction to traders to refrain from making price misrepresentations in trade negotiations.

introduce evidence of Mr. Shapiro's intent regarding purported 2013 conduct, is prejudicial in the extreme and should not be abided.

Accordingly, Mr. Shapiro respectfully requests that the Court grant his motion to: (i) preclude evidence or mention of the Litvak indictment at trial; and (ii) strike surplusage from the Indictment and preclude argument that Mr. Shapiro participated in the alleged 2013 conduct, or, alternatively, admit responsive evidence in the form of Nomura's determination that Mr. Shapiro did not violate Nomura's February 2013 compliance directive.

Respectfully submitted,


PETRILLO KLEIN & BOXER LLP

By:  /s/ Joshua Klein
     Joshua Klein (PHV07748)
     Guy Petrillo (CT19924)
     Amy Lester (PHV08919)
     655 Third Avenue, 22nd Floor
     New York, New York 10017
     Telephone: (212) 370-0330
     Facsimile: (212) 370-0391
     *Attorneys for Ross Shapiro*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on April 20, 2017, a copy of foregoing Surreply Memorandum Of Law In Further Support Of Ross Shapiro's Motion *In Limine* To Strike Surplusage, Or, Alternatively, Admit Evidence Relating To Nomura's Internal Review, And Preclude Evidence Or Mention Of Jesse Litvak's Indictment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
      April 20, 2017

           /s/ Mirah Curzer
          Mirah Curzer (PHV08047)
          655 Third Avenue, 22nd Floor
          New York, New York, 10017
          Telephone: (212) 370-0330
          Facsimile: (212) 370-0391
          mcurzer@pkbllp.com