UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : S3 No. 15-cr-00155 (RNC) |
| ROSS SHAPIRO, MICHAEL GRAMINS and TYLER PETERS | : April 20, 2017 |

**DEFENDANTS MICHAEL GRAMINS AND TYLER PETERS' MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S SUPPLEMENTAL SUBMISSION ON EVIDENCE OF THE LITVAK INDICTMENT**

Defendants Michael Gramins and Tyler Peters respectfully submit this memorandum of law in opposition to the Government's Supplemental Submission on Evidence of the Litvak Indictment, Dkt. 359 (the "Submission"). For the reasons set forth below, the government should be precluded from admitting evidence of the criminal indictment against Jesse Litvak ("Litvak") and any discipline or termination of Litvak by Jefferies & Co.

**The Court Should Not Admit Evidence Referencing Litvak's Indictment**

Defendants Peters and Gramins strenuously object to the government's attempt to inject an extraneous, confusing and prejudicial matter – the criminal indictment of a *different* bond trader at a *different* bank – into this proceeding. Such a sideshow would not only distract the jury from the facts underlying this case, but would cause jurors to abdicate their responsibility to deliberate on the facts and evidence before them. With knowledge of the Litvak indictment, jurors would conclude that the "criminal" nature of the conduct at issue here has already been determined and would view deliberations in this case as redundant.

As a bedrock principle, the law presumes defendants innocent and guarantees defendants a fair trial. Injecting the "criminality" of an unrelated person into this proceeding (as determined by a grand jury or petite jury) would taint the jury and prevent a fair trial. Even if the court instructs jurors that an indictment is a charging instrument as opposed to a finding of guilt, if the jury learns of the Litvak indictment, it would inevitably equate it with evidence of some level of criminality. That bell cannot be un-rung. As the Court observed during the April 13, 2017 oral argument, if the jury were to learn about the indictment of another RMBS trader and the government draws comparisons to that trade, the jury would understandably want to know more about the outcome of that case. The trial of Litvak was conducted in this district and received significant press attention. Even if none of the jurors remember hearing about the outcome of the Litvak case, a juror might see information about a future appeal by Litvak, hear about the case from a family member or friend, or conduct his or her own online research. A lay juror cannot be expected to understand that, although Litvak was originally indicted and convicted on several counts, all of those counts were reversed on appeal, and that, following a retrial, there were nine counts of acquittal and only one of conviction. Such extraneous and prejudicial information would distract jurors. Similarly, a jury in the present case should not theorize whether the 2013 indictment against Litvak was well-founded or not, as it inevitably would. None of this conjecture about another case – although human nature – should be injected into this case, which ought to be decided based on Defendants' own conduct.

These principles have long been recognized by federal courts. In reversing a verdict and ordering a new trial because indictments against the defendant were introduced into evidence, the Fifth Circuit explained:

> Dealing with this subject Professor Wigmore says, 'It should be understood by all courts that the only relevant circumstance is actual conduct— i.e., the fact, not the

> mere charge, of having misbehaved.' Wigmore on Evidence III, 3d Ed. section 980(a). This writer also says, 'It follows that a mere arrest or indictment will not be allowed to be inquired after; since the fact of arrest or indictment is quite consistent with innocence, and since the reception of such evidence is merely the reception of somebody's heresay assertion as to the witness's guilt.'

Hurst v. United States, 337 F.2d 678, 681 (5th Cir. 1964); see also United States v. Cox, 536 F.2d 65, 72 (5th Cir. 1976) ("It is hornbook law that indictments cannot be considered as evidence"); Fujisawa Pharm. Co. v. Kapoor, 1999 WL 543166, at *11 (N.D. Ill. July 21, 1999) (same); McGhee v. Joutras, 1996 WL 706919, at *6-7 (N.D. Ill. Dec. 5, 1996) (admonishing "counsel who should know better" for "disturbing" attempt to bring indictment against different defendant into civil case, explaining that as an "indictment 'is not evidence of any kind' (and as the universal forms of jury instruction confirm, it is not), it would offend reason to admit the indictment or any reference to it into evidence in a civil case (and that is so a fortiori in this case, where defendant Dorn is not himself even the indicted person").

The Court could allow the government to present evidence of the change in perception within Nomura in January 2013 without using the term "Litvak indictment." Courts and parties routinely sanitize prejudicial events (e.g., prior trials) by using less prejudicial terminology. Rather than describing the event as an issuance of an "indictment," the parties could describe it as the Jefferies "lawsuit," "litigation" or "court proceeding."

**The Court Should Not Admit Evidence Referencing Litvak's Discipline or Termination**

For the first time in its Submission, the government introduces the new extraneous and prejudicial matter of Litvak's termination into this case. The Court should preclude any references to discipline, including termination, that Litvak may have received from his employer as irrelevant and more prejudicial than probative under Federal Rule of Evidence 403. The government suggests that Defendants may have heard about the discipline or termination of

3

Litvak, presumably in order to show that Defendants' appreciated their own conduct may have been problematic.  The government cites two trade journal articles in arguing that Defendants should have understood that the rationale for Litvak's termination were his dishonest markups.  But those articles never reference any misstatements by Litvak and the government fails to disclose the following relevant passages:

> Industry participants described such markups as frequent on Wall Street, although the size of Jefferies' financial settlement indicates that it took more than most investors are willing to tolerate.
>
> …
>
> When a broker is caught in such arrangements, the complaint sometimes goes to arbitration. More commonly, the result is a financial settlement and possibly a reprimand for the employees involved. Terminations are rare. But Jefferies' client demanded Litvak's dismissal. Although Jefferies officials initially sought a settlement that would have saved his job, they ultimately caved. 'Jefferies was given a choice: Either fire Litvak or lose the account,' another market player said. 'If it was a small investor, they would have backed Jesse. But in this case, they weren't about to lose the account. So even though management there had to know what was going on, they threw Jesse under the bus.'

Bates No. NSESEC00177141.  A fair reading of the article is not that Litvak's conduct was illegal or grounds for termination (let alone criminal), but, instead, that the conduct constituted common industry practice that, when discovered by a customer, negatively affected the business relationship with that customer.

In any event, even if of limited probative value, the termination of a different person from a different company for similar but non-identical conduct would be confusing to the jury and more prejudicial than probative.  Defendants could not have known precisely what Litvak's conduct was or what the true nature of the reasons for the decision-making of Litvak's employer was.  Such unknowable hearsay should not be the basis for speculation by the jury in this case.

## CONCLUSION

For the foregoing reasons, Defendants Gramins and Peters respectfully request that the Court should preclude the government from admitting evidence of the criminal indictment against Jesse Litvak and any discipline or termination of Litvak by Jefferies & Co.

Respectfully submitted,

GREENBERG TRAURIG LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey (PHV07694)
Jeffrey B. Sklaroff (PHV 08423)
Robert S. Frenchman (PHV08424)
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for Michael Gramins*

ALSTON & BIRD LLP

By: /s/ Michael Brown
Michael Brown (PHV08372)
Brett D. Jaffe (PHV07701)
Joseph G. Tully (PHV07702)
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9493
Facsimile: (212) 210-9444
brett.jaffe@alston.com
mike.brown@alston.com
joe.tully@alston.com

BRAFMAN & ASSOCIATES, P.C.

By: <u>/s/ Alex Spiro</u>
Alex Spiro, Esq. (PHV08071)
767 Third Avenue, 26th Floor
New York, NY 10017
aspiro@braflaw.com
Tel: 212-750-7800
Fax: 617-755-4555

*Attorneys for Defendant Tyler Peters*

**CERTIFICATION OF SERVICE**

I hereby certify that on April 20, 2017, a copy of the foregoing Defendants Gramins and Peters' Memorandum of Law in Opposition to the Government's Supplemental Submission on Evidence of the Litvak Indictment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
April 20, 2017

    /s/ Marc L. Mukasey