

Marc L. Mukasey
Tel 212.801.6832
Fax 212.754.8522
mukaseym@gtlaw.com

May 22, 2017

BY EMAIL

Honorable Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut 06103

Re:   *United States v. Shapiro*, 15-cr-155 (RNC)

Dear Judge Chatigny:

      We write on behalf of Defendant Michael Gramins to respectfully request that the government be precluded from introducing GX 29F and GX 29F-1 during the testimony of Joel Wollman. On May 22, 2017, the government indicated that it would seek to introduce these exhibits during the testimony of Mr. Wollman, although he has no knowledge of the exhibits and his testimony about them would be unduly prejudicial. GX 29F is a recording of an ***internal*** telephone call between Michael Gramins and Nomura salesperson, Michael Romanelli, on November 22, 2013, after the *Litvak* indictment. GX 29F-1 is a transcript of the call. The government seeks to include the exhibits in relation to trades where Mr. Gramins purchased a bond for Nomura from Harrison Choi of TCW and sold it to Mr. Wollman of QVT. Use of the phone call in this way would be unfairly prejudicial and should not be permitted.

**The Court Should Preclude Questioning of Mr. Wollman about the
Internal Nomura Phone Call because It Would Be Unfairly Prejudicial**

      The Court should preclude use of GX 29F and GX 29F-1 with Mr. Wollman because its probative value is substantially outweighed by the likelihood of unfair prejudice. Courts may exclude relevant evidence if its unfair prejudice substantially outweighs its probative value. Fed. R. Evid. 403. In the context of the rule, evidence is unfairly prejudicial if it has an undue tendency to suggest decision on an emotional basis. Fed. R. Evid. 403 Advisory Committee Notes (1972). Courts should be wary of evidence that suggests a strong emotional impact because "[a]bsent counterbalancing probative value, evidence having a strong emotional or inflammatory impact ... may pose a risk of unfair prejudice because it tends to distract the jury from the issues in the case and ... [might] arouse the jury's passions to a point where they would act irrationally in reaching a verdict." *United States v. Robinson*, 560 F.2d 507, 513-14 (2d Cir.

May 22, 2017
Page 2

1977) (internal quotation marks omitted). In assessing counterbalancing probative value, courts should weigh the value of the evidence in light of other evidence in the record. *United States v. Monsalvatge*, 850 F.3d 483, 503 (2d Cir. 2017). Where there is equally probative evidence available that does not carry the same prejudicial risks, courts should consider "the 'marginal probative value' of the proposed evidence relative to the other evidence in the case." *Id.* (citing *Old Chief v. United States*, 519 U.S. 172, 184-85 (1997)). If the other evidence that can establish the same facts does not carry the same risks the marginal probative value of the proposed evidence is slight or even nonexistent. *Id*.

The phone recording in GX 29F is an internal phone call between Michael Gramins and Nomura salesperson Michael Romanelli. The call adds nothing to the price information that is discussed in the Bloomberg chats and trade tickets, and would be played during testimony of Mr. Wollman only to cause improper inflammatory impact. Use of this evidence with Mr. Wollman is entirely cumulative and would have essentially no probative value.

In this trade, Nomura was purchasing the JPALT 2007-A2 2A1 bond at $79.25 from Harrison Choi at TCW and selling the bond at $80.50 to Joel Wollman at QVT. During the internal call, Mr. Gramins and Mr. Romanelli discussed the negotiation tactics to use in selling a bond. In the call, they discussed that Nomura could purchase the bond for "79-something," which is consistent with a 79.25 offer from TCW that was memorialized in a trade confirmation. Near the end of the call Mr. Gramins stated, "So, to recap that, I'm just gonna say, ok, I've beaten him up as much as I can. 80 and a half to you is the best I can do." Thereafter, in selling the bond to Mr. Wollman, Mr. Gramins wrote in a Bloomberg chat, "I have beaten him as much as I can," and then "80-16 is the best I can get them to you." The Bloomberg chat is available in GX 29D, and the defense does not dispute its admissibility. The GX 29F phone recording between Mr. Gramins and Mr. Romanelli is merely an ***internal*** communication where they decided what to state to Mr. Wollman and is not itself probative of materiality at all. Assuming the government would seek to ask Mr. Wollman whether the alleged misrepresentations would have had an effect on him, the government could use the Bloomberg chats, GX 29A through 29D, as a basis for such questions. The telephone conversation between Mr. Gramins and Mr. Romanelli adds nothing of probative value that is not already memorialized in the Bloomberg chats.

The fact that Mr. Wollman would not be able to offer any insight into the conversation diminishes the probative value yet further. Mr. Wollman would never have been privy to an internal Nomura conversation and cannot testify to what Mr. Gramins or Mr. Romanelli meant by anything they said. Because the only relevant material in the telephone conversation is duplicative of the material in the chats and because Mr. Wollman cannot testify about the substance of its contents, the telephone conversation has virtually no probative value.

While the phone call between Mr. Gramins and Mr. Romanelli has little, if any, probative value, the risk of unfair prejudice to Gramins is great. Playing a recording of a phone conversation for the jury to elicit the reaction of someone who was not a participant is a theatrical maneuver designed to enflame the jury's emotions, and it is particularly prejudicial in light of the fact that the call was after the *Litvak* indictment. While the content of the phone call

May 22, 2017
Page 3

was consistent with the new guidance disseminated from Nomura's compliance department (*i.e.*, the speakers discuss phrasing their offer price to QVT as being a net offer to "to you," [the QVT counter-party]), such nuance will be lost on the jury when interpreted by Mr. Wollman. Because Mr. Wollman was not a Nomura employee, he did not receive the Nomura compliance training and would merely be interpreting the conversation from his uninformed, outsider perspective. Only a participant to the conversation should be permitted to interpret the conversation or be asked to react to it in an informed way.

Mr. Wollman cannot offer any insight into what Michael Gramins or Michael Romanelli meant by their words or what they were thinking. Moreover, since the conversation occurred on an internal telephone call, Mr. Wollman would never have been privy to the call. The call itself is not evidence of how Mr. Gramins negotiated with either counter-party in the transactions at issue. If the government wishes to elicit testimony about the substance of the conversation between Mr. Romanelli and Mr. Gramins, it is free to call Mr. Romanelli to testify. The defense would then be able to cross-examine Mr. Romanelli about the conversation.[1] However, absent Mr. Romanelli testifying, Mr. Gramins has no way to defend himself without being forced to take the stand himself. The government should not be permitted to ask Mr. Wollman to speculate about a conversation he has never heard, and would never have had a right to hear, in violation of Mr. Gramins's right to confront evidence against him. The government should not be able to shield itself from cross-examination in this manner.

Playing the recording for Mr. Wollman is argumentative and pure theater. It is akin to showing someone who was not at the scene of an incident a weapon used in the incident purely for dramatic effect. Indeed, the government conceded during trial on May 22, 2017, that it would be "fantasy" to question a witness about conversations in which he was never involved. Regarding witness Caleb Chao, the defense objected to questioning him about his own Bloomberg chats, which he did not recall, and the government responded as follows:

> MR. MUKASEY: This witness is competent to read off the piece of paper and explain terms of art in the piece of paper. Beyond that, he's testifying about a fantasy, he's testifying about something he has absolutely no recollection of; and he hasn't said that the words on the paper have jogged his memory so now he's got a better memory of it. All he can do is testify about what's in the paper and what's reading and interpreting. Anything beyond that is in the realm of the fantastic.
>
> MR. NOVICK: I disagree with Mr. Mukasey. ***I think that that's a true statement if what we were asking*** […] ***to do was to opine on words that he didn't speak*** or that he was not -- or was involving people that he didn't deal with. I think it's certainly true that -- and we've had that previously, if a chat has come in and we're asking Mr. Harrison for example to talk about something that's on the other side of a trade that

---

[1] While the government may contend the defense could conceivably call Mr. Romanelli as a defense witness, because the government identified him as a co-conspirator there is little likelihood that he would testify substantively rather than asserting his Fifth Amendment right against self-incrimination, absent receiving a non-prosecution agreement from the government.

May 22, 2017
Page 4

> he wasn't involved in, we have [hewn] very closely to the words on the page and if there's a term of art he can expound on that, but for a person who is actually in the chat and who has a foundation or a basis to speak about -- to offer his testimony about what he understands in -- these words to have meant, the significance of these words because he was the speaker of them, because he had prior experience with Mr. Abbas and Mr. Gramins, all of those things make it so that he is not simply a records custodian as the defense would have us believe, or a case agent who would simply be eligible to sit up there and read words and we can't go further than that.

May 22, 2017 Rough Tr. 132:8-133:12 (emphasis added). What the government seeks to do by questioning Mr. Wollman about the GX 29F phone call is even worse. One problem is that Mr. Wollman was never involved in the conversation. But an even greater problem is that this phone conversation is not the type of conversation between traders at opposing counter-parties. When a trader is asked to look at a written Bloomberg chat between counter-parties, the witness is at least reviewing the type of external document that would typically be transmitted between opposing counter-parties and could arguably offer useful testimony by deciphering industry jargon. However, for Mr. Wollman to be asked to opine about an *internal* Nomura conversation between a trader and a salesman is a fantastical journey down the rabbit hole.

    The defense seeks a trial decided by a jury properly informed by admissible evidence, rather than based on a dramatic theatrical production. As Rule 403 emphasizes, and the Second Circuit repeatedly has upheld, it is unfairly prejudicial to a defendant if evidence presented tends to suggest a decision based on emotion. *See* Rule 403 Advisory Committee Notes (1972); *also United States v. Robinson*, 560 F.2d 507, 513-14 (2d Cir. 1977). Third-hand testimony about a recorded telephone conversation that merely reiterates what is already stated in other evidence is precisely the sort of improper emotional evidence that Rule 403 was designed to exclude.

    Accordingly, the Court should not permit the government to question Mr. Wollman about the GX 29F telephone call.

Respectfully submitted,

/s/ Marc L. Mukasey

Marc L. Mukasey

cc:    all counsel