# PETRILLO KLEIN & BOXER LLP

655 Third Avenue
22nd Floor
New York, NY 10017
Telephone: (212) 370-0330
www.pkbllp.com

Guy Petrillo
Direct Dial: (212) 370-0331
Cell:           (646) 385-1479
gpetrillo@pkbllp.com

May 24, 2017

BY E-MAIL

The Honorable Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street
Hartford, CT 06103

      Re: *United States v. Shapiro, et al.*,
         15-CR-00155 (RNC)

Dear Judge Chatigny:

  We write on behalf of defendants Ross Shapiro, Michael Gramins, and Tyler Peters regarding the Court's inquiry whether the Court should craft its jury instructions relying on the charge given by Judge Hall in the second *Litvak* trial ("*Litvak II*"), and in further response to the government's letter to the Court dated May 5, 2017 ("May 5 Letter" or "Gov't Ltr"). As set forth more fully below, Defendants respectfully request that, with respect to the instructions concerning the two substantive securities fraud charges, the Court should generally follow the *Litvak II* instruction, except as indicated below.

  In contrast to *Litvak*, (1) this case charges conspiracy and wire fraud, (2) relies on the testimony of cooperating witnesses, and (3) charges three defendants. Accordingly, Defendants respectfully request that the Court also instruct the jury concerning the following matters:

- Conspiracy
  (Defendants' Proposed Jury Instruction Nos. 32-39)

- Wire Fraud
  (Defendants' Proposed Jury Instruction Nos. 46-51)[1]

---

[1] The parties disagree concerning the instruction explicating the intent element of wire fraud. As previously argued, Defendants submit that the Court should instruct the jury that the government must prove knowledge on the part of each Defendant that his conduct was unlawful, as did Judge Hall's charge in *Litvak II* with respect to the defendant in that case. *See United States v. Litvak*, Case. No. 13-CR-19 (JCH), Dkt. 523 at 50.

Hon. Robert N. Chatigny
May 24, 2017
Page 2

- Good Faith
  (Defendants' Proposed Jury Instruction No. 52)[2]

- Common Counsel and Counsel Cooperation
  (Defendants' Proposed Jury Instruction No. 4)

- Bias of Witnesses
  (Defendants' Proposed Jury Instruction No. 20)

- Witness Credibility
  (Defendants' Proposed Jury Instructions No. 22A-22C)[3]

- Multiple Counts – Multiple Defendants
  (Defendants' Proposed Jury Instruction No. 28)

In addition, Defendants respectfully request that the Court provide a limiting instruction regarding the Nomura compliance materials and FINRA-related materials received into evidence, explaining, in substance, that the jury should not consider that evidence, or witness testimony about that evidence, as establishing the applicable legal standards in this case. Rather, in determining whether the government has proven its case beyond a reasonable doubt, the jury should apply solely the law provided by the Court.

Turning to the government's proposed materiality charge relating to the securities fraud counts, and supplementing our May 7, 2017 letter on this issue, we submit that the government's proposed charge is unsupported and unsuitable, and that Judge Hall's charge, with minor amendment, is apt.

As an initial matter, Defendants respectfully request that the Court instruct the jury on materiality as a separate element of securities fraud, as Judge Hall did in the second *Litvak* trial. Understanding that laypersons may find difficult the legal concept of materiality, and in light of the defense presented in *Litvak II*, Judge Hall explained the meaning of materiality using the "total mix of information" standard for materiality set forth by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), with additional clarification in everyday parlance. As in *Litvak II*, the defense here is centered in part on the absence of materiality, and a separate, thorough materiality instruction is critical. After considerable motion practice regarding the proposed materiality instruction, Judge Hall explained that the Court spent significant time and effort constructing an even-handed materiality charge. *See* Jan. 3, 2017 *Litvak II* Tr. at 42:3-23 ("It will not satisfy the defendant, but it is significantly different than what it was. So now I may

---

[2] Mr. Litvak did not raise a defense of good faith in *Litvak II*.

[3] At the time that Defendants filed their Proposed Jury Instructions on March 15, 2017, government witness Frank Dinucci had not yet pled guilty, and, therefore, Defendants did not propose that the Court instruct the jury regarding a guilty plea entered by an alleged co-conspirator. Given Dinucci's guilty plea, Defendants respectfully request that the Court consider the attached proposed instructions in place of Defendants' Proposed Jury Instruction No. 22 as filed.

2

Hon. Robert N. Chatigny
May 24, 2017
Page 3

have two parties unhappy with me, which may be the best result possible. But I spent a lot of time on it last week. I have read a lot of cases.")

The government argues that separating out the materiality instruction "elevates one aspect of one element beyond others." Gov't Ltr. at 7. But materiality is one of two key issues to be determined by the jury. It makes good sense, therefore, to break out the materiality instruction into a separate section of the charge to ensure that the concept is explained with sufficient clarity and so that, if necessary, the jurors can readily review the Court's charge in deliberations.

Defendants have proposed a charge that differs only minimally from that given by Judge Hall in *Litvak II*. Specifically, Defendants request (i) that concerning the "investment decision" to which it applies the *Basic* test, the jury, and not the Court, must determine as a factual matter beyond a reasonable doubt the applicable "investment decision," see below, and (ii) that the Court delete the following language from Judge Hall's charge as unnecessary:

> To be material, a misstate[ment] or omission need not determine any particular outcome. However, the Government must prove beyond a reasonable doubt a substantial likelihood that the disclosure of the truth or the omitted fact would have assumed significance in the deliberations of the reasonable investor. . . . Materiality, however, does not require proof of the substantial likelihood the disclosure of the truth or the omitted fact would have caused a reasonable investor to act differently.

*Litvak II* Tr. at 1498. These sentences are not included in the government's proposed jury instruction. Defendants agree they are not necessary because the remainder of the *Litvak II* instruction contains more than sufficient explication of the materiality standard.

The government, by contrast, seeks to omit numerous portions of the *Litvak II* materiality charge that Judge Hall included in the interests of a fair and balanced instruction. *See* Gov't Ltr. at 6. Contrary to the government's position, the jury should be informed that materiality must be assessed "as of the time of the transaction and not based on a hindsight view," as Judge Hall instructed the jury in *Litvak II*. The suggestion that the defense might make "groundless objections" depending on whether the appropriate "hindsight view" charge is given, Gov't Ltr. at 6, is not rational argument. The government also seeks to eliminate the helpful explanation in Judge Hall's instructions that "puffing or sales talk" is not material, arguing that such terms are unnecessary and not independently defined. Gov't Ltr. at 6-7. But such terms are intended to be understood in accordance with their everyday usage. Moreover, to guide the jury, Defendants would propose including the following underscored phrase for further clarification: "A false statement cannot be material if it constitutes mere puffing or sales talk, <u>haggling, or the kind of negotiation tactics</u> that the reasonable investor in the non-agency RMBS market would not consider as significantly altering the total mix of information available in making an investment decision."

3

Case 3:15-cr-00155-RNC   Document 394   Filed 05/24/17   Page 4 of 8

Hon. Robert N. Chatigny
May 24, 2017
Page 4

      The government also takes issue with Judge Hall's reference to the sophistication of the investors in the non-agency RMBS market. Gov't Ltr. at 7. While the government appears to concede that the investors in the non-agency RMBS market at issue in this case are all "sophisticated," it suggests that Judge Hall's instruction was "slanted" toward the defense. The government's characterization is not accurate. The sophistication of the investors, identified by the government as "victims," is important context for the jury to understand materiality. Here, the "reasonable investor" must be from the only group of investors capable of being deceived: those buying and selling the securities. *See, e.g., S.E.C. v. Rorech*, 720 F. Supp. 2d 367, 372 (S.D.N.Y. 2010) ("SEC has failed to prove that either piece of alleged information was material" because "these two pieces of information were not considered material to reasonable investors in VNU CDSs," whom the Court noted were "sophisticated high yield bond buyers.") (emphasis added); *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 01CIV.11448 (JGK) (HBP), 2006 WL 1206333, at *1 (S.D.N.Y. May 2, 2006) ("the parties cannot seriously dispute that plaintiffs' financial sophistication and their knowledge concerning [the securities] has some relevance in this securities fraud action"); *Basso Sec. Ltd. v. Interstate Bakeries Corp.*, No. CIV.01CV575 (PCD), 2002 WL 32255352, at *4 n.3 (D. Conn. Jan. 18, 2002) ("Plaintiff [in a Rule 10b-5 case] would also appear to face a formidable obstacle in alleging that the misstatement in the IBC press release was material" because "[t]he notion that a sophisticated plaintiff would rely on a summary of a shareholder agreement appearing within a press release without referring to the document to which it refers is a dubious proposition.") (emphasis added); *see also Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) ("In assessing the reasonableness of a plaintiff's alleged reliance, we consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them."); *In re Enron Corp. Securities*, 529 F. Supp. 2d 644, 749 (S.D. Tex. 2006) ("[T]he Court concludes that factors affecting debt securities must also be examined analytically, not cursorily or superficially, with a view to their distinctive nature and to the kinds of news that would move their market price in contrast to the kind of information that might affect the more volatile stock market . . . ."). There can be no dispute that the government witnesses presented at trial were all sophisticated investors in the non-agency RMBS market. Accordingly, a materiality instruction that includes a reference to the sophistication of the reasonable investor, similar to Judge Hall's in *Litvak II*, is appropriate here.

      Finally, Defendants have proposed that the Court not further define the term "investment decision" within the materiality instruction. Based on the evidence admitted at trial, it is the jury that must decide the investment decisions that were made by the counterparties in transacting with Nomura, and how the information provided by Defendants affected such decisions. The evidence at trial has shown that the "total mix" of information considered in connection with each trade is not wholly comparable trade by trade, and was a function of specific facts and circumstances. Therefore, it is for the jury to determine what the "reasonable investor" would find material in connection with the investment decisions that the trial facts establish or fail to establish were made. To instruct the jury, as the government requests, that there are three types of investment decisions at issue, would impermissibly constrain the jury's consideration of the evidence. *See Basic*, 485 U.S. at 236 ("Any approach that designates a single fact or occurrence as always determinative of an inherently fact-specific finding such as materiality, must

Hon. Robert N. Chatigny
May 24, 2017
Page 5

necessarily be overinclusive or underinclusive."); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (materiality determination "requires delicate assessments of the inferences a 'reasonable [investor]' would draw from a given set of facts and the significance of those inference to him, and these assessments are peculiarly ones for the trier of fact"). Accordingly, Defendants respectfully request that the Court include their proposed charge and decline to provide a restricting definition of the term "investment decision."

Defendants respectfully request to be heard concerning the above-discussed issues at or before the charge conference in this matter.

                Respectfully submitted,

                PETRILLO KLEIN & BOXER LLP


            By: /s Guy Petrillo
                Guy Petrillo
                Josh Klein
                Amy Lester
                655 Third Avenue, 22nd Floor
                New York, New York 10017
                Telephone: (212) 370-0330
                Facsimile: (212) 370-0391
                *Attorneys for Ross Shapiro*


cc: All Counsel

**PROPOSED JURY INSTRUCTION NO. 22A**
**WITNESS CREDIBILITY – GOVERNMENT WITNESS –**
**NOT PROPER TO CONSIDER GUILTY PLEA**

**[Combine Requests No. 22A, 22B, and 22C as appropriate**
**depending on government witnesses called.]**

You have heard testimony from Frank Dinucci, a government witness who pled guilty to four counts charged in two separate indictments. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of any of the defendants on trial from the fact that a prosecution witness pled guilty. This witness' decision to plead guilty may not be used by you in any way as evidence against or unfavorable to any defendant on trial here.

Authority: Adapted from 1 L. Sand, *et al.*, Modern Federal Jury Instructions, Instr. 7-10 (2007).

**PROPOSED JURY INSTRUCTION NO. 22B**
**WITNESS CREDIBILITY – GOVERNMENT WITNESS –**
**WTINESS' PLEA AGREEMENT**

In this case, there has been testimony from Frank Dinucci, a government witness who pled guilty after entering into an agreement with the government to testify. There is evidence that the government agreed not to prosecute this witness on other charges in exchange for his agreement to plead guilty and testify at this trial against the defendants. The government also entered into agreements with this witness concerning sentencing and promised to bring the witnesses' cooperation to the attention of the sentencing court.

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict a defendant on the basis of this testimony, if it convinces you of every element of the offense charged beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different from any ordinary witness. A witness who realizes that he

may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the prosecution, has a motive to testify falsely. Therefore, you must examine his testimony with caution and weigh it with great care. You should scrutinize it closely to determine whether it is colored or slanted in such a way as to place guilt upon a defendant in order to further the witness' own interests.  Such a witness, confronted with the realization that he can win his own freedom by helping to convict another, has a motive to testify falsely.

Such testimony should be considered by you with skepticism and you may give it such weight, if any, as you believe it deserves. If, after scrutinizing his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

Authority: Adapted from 1 L. Sand, *et al.*, Modern Federal Jury Instructions, Instr. 7-11 (2007); *United States v. Forbes*, No. 3:02 CR 264, at 74 (D. Conn. 2007); *see Banks v. Dretke*, 540 U.S. 668, 701-02 (2004) (approving similar pattern instructions in the First, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits). In *Banks*, the Supreme Court emphasized it had long recognized "the 'serious questions of credibility' informers pose," and the need for "customary, truthpromoting precautions that generally accompany the testimony of informants"); *see On Lee v. United States*, 343 U.S. 747, 757 (1952).  The fourth and fifth sentences of the third paragraph are from 1 L. Sand, *et al.*, Modern Federal Jury Instructions, Instr. 7-9 (2007), and clarify the jury's role in evaluating witness credibility.

## PROPOSED JURY INSTRUCTION NO. 22C
## WITNESS CREDIBILITY – INFORMAL IMMUNITY

You have heard the testimony of several witnesses who have been promised that in exchange for testifying, they will not be prosecuted for any conduct related to their testimony. The following witnesses each testified after entering into such an agreement not to be prosecuted by the government: [*list relevant witnesses*]. This agreement was arranged directly between the witness and the government. The government is permitted to make these kinds of promises and is entitled to call as witnesses people to whom these promises are given.

You should ask yourself whether these witnesses would benefit more by lying, or by

telling the truth.  Was their testimony made up or exaggerated in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely?  Or did they believe that their interests would be best served by testifying truthfully?  If you believe that the witnesses were motivated by hopes of personal gain, was the motivation one that would cause them to lie, or was it one that would cause them to tell the truth?  Did this motivation affect their testimony?

The testimony of a witness who has been promised that he will not be prosecuted should be examined by you with greater care than the testimony of an ordinary witness.  You should scrutinize it closely to determine whether or not it is shaded or slanted n such a way as to place guilt upon the defendant in order to further the witness's own interests.

Such testimony should be received by you with suspicion and you may give it such weight, if any, as you believe it deserves.

<u>Authority</u>: Modified from Sand, Instr. 7-9; *see, e.g.*, charge given in *United States v. Castelin*, 11-cr-183 (JCH) (D. Conn. May 13, 2013), ECF No. 664, at 22-23; *see also United States v. Prawl*, 168 F.3d 622, 628 (2d Cir. 1999) ("[A defendant] is entitled to a charge that identifies the circumstances that may make one or another of the government's witnesses particularly vulnerable to the prosecution's power and influence, and that specifies the ways (by catalog or example) that a person so situated might be particularly advantaged by promoting the prosecution's case."); *United States v. Bernard*, 625 F.2d 854, 857 (9th Cir. 1980) (noting that "[a]ccomplice testimony is inevitably suspect and unreliable" and that failure to instruct the jury the shortcomings of accomplice testimony constituted reversible error) (internal quotation marks omitted).