# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|   |   |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : No. 15-cr-00155 (RNC) |
| ROSS SHAPIRO, | : |
| MICHAEL GRAMINS and | : |
| TYLER PETERS | : |
| | : May 30, 2017 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL
## PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29(a)

PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
*Attorneys for Ross Shapiro*

GREENBERG TRAURIG LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
*Attorneys for Michael Gramins*

ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
*Attorneys for Tyler Peters*

BRAFMAN & ASSOCIATES, P.C.
767 Third Avenue, 26th Floor
New York, NY 10017
Tel: (212) 750-7800
*Attorneys for Tyler Peters*

Defendants hereby move for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), based on the government's failure to prove, beyond a reasonable doubt, the elements of the charged offenses.  No rational jury could find otherwise.  *United States v. Taylor*, 816 F.3d 12, 22, 26 (2d Cir. 2016); *United States v. Valle*, 807 F.3d 508, 523 (2d Cir. 2015); *United States v. Gjurashaj*, 706 F.2d 395, 398 (2d Cir. 1983).  Defendants have separately submitted a Motion to Dismiss the Indictment under the Due Process Clause (Dkt. 400).

I. **No Rational Juror Could Find that the Government Has Proven, Beyond a Reasonable Doubt, the Materiality Element of the Securities Fraud Counts (Counts Two and Three) or the Securities Fraud Object of the Conspiracy Charge (Count One) in the Indictment.**

The government has failed to prove beyond a reasonable doubt that the misrepresentations made by Defendants "significantly altered the 'total mix' of information" available to Nomura's counterparties in making an investment decision about whether to buy or sell particular bonds.  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

As a threshold matter, there is insufficient evidence of materiality because the government has elicited irrelevant testimony in pursuit of a flawed theory.  The question posed to the four counterparty witnesses by the government – whether knowing the costs incurred by Nomura in acquiring a bond offered to the counterparty would have been important – rests on the premise that this hypothetical represents a fair retrospective postulate of the "truth" at the time of the trade.  As the same witnesses testified, however, they routinely executed RMBS trades where the dealer did not provide such cost representations, and in these circumstances they did not seek such information.  Indeed, undisclosed margin is ordinary course in dealer-counterparty trading in this principal-to-principal market.  In other words, the evidence is uncontroverted that the counterparties had no right to the dealer's cost information or profit

1

margin. Accordingly, no factual basis existed to ask the counterparty witnesses the hypothetical question whether Nomura's undisclosed margin or acquisition price would have been "important" to them.

Thus, this fact pattern is nothing like *United States v. Cuti*, and similar cases, in which the Second Circuit approved of "a witness . . . testify[ing] to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior," on the basis that "questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud." 720 F.3d 453, 459 (2d Cir. 2012). In *Cuti*, the hypothetical questions posed by the government to two accountants employed by a public company's outside auditing firm related to facts that the company was *obligated* to disclose (the existence of side agreements, for example, affecting publicly filed financial statements that are required by law to be free of material misstatement or omission) in connection with the application of undisputed accounting rules to a public company's legally required financial statement disclosures. There was no question in *Cuti* that the company was required to provide the accountants with the information at issue so that, as required by law, the public auditor could evaluate and opine on the company's financial statements.

In this case, by contrast, the counterparties did not have an independent legal right to know the misrepresented or undisclosed facts in issue (Nomura's profit margin or acquisition price). They were not, for example, shareholders of a public company entitled by law to materially accurate financial statement disclosure. Here, the "true" fact – the fact that would be disclosed in place of the alleged misrepresentations – would not be the dealer's actual cost because the counterparty had no right to that information in the non-agency RMBS market. The trial record makes clear that when such misrepresentations were *not* made, trading occurred

in the ordinary course without any dealer cost or profit margin disclosure. In such trades, the parties transacted based on the all-in price, including Nomura's undisclosed margin. Thus, the question posed to the counterparties by the government – whether it would have been "important" for them to know the dealer's cost when they traded in cases where such cost was misrepresented – missed the mark because it is not a *factually* supported hypothetical. In light of the testimony, for example, the government could have asked whether it would have been important for the counterparty to know that the dealer's offer or bid was a product solely of the dealer's margin objectives rather than its cost. This or a similar question would reflect the record facts. The question posed by the government instead reflected a fiction. Accordingly, the Court should strike the counterparty witnesses' testimony on this issue as irrelevant factual testimony under Federal Rule of Evidence 401.

Independent of the above, each of the four counterparty witness testified that he had no actual recollection of the trades in issue. At the same time, these witnesses testified that a trade may be driven by factors that constrained their room to negotiate price or otherwise drove the mindset that they brought to the negotiation (*e.g.*, a decision to sell bonds in a sector of the RMBS market to free up capital to purchase more attractive RMBS investments). Just as the witnesses were without memory sufficient to testify to the considerations in the total mix of information that in fact drove their decision-making in each trade, submission of the materiality issue to the jury would require the jury to speculate as to which factors were material and which were not. For this reason as well, the proof of materiality does not meet the beyond a reasonable doubt standard.

Finally, each counterparty witness called by the government testified that he would not have purchased or sold a bond unless he had determined, based on his institution's analysis of

the verifiable facts available, that the decision would benefit the counterparty's investors.  And, the government introduced no evidence that any of the counterparties could have purchased (or sold) the bonds in question at a price more favorable than the one to which they ultimately agreed.[1]  In this setting, no basis exists for a rational juror to find beyond a reasonable doubt that Defendants' misrepresentations were material.

Accordingly, proof of materiality beyond a reasonable doubt is lacking as to all of the securities fraud counts (and the securities fraud object of Count One), and Defendants are entitled to a judgment of acquittal on these Counts.

**II.     No Rational Juror Could Find that the Government Has Proven, Beyond a Reasonable Doubt, the Elements of the Wire Fraud Counts (Counts Four through Nine) or the Wire Fraud Object of the Conspiracy Charge (Count One) in the Indictment.**

**A.  The Government Has Failed to Prove Materiality**

Defendants' misrepresentations, which took place in the context of bilateral, principal-to-principal negotiations, had no effect on the value of the bonds at issue and did not go to the heart of the bargain between the parties.  Thus, the misrepresentations cannot have been material within the meaning of the wire fraud statute.  *See United States v. Weimert*, 819 F.3d 351, 358 (7th Cir. 2016) ("Deception about negotiating positions—about reserve prices and other terms and their relative importance—should not be considered material for purposes of mail and wire fraud statutes.").  Accordingly, the government has failed to prove the materiality element of the wire fraud counts of the Indictment.

---

[1] For this reason, the counterparty witnesses' testimony that they would have "preferred" to buy the bonds at a cheaper price is irrelevant for purposes of determining materiality.  It is beyond peradventure that, all else being equal, any purchaser in any type of transaction would prefer a lower purchase price.

4

## B. The Government Has Failed to Prove Intent to Harm

The government has also failed to prove, beyond a reasonable doubt, that Defendants intended to harm the counterparties with whom they traded because the undisputed trial evidence demonstrated that each of Nomura's counterparties received the bonds they agreed to purchase at the prices they agreed to pay. There is no evidence that Defendants misrepresented or omitted facts relating to the characteristics of the bonds themselves or about the essential terms of the transaction. The government adduced no proof that any counterparty was ever deprived of information necessary to: (i) identify the RMBS to be purchased or sold, (ii) value the RMBS to be purchased or sold (pursuant to counterparty valuation models or otherwise), or (iii) understand the total aggregate price it was paying or receiving in connection with each transaction. Thus, the government failed to prove that the counterparties were actually harmed, or that Defendants intended to harm them, as required by the wire fraud statute.[2] *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) ("Although the government is not required to prove actual injury, it must, at a minimum, prove that defendants contemplated some actual harm or injury to their victims. Only a showing of intended harm will satisfy the element of fraudulent intent [under the wire fraud statute].") (citing *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970)); *United States v. Novak*, 443 F.3d 150, 159 (2d Cir. 2006) ("An intent to harm a party to a transaction cannot be found where the evidence merely indicates that

---

[2] As argued above in Point I, the counterparty witnesses' testimony that it would have been "important" to them to know Nomura's acquisition price, for example, because they *might* have paid less following a hypothetical different negotiation does not imply that investors were "harmed." It is a false premise that the counterparties had a right to know this cost basis information and could have obtained the bond at a lower price. This testimony should be stricken from the record as irrelevant or improper, as argued above. No Second Circuit case of which we are aware has endorsed a theory of wire fraud where the allegedly wronged party obtained the very property the party negotiated to buy at the very price the party negotiated; nor has any case held that untruths in negotiations about price can sustain such a theory simply because the resulting negotiated price might have been different or because the counter-party "would have" wanted to know about misrepresented negotiation facts.

the services contracted for were dishonestly completed.").[3] Accordingly, the government has failed to prove the intent element of the wire fraud counts of the Indictment.

### C. The Government Has Failed to Prove that the Wire Communications Were "In Furtherance Of" Any Fraudulent Scheme

The government has failed to prove, beyond a reasonable doubt, that the wire communications – the "marketing" emails (or "trade posts") and the "trade confirmation" emails (or "vcons") – were in furtherance of the alleged scheme to defraud.

The proof at trial did not establish that the marketing emails had any role in aiding, perpetuating, or ensuring the success of any fraudulent transaction because the government offered no evidence that Nomura obtained any business or transacted any trades as a result of any emails that *followed a subject trade or trade negotiated using the challenged tactics*. Rather, the evidence adduced at trial demonstrated merely that the marketing emails were "advertising" for the non-agency RMBS in general. That such advertising following a subject trade *might* have attracted an investor to call Nomura about a bond and that a trade *might* then have been executed in which the challenged negotiating tactics were used, does not fulfil the government's burden; the government did not prove a *single* example of this hypothetical sequence of events. In addition, even if Nomura's advertising caused counterparties to contact Nomura about advertised trades of specific bonds, the evidence did not show that it was likely that any such contact would result in Defendants' use of the challenged tactics. The record is bereft of evidence concerning

---

[3] *See also United States v. Bank of New York Mellon*, 941 F. Supp. 2d 438, 474 (S.D.N.Y. 2013) (positing hypothetical in which intent to harm would not be shown: "[S]uppose BNYM had engaged a customer in a directly negotiated transaction and quoted a price of, say, $1.31 per euro. Suppose further that the Bank represented also that this was the "best available price" at that time—or even that it was making no profit at that price—while in fact the Bank expected to make or made a significant profit. If the customer agreed to the price, the essence of the bargain would be the exchange of currencies at the agreed-upon price of $1.31 per euro and there would be no showing of an intent to harm in the absence of other circumstances. The customer generally has no interest in what profits the Bank actually made so long as it received what was agreed.")

6

the percentage of trading on the non-agency RMBS desk that that involved the challenged negotiations tactics.

With respect to the trade confirmation emails, the proof at trial did not establish that the emails provided any additional information to any counterparty, or did anything to advance or enhance the alleged fraud, because they were sent out only *after* the alleged misstatements and omissions had allegedly induced Nomura's customer to transact and the trade had been completed. *See United States v. Altman*, 48 F.3d 96, 103 (2d Cir. 1995) ("A mailing cannot be said to be in furtherance of a scheme to defraud when it occurs after the scheme has reached fruition."); *McCormack International Corp. v. Vohra*, 858 F. Supp. 415, 421 (2d Cir. 1994) (motion to dismiss granted where "fraudulent acts . . . were completed" prior to mailing forming basis of mail fraud claim).[4]

Moreover, the trade confirmation emails were the legally necessary trade confirmations required by SEC Rule 10b-10, and therefore cannot be "in furtherance of" the fraud. *See Parr v. United States*, 363 U.S. 370, 391 (1960) ("it cannot be said that [wires] made or caused to be made under the imperative command of duty imposed by . . . law are criminal under the federal mail fraud statutes).

### III. No Rational Juror Could Find that the Government Has Proven, Beyond a Reasonable Doubt, that Defendants Committed Willful Violations of the Securities Fraud and Wire Fraud Statutes.

The government has also failed to show that Defendants committed willful violations of the securities fraud and wire fraud statues because the proof at trial has not demonstrated, beyond a reasonable doubt, that they were aware of the allegedly unlawful nature of their conduct. *See* Jury Instructions in *United States v. Litvak*, No. 13-cr-19 (JCH) (D. Conn. Jan. 13,

---

[4] In interpreting the wire fraud statute, courts look not only to cases decided under that statute but also to cases involving the mail fraud statute. *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006).

7

2017), ECF No. 523, at 50 ("'Willfully' here means to act with the intent to do something that the law forbids, that is to say with the bad purpose either to disobey or to disregard the law. The government need not prove that [the defendant] knew he was breaking any particular law or rule. The government must prove, however, that [the defendant] was aware of the general wrongfulness of his acts and that his acts were not due to negligence, inadvertence or mistake."); *see also United States v. Litvak,* 808 F.3d 160, 190 (2d Cir. 2015) (expert testimony "would support [defendant's] attempt to introduce a reasonable doubt as to his intent to defraud, i.e., that he held an honest belief that his conduct was not improper or unlawful, a belief the jury may have found more plausible in light of his supervisors' approval of his colleagues' substantially similar behavior"). While the government has elicited testimony from the junior traders at Nomura that, in general, "lying is wrong," each of the cooperating witnesses testified that they did not know or believe that their conduct might be considered unlawful until early 2013, when Litvak was indicted. And, as argued in support of Mr. Shapiro's renewed motion to strike (Dkt. 395), the government has not proven that Mr. Shapiro committed any wrongful conduct after learning of Mr. Litvak's indictment.[5]

There has also been no evidence at trial of any effort by Defendants to keep their allegedly unlawful conduct secret or hidden from others at Nomura, and thus no evidence of a "criminal" state of mind on the part of Defendants.

Accordingly, the government has failed to establish that Defendants committed any willful violation of the securities fraud or wire fraud statutes. They are therefore entitled to a judgment of acquittal on the substantive counts (Counts Two through Ten) of the Indictment.

---

[5] Similarly, the government failed to offer proof at trial that Mr. Gramins committed any knowingly wrongful conduct after the Litvak indictment, but instead followed the directions of Nomura's compliance department and instructed the junior traders not to misrepresent Nomura's acquisition cost.

V.  **The Government Has Failed to Prove, Beyond a Reasonable Doubt, the Existence of a Criminal Agreement to Violate the Law.**

For the reasons set forth above, all Defendants are entitled to a judgment of acquittal as a matter of law on Count One of the Indictment because the government has failed to prove, beyond a reasonable doubt, that they entered into a criminal agreement to commit securities fraud or wire fraud.

\*     \*     \*

For the reasons set forth above and in oral argument before the Court, Defendants are entitled to a judgment of acquittal on all counts of the Indictment pursuant to Federal Rule of Criminal Procedure 29(a).

Respectfully submitted,

PETRILLO KLEIN & BOXER LLP

By: /s/ Guy Petrillo
    Guy Petrillo (CT19924)
    Joshua Klein (PHV07748)
    Amy Lester (PHV08919)
    655 Third Avenue, 22nd Floor
    New York, New York 10017
    Telephone: (212) 370-0330
    Facsimile: (212) 370-0391
    *Attorneys for Ross Shapiro*

GREENBERG TRAURIG LLP

By: /s/ Marc L. Mukasey
    Marc L. Mukasey (PHV07694)
    Jeffrey B. Sklaroff (PHV08423)
    Greenberg Traurig LLP
    200 Park Avenue
    New York, NY 10166
    Telephone: (212) 801-9200
    Facsimile: (212) 801-6400
    mukaseym@gtlaw.com
    *Attorneys for Michael Gramins*

ALSTON & BIRD LLP

By: /s/ Brett D. Jaffe
Brett D. Jaffe (PHV07701)
Michael Brown (PHV08372)
Joseph G. Tully (PHV07702)
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Brett.Jaffe@alston.com
*Attorneys for Tyler Peters*

BRAFMAN & ASSOCIATES, P.C.

By: /s/ Alex Spiro
Alex Spiro, Esq. (PHV08071)
767 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 750-7800
Facsimile: (617) 755-4555
aspiro@braflaw.com
*Attorney for Tyler Peters*

**CERTIFICATION OF SERVICE**

I hereby certify that on May 30, 2017, a copy of foregoing Memorandum of Law in Support of Defendants' Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29(a) was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
May 30, 2017

    /s/ Mirah Curzer
Mirah Curzer (PHV08047)
655 Third Avenue, 22nd Floor
New York, New York, 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391
mcurzer@pkbllp.com