## ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
404-881-7000 | Fax: 404-881-7777

Michael L. Brown                 Direct Dial: 404-881-7589                 Email: mike.brown@alston.com

May 31, 2017

VIA ECF

Hon. Robert N. Chatigny
United States District Court
450 Main Street
Hartford, Connecticut 06103

Re:  Request to Strike Third Superseding Indictment, ¶35a, ¶35d, and ¶35n
     *United States v. Shapiro, et al.*, 3:15CR155(RNC)

Dear Judge Chatigny:

Defendant Tyler Peters respectfully submits this letter to request that pursuant to Federal Rules of Criminal Procedure 7(d) the Court strike his name from the overt acts alleged in Paragraphs 35a, d, and n of the Indictment as irrelevant and prejudicial surplusage.  *See* Third Superseding Indictment, ECF No. 307 at ¶¶35a, d, n.  Mr. Peters was not involved in the trades at issue in these three overt acts and, for that reason, his name must be stricken from these paragraphs of the Indictment.

Paragraph 35a

Paragraph 35a of the Indictment alleges that, as an overt act of the charged conspiracy, "[o]n or about January 5, 2010, Shapiro, Gramins, and Peters conducted an electronic chat with a representative of QVT in which Gramins misrepresented to QVT that Gramins had a buyer for AHMA 2007 who was, at 'best best' willing to pay '47-00.'" *Id.* at ¶35a.  The chat at issue in this overt act is a persistent chat that Mr. Peters was present in on the day of the trade.[1]  Mr. Peters, however, was only present in the chat because he was discussing *an entirely different bond* with the QVT representative.  That discussion ended before the discussion of the AMHA bond began.  Indeed, before the discussion at issue in the Indictment, Mr. Peters said that he had to leave the discussion to attend a meeting.  *See* GX10J at 20:14:02-20:18:13.  At no point does he discuss the AHMA bond

---

[1] At trial, a Bloomberg representative testified that a persistent chat "is one that is created once . . . . and users are invited to join" the chat. Tr. Trans. Day 4 at 7:25-8:5.  Thus, to the extent the government alleges that Mr. Peters "conducted" this chat or the chat referenced in Paragraph 35d of the Indictment, it offered no evidence that Mr. Peters either created the chat or invited others users to it.

Alston & Bird LLP                                                                                                        www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Los Angeles | New York | Research Triangle | San Francisco | Silicon Valley | Washington, D.C.

in the chat, and the government has not alleged that he made any misrepresentation in the chat, with respect to any bond. The government, in fact, cannot even establish that he was in the chat – rather than in a meeting – at the time of the discussion of the AHMA bond. And, even if he was still paying attention to this chat, Mr. Peters was not a party to the other side of this conversation and, therefore, would have had no way of knowing whether Mr. Gramins allegedly made a misrepresentation to the QVT representative. It is worth noting too that the AMHA bond is an option ARM bond – a type of bond that Mr. Peters did not trade (as extensive trial testimony made clear). The government simply introduced no evidence suggesting that Mr. Peters "conducted" the electronic chat described in Paragraph 35a.

Paragraph 35d

Paragraph 35d of the Indictment alleges that, as an overt act of the charged conspiracy, "[o]n or about March 7, 2011, Shapiro, Gramins, Peters, Trader [Alejandro Feely] and others conducted an electronic chat with a money manager from Victim 3's PPIP fund, in which Trader [Alejandro Feely] misrepresented to Alliance Bernstein that Nomura bought WAMU 2007-HY3 4A1 for 86-01 when, in fact, Nomura had purchased the bond for 85-25." The government introduced two chats and one email to support this allegation – these two chats show Mr. Feely speaking with employees of Alliance Bernstein about a BWIC and the email is an automated response with final purchase prices from the BWIC. *See* GX12A; GX12E; GX12F. Mr. Peters was merely present in one of the chats between Mr. Feely and Alliance Bernstein. He said nothing at all during the chat. Mr. Peters was not even present in the second chat with Alliance Bernstein. And, while Mr. Peters did receive the automated BWIC response email, it related to numerous other bonds in addition to the bond that Mr. Feely traded. Mr. Feely testified about this trade and offered no testimony that Mr. Peters either participated in the trade or offered him instructions regarding this trade. Again, the government simply introduced no evidence suggesting that Mr. Peters "conducted" this electronic chat.

Paragraph 35n

Paragraph 35n of the Indictment alleges that, as an overt act of the charged conspiracy, "[o]n or about March 8, 2012, Shapiro, Gramins, Peters, and Traders [Frank Dinucci], [Caleb Chao] and [Eric Horowitz], among others, participated in an electronic chat with a representative from WAMCO, in which Salesperson [Matthew Braund] misrepresented to WAMCO that Nomura could buy AAA 2005-1A 1A3B at 64-00 when, in fact, Nomura could purchase it for 62." Contrary to this allegation, however, Mr. Peters did not participate in the chat on March 8, 2012. Rather, Mr. Peters spoke in the chat on March 7, 2012 – the day before the alleged overt act. Moreover, his discussion on March 7 involved a totally different bond. Indeed, the AAA bond was a subprime bond and, again, as the trial testimony made clear, totally irrelevant to Mr. Peters's trading. Moreover, Mr. Peters was not involved in the chat on the other side of this trade. He entered that chat at the very moment the chat ended and well after the conversation relevant to the AAA trade. As a result, even if he had been in the chat on the day of the overt act, he would

Hon. Robert N. Chatigny
VIA ECF
Page 3

have had no way of knowing whether a misrepresentation had been made. There is simply no evidence from which to infer that Mr. Peters "participated" in the chat alleged in Paragraph 35n.

Rule 7 grants the Court discretion to strike surplusage from the indictment "where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial.'" *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (quoting *United States v. Napolitano*, 552 F. Supp. 465, 480 (S.D.N.Y. 1982)); *see also United States v. Markoll*, No. 300CR133 (EBB), 2001 WL 173763, at *2 (D. Conn. Jan. 24, 2001) (same). The overt acts alleged in Paragraphs 35a, d, and n of the indictment are both prejudicial and irrelevant to the crime charged. They are irrelevant because the government has offered no evidence that Mr. Peters was involved in any of the alleged misrepresentations in these overt acts. And they are prejudicial because they charge Mr. Peters with acts as to which he had no involvement, about which he had no knowledge about, and that he should not be responsible for defending.

For these reasons, Mr. Peters requests that his name be stricken from Paragraphs 35a, d, and n of the indictment.

Sincerely,

Michael L. Brown