

Marc L. Mukasey
Tel 212.801.6832
Fax 212.754.8522
mukaseym@gtlaw.com

June 6, 2017

BY ECF AND EMAIL

Honorable Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street
Hartford, Connecticut 06103

    Re:    *United States v. Shapiro et al.*, 15-cr-155 (RNC)

Dear Judge Chatigny:

On behalf of defendants Ross Shapiro, Michael Gramins, and Tyler Peters, we write in further response to the government's improper references to matters outside the record during both its principal and rebuttal summations. It is blackletter law that "it is improper for a prosecutor to mischaracterize the evidence or refer in summation to facts not in evidence." *United States v. Rosa*, 17 F.3d 1531, 1548-49 (2d Cir. 1994). In certain instances, improper comments made by the prosecution during summation can constitute the basis for reversal of a conviction. *See, e.g., United v. Grunberger*, 431 F.2d 1062, 1068 (2d Cir. 1970) (reversing conviction in part due to improper statement by prosecutor during summation regarding the strength of the evidence).

I.    **The Government's Reference to Uncharged Trades**

The government made the following statement to the jury during its rebuttal summation:

> ***And remember, that these are a selection of the trades. That we could be here for six months if we bring you every trade.*** Dinucci told you that these tactics would occur almost daily and Feely told you that the defendants would engage in these tactics at every opportunity, which he also estimated would be daily.

*See* Rough Tr. at 160 (emphasis added). The defense objected to this statement when it was made, in response to which the Court instructed the jury that:

> Members of the jury, as I have told you more than once, what the lawyers say is not evidence. It is your recollection of the evidence that controls and if counsel state something about the evidence that is inch [sic] doesn't with your recollection

June 6, 2017
Page 2

> of the evidence, it is of course your recollection that controls, okay? Again what counsel say is not evidence.

*Id.*

The government's statement during its rebuttal that the trades introduced into evidence at trial were only "a selection of the trades" and that "we could be here for six months if we bring you every trade" clearly refers to facts not in evidence. It was made for the sole purpose of improperly insinuating to the jury that the government is in possession of evidence that defendants conducted numerous other allegedly fraudulent trades beyond those that were introduced at trial. Moreover, the government made this obviously prejudicial statement without any advance notice to the defense or the Court.

This inflammatory reference to purported evidence beyond the record would have been inappropriate regardless of any prior discussion among the parties, but is particularly improper in light of the agreement that the parties had reached regarding evidence and argument regarding uncharged trades. On July 8, 2016, the government filed a Motion *in Limine* to Exclude Evidence and Argument Suggesting the Absence of Criminal Activity in Uncharged Transactions. *See* ECF No. 159. Defendants opposed this motion. *See* ECF No. 181. On April 27, 2017, during a telephone conference with the parties, the Court denied the government's motion without prejudice based on the parties' statements to the Court that they would continue to meet and confer regarding the motion and would likely reach a resolution prior to trial.

The parties agreed to resolve the issues presented in the government's motion as follows: the defense agreed not to make reference to the thousands of other RMBS trades conducted by the defendants at Nomura during the relevant time period of the Indictment or to raise arguments regarding the propriety of these trades, provided that the government would not attempt to introduce evidence of or refer to any particular RMBS trades that it alleged to be fraudulent beyond the trades it had included in either the Indictment or the discovery provided to the defense. The defense abided by this agreement throughout the trial. At no point did any of defense counsel refer to the thousands of other uncharged RMBS trades conducted by defendants during their time at Nomura, or make any arguments during their summations that the trades introduced by the government at trial constituted only a small fraction of the total trades negotiated by the defendants.

The government's argument to the Court that the defense "opened the door" to its rebuttal statements is specious. The defense confined itself during summations to evidence introduced at trial. This evidence included testimony by Jonathan Raiff that the non-agency RMBS desk at Nomura regularly held an inventory of bonds "in the hundreds of millions to a billion [dollars]" and that "a profit or a loss of one, two, three, even five million or six million dollars . . . doesn't really affect compensation," which the defense used to make arguments regarding absence of any motive to commit fraud. *See* 5/10/2017 Rough Tr. at 81, 87. The defense never argued that the trades offered into evidence by the government constituted the entirety of trades alleged to be fraudulent, or that the profits earned by Nomura from these trades constituted the entirety of the

June 6, 2017
Page 3

profits earned from any allegedly fraudulent scheme, or even pointed out to the jury the existence of the thousands of other RMBS trades conducted by the desk during the Indictment period.

Regardless, even if defendants had opened the door to argument by the government regarding the potential existence of other allegedly fraudulent trades beyond those introduced at trial, the government's statements during rebuttal would still be improper, because they went beyond the record and were unfairly prejudicial. Notably, the government attempted to justify its comments after the fact by referring to the testimony of Frank Dinucci and Alejandro Feely that the type of misrepresentations alleged in the Indictment would occur frequently on the RMBS desk. Had the government confined itself to simply referring to such testimony, perhaps its rebuttal would have passed muster. However, the government did not do that. Instead, the government told to the jury that it had ***additional evidence in its possession*** that it had not introduced. There is a stark difference between referring to and drawing conclusions from testimony in the record of a government cooperating witness – whose testimony was subject to cross examination and impeachment – and insinuating in summation that the government is in possession of voluminous evidence regarding defendants' alleged bad acts that it chose not to show the jury.

In light of the government's conduct, defendants respectfully request that the Court issue a curative instruction to the jury, beyond the general instruction that the Court issued immediately after defendants' objection. *See, e.g.*, *United States v. Campbell*, 480 F. App'x 610, 613 (2d Cir. 2012) (acknowledging importance of a "curative instruction" in addition to a "general instruction that counsel's arguments were not evidence" in order to remedy prejudicial statement by the prosecution); *United States v. Holland*, No. 3:09-cr-139 (JBA), 2010 WL 2976934, *5 (D. Conn. July 22, 2010) (court issued a curative instruction to the jury to disregard inappropriate reference by the government). The defense proposes the following instruction:

> During the government's summation, you may have heard references made to trades that were not the subject of any evidence during trial. You may only consider the trades that were charged in the Indictment. I instruct you to disregard any arguments you heard in the government's rebuttal concerning uncharged trades. Please remember that you are only to consider the evidence presented at trial. Arguments made by the attorneys are not evidence and should not factor into your deliberations.

**II.    The Government's References to "Charities" or "Charitable Institutions"**

The defense also requests a curative instruction regarding the government's unsupported statements during both its principal summation and its rebuttal that "charities" or "charitable institutions" were among the victims of defendants' alleged misrepresentations. The government stated to the jury during its principal summation:

> If we step back five weeks before we started this trial, and I told you about that rule, your common sense would have told you that that sounds right . . . [I]t's particularly true if you're in an industry responsible for, tasked with control of,

June 6, 2017
Page 4

> the wealth of people and all the critical institutions you heard about during the course of this trial, things like pension funds, endowments, *charities*.

6/1/2017 Rough Tr. at 71-72 (emphasis added).  Then, in its rebuttal summation, the government stated:

> Let's talk now about the victims.  The victims aren't the people who were up here.  These were the representatives of the victims.  The victims are the funds, the people invested in the funds, *the charitable institutions*, the pension funds, the ordinary investors who give their money over to these folks and these victim funds are entrusted with other people's money.

6/5/2017 Rough Tr. at 172 (emphasis added).  There is no evidence in the record that any charities invested in any of the funds for which any "victim" witness was buying or selling RMBS.  Not a single witness testified that he (or his employer) managed investments for any charitable institutions, nor do any of the documents in evidence reflect this.  The government's reference to charities is a clear attempt – without any evidentiary basis – to inflame the jury by insinuating that charities were victimized by defendants' actions.  Defendants request the following curative instruction to mitigate any unfair prejudice resulting from the government's statements:

> During its principal and rebuttal summations, the government stated that the witnesses who testified during this trial were buying and selling RMBS on behalf of investors that included charities or charitable institutions.  I remind you again that what the lawyers say is not evidence, and I further instruct you that there is no evidence that any charity or charitable institution had invested in any of the funds that were managed by any of the witnesses who testified during the trial.

Dated:  New York, New York
        June 6, 2017

Respectfully submitted,

GREENBERG TAURIG, LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey (CT29885)
Jeffrey B. Sklaroff (PHV08423)
Robert S. Frenchman (PHV08424)
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-6832
Facsimile: (212) 801-6400

PETRILLO KLEIN & BOXER LLP

By: /s/ Guy Petrillo
Guy Petrillo (CT19924)
Joshua Klein (PHV07748)
Amy Lester (PHV08919)
655 Third Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 370-0330
Facsimile: (212) 370-0391

June 6, 2017
Page 5

| *Attorneys for Michael Gramins* | *Attorneys for Ross Shapiro* |
|---|---|
| BRAFMAN & ASSOCIATES, P.C. | ALSTON & BIRD LLP |
| By: /s/ Alex Spiro | By: /s/ Michael L. Brown |
| Alex Spiro (PHV08071) | Michael L. Brown (PHV08372) |
| 767 Third Avenue, 26th Floor | Brett D. Jaffe (PHV07701) |
| New York, New York 10017 | Joseph G. Tully (PHV07702) |
| Telephone: (212) 750-7800 | 90 Park Avenue |
| Facsimile: (212) 750-3906 | New York, New York 10016 |
| | Telephone: (212) 210-9400 |
| *Attorneys for Tyler Peters* | Facsimile: (212) 210-9444 |
| | *Attorneys for Tyler Peters* |

cc: All counsel (via email)